UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MINEBEA CO., LTD., et al.,

    Plaintiffs,

    v.

GEORG PAPST, et al.,

    Defendants.

Civil Action No. 97-0590 (PLF)

FILED
FEB 4 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

OPINION

This matter is before the Court on Minebea's Objections to the Special Master's conclusion in Report and Recommendation No. 6 that Minebea put certain privileged information "at issue" in its second amended and supplemental complaint and other submissions and therefore waived privilege with respect to communications and documents dealing with the subject matter at issue. Upon consideration of Minebea's objections, Papst's response, Minebea's reply, and the arguments of counsel for both parties at the October 18, 2004 motions hearing, as well as Minebea's subsequent Notice of Agreement on the Applicability of Foreign Law to Fraud Claims and the Special Master's January 26, 2005 letter ruling, Minebea's objections to the letter ruling, and Papst's opposition to Minebea's objections, the Court concludes that the recommendations regarding "at issue" waiver in Special Master's Report and Recommendation No. 6 should be adopted in part and rejected in pat-t. Although the Court finds that Minebea has waived privilege with respect to certain issues, the scope of waiver recommended by the Special Master is too broad.



I. BACKGROUND

The Special Master found that "[a]t the core of Minebea's complaint is its averments that it relied on Papst misrepresentations as to the scope of rights granted to Minebea in written agreements between the two entities." Report and Recommendation No. 6 ("R&R 6") at 26. The Special Master maintains that many averments contained in Minebea's Amended and Supplemental Complaint ("Complaint") "more than suffice" to put at issue in this action "(1) Papst's allegedly superior knowledge, (2) Minebea's 'reasonable' reliance on Papst's representations, descriptions and conduct regarding Papst's patents and Minebea's rights thereunder from 1990 forward, (3) whether or not Minebea was thus 'misled,' and (4) whether or not Minebea was thus 'deceived.'" R&R 6 at 28.

The Special Master explains that these issues have to do with rights under patents, patent grants and licenses and that both the scope of a patent and a party's rights under a license agreement are questions of law. See id. The Special Master maintains that Minebea's contemporaneous assessments of and reactions to Papst's alleged representations must have involved Minebea's legal counsel. He notes that, according to Minebea's privilege logs, hundreds of Minebea's withheld documents reflect that Minebea and its counsel considered infringement issues and licensing relating to Papst patents. See R&R 6 at 29. The Special Master therefore concludes that Minebea's Complaint places in issue the communications between Minebea and its counsel "relating to these patent and licensing contract questions." Id.

In addition to the Complaint, the Special Master points to Minebea's 1999 Opposition to Papst's Motion for Summary Judgment. In its opposition, Minebea argued that, because of its fiduciary relationship with Papst, it "justifiably" relied on Papst regarding the

2

nature and scope of the "drive patents." &R&R 6 at 30. In that filing, Minebea again made reference to Papst's "vastly superior knowledge" and to the "reasonable" understanding it reached regarding the scope of the patents based on misrepresentations by Papst. See id. The Special Master also notes that Minebea's opposition relies on averments in its Complaint laying out alleged admissions by Papst. The Special Master opines that, having invoked its Complaint for that purpose, Minebea cannot now disavow other averments in the Complaint. See id. at 31.

The Special Master notes that the declaration of Mr. Ryusuke Mizukami, tiled by Minebea in support of the aforementioned opposition, also echoes Minebea's Complaint. See id. at 32-33. Minebea also submitted the declaration of its associate General Counsel, Douglas L. Hymas, in support of the proposition that Minebea abandoned its own investigation of Papst's patents and deliberately relied on Papst's representations. See R&R 6 at 33. Although Mr. Hymas' declaration was limited to his own knowledge and his and Mr. Mizukami's reliance on Papst's counsel, the Special Master found that Mr. Hymas' declaration necessarily implicated the knowledge, opinions and advice of other Minebea lawyers. See id. When the issue of Mr. Hymas' declaration was addressed by the MDL court, the court found that the waiver of privilege connected to communications between Mr. Hymas and Mr. Mizukami in 1995 was sufficiently broad to encompass documents created in 1991 and 1992 that related to the same subject matter. See In re Papst Licensing, No. Civ. A. MDL-1298, 2001 WL 1135265, *5 (E.D. La. Sept. 24, 2001). The court found it unnecessary to address Papst's argument that Minebea had waived privilege by pleading fraud because Minebea waived privilege by the "affirmative, voluntary act of submitting Mr. Hymas's declaration. ." In re Papst Licensing. GmbH Patent Litigation, No. Civ. A. 99-MD-1298, 2001 WL 797315, *27 (E.D. La. July 12, 2001).

## II. DISCUSSION

"[T]he client in a fraud action, may be required to disclose&thoughts and knowledge, whether or not those were acquired in whole or in part from conversations with its attorneys. It is [generally] not required to disclose what was said between client and counsel." Tribune Co. v. Purcigliotti, 1997 WL 10924, *8 (S.D.N.Y. Jan. 10, 1997). Minebea maintains that the misrepresentations at issue in this case are about "technical facts" and that the Special Master's conclusion that the representations were legal in nature is in error. See Objections at 24. Minebea acknowledges that "any underlying facts or understanding that Minebea may have come to is still discoverable by Papst" "regardless of where they came from." Transcript of October 18, 2004 Motions Hearing ("Oct. 18 Tr.") at 50. If Minebea has refused to provide discovery regarding facts known to Minebea or Minebea's <u>understandings</u> regarding the issues in question, Minebea shall immediately provide the requested discovery even if the facts or understandings came from lawyers.'

The larger question involved in Minebea's objections is whether Minebea, through its pleading and other actions has placed "at issue" its communications with its attorneys regarding the issues identified by the Special Master. Minebea maintains that no "at issue" waiver occurred and that, even if the Court concludes that it did, the scope of the waiver as

---

<sup>1</sup> For example, Mr. Mizukami is not a lawyer. He is managing director for Minebea. His conversations with George Papst, anyone else at Papst and Papst lawyers, and his asserted reliance thereon, do not implicate the attorney-client privilege. He must testify as to facts, his understandings, and the bases for his reliance. For the reasons suggested by Judge Sear, as well as those set forth in this Opinion, see note 5, infra, he must also testify about his discussions with Douglas Hymas concerning "prepar[ation of] a more complete draft of a proposed agreement, based upon Papst's representation," see Declaration of Ryusuke Mizukami '$30, irrespective of the question of "at issue" waiver.

recommended by the Special Master should be rejected as overly broad. See Minebea Objections at 12.

*A. What Law Applies?*

Minebea maintains in its Objections that District of Columbia law governs the standard to be applied to determine whether there has been "at issue" waiver and that New York law governs the substantive determination of Minebea's fraud claims. See Minebea Objections at 15. This Court already has held that District of Columbia privilege law controls this case. See Transcript of October 19, 2004 Motions Hearing ("Oct. 19 Tr.") at 63.[2] It now holds that New York law determines the elements that Minebea must prove to succeed on its fraud claim.

New York law provides that in a fraud action, "liability is determined by whether the plaintiff justifiably relied upon the defendant's misrepresentations and suffered a loss that reasonably might have been anticipated to result from the reliance." Gordon & Co. v. Ross, 84 F.3d 542, 545 (2d Cir. 1996). In denying Papst's motion to dismiss Minebea's fraud count, this Court held:

> It is true that when a plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, he is barred as a matter of law from asserting justifiable reliance However, whether plaintiffs could have discovered the truth about a matter through the 'exercise of ordinary intelligence' is a question of fact.

Minebea Co. v. Papst, 13 F. Supp. 2d 35, 43 (D.D.C. 1998). The Special Master concluded that, because both the scope of a patent and rights under a license are questions of law, Minebea's assertion that it "justifiably relied" on Papst's information necessarily puts at issue any advice its

---

[2] District of Columbia law applies, and the undersigned's interpretations of D.C. law as expressed orally and in written opinions apply, regardless of whether depositions are taken in the United States or in Germany.

own attorneys gave it on that subject.[3]

On December 30, 2004, Minebea filed a notice with the Court indicating that the parties now agree that German, rather than New York, law governs Minebea's fraud claims. See Notice of Agreement on Applicability of Foreign Law to Fraud Claims ("Notice") at 1. Because fraud under German law, according to the declaration submitted by Minebea, lacks the "reasonable" or "justifiable" reliance element, Minebea now maintains that this may affect the Court's ruling on the question of at issue waiver. As the Special Master stated in Report and Recommendation No. 6, however, the MDL court years ago "noted Minebea's assertion that the parties all agree that New York law controls Minebea [sic] fraud claims." R&R 6 at 35; see also In re Papst Licensing GmbH Patent Litigation, No. Civ. A. 99-MD-1298, 2001 WL 797315, *25 (E.D. La. July 12, 2001). As he also correctly stated, neither he nor this Court is bound by "an apparent agreement among counsel that German law, rather than the heretofore oft-relied on New York law, governs determination of Count II fraud issues. What law controls is ultimately for the Court, not counsel to decide." January 26, 2005 Letter Ruling ("Letter Ruling") at 6. In view of the parties' prior agreements, the Court intends to apply New York law on the fraud claim in this case and (if there is a jury) instruct the jury under New York law. This case has been pending since 1997 and is scheduled for trial this year. The parties may not suddenly "stipulate" to a change in the governing law.[4]

---

[3] The Special Master indicated that his recommendation would be the same regardless of whether the standard was "reasonable" reliance or "justifiable" reliance under New York law. &R&R 6 at 30.

[4] The Court notes further that the 1995 Agreement, by its own terms, is governed by New York law. See 1995 Agreement at ¶ 7.3.

On January 26, 2005, the Special Master issued a letter ruling indicating that even assuming he or this Court were to accept the new "agreement" with respect to German law, his conclusions in Report and Recommendation No. 6 would not change. He noted that the parties agree that German law requires "actual" reliance and found that even if "actual" reliance is required rather than "reasonable" or "justifiable" reliance, the conclusions contained in Report and Recommendation No. 6 remain the same. &Letter Ruling at 6-7. The Court agrees. Even if the Court had accepted the stipulation that German law applies, and even if Minebea's expert is correct that one element of fraud under German law is "error on the part of the injured party," the parties appear to agree that some form of reliance – "actual" rather than "justifiable" or "reasonable" – still is required. What Minebea knew or understood is certainly vital to a finding that Minebea either "actually relied" or "justifiably relied." Furthermore, Minebea has repeatedly alleged that it "reasonably relied" on misrepresentations by Papst, and it has not withdrawn these allegations. Minebea's Objections to the Special Master's Letter Ruling of January 26, 2005 are rejected.

### B. "At Issue" Waiver

Under the doctrine of "implied" or "at issue" waiver, "the attorney-client privilege is waived when the client places otherwise privileged matters in controversy." Ideal Electronic Security Co. v. International Fidelity Insurance Co., 129 F.3d 143,151 (D.C. Cir. 1997). The purpose of the implied waiver doctrine is to prevent "an abuse of the privilege," that is, to prevent the confidentiality protected by the privilege from being used "as a tool for manipulation of the truth-seeking process. [A party asserting privilege] cannot be allowed, after disclosing

7

as much as [it] pleases, to withhold the remainder." In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982). "This is particularly true where a party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim." Ideal Electronic Security Co. v International Fidelity Insurance Co., 129 F.3d at 151; see also United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). Where the content of the attorney-client communications are "inextricably merged with the elements of plaintiff's case," "to deny access to them would preclude the court from a fair and just determination of the issues." Hearn v. Rhay, 68 F.R.D. 574, 582 (E.D. Wash. 1975).

With these core principles at the heart of the analysis, it is apparent why the issue most often arises in legal malpractice actions, or where an attorney is forced to sue a former client for legal fees, or where the advice of counsel defense is squarely and explicitly raised. See, e.g., Ideal Electronic Security Co. v International Fidelity Insurance Co., 129 F.3d at 151 ("By claiming indemnification of attorney's fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the amount of the fee award."); Rhone-Poulenc Rorer v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994) ("[A] client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer."); Connell v. Bernstein-Macauley, Inc., 407 F. Supp. 420, 423 (S.D.N.Y. 1976) (where plaintiff claimed that defendant was estopped from

8

raising a statute of limitations bar because defendant had prevailed upon plaintiff to withhold suit, court authorized discovery into attorney-client communications in order to determine whether plaintiff withheld suit solely or principally because of defendant's actions).'

Minebea correctly argues that none of these situations pertains here. It maintains that privileged information is waived by being placed "at issue" only to the extent that a party <u>must</u> reveal otherwise privileged information in order to prove its case or pursue a defense. <u>See</u> Objections at 14 (citing <u>United v. White</u>, 887 F.2d 267,270 (D.C. Cir. 1989)). It suggests that its Complaint places at issue only its reliance on Papst's allegedly fraudulent statements, not whether Minebea received advice from its own attorneys. <u>See</u> Minebea Objections at 9. Minebea further argues that, although its attorneys negotiated the language of the 1995 Settlement Agreement, Minebea relied on the representations of Papst and its "motor expert"/counsel, Jerold Schnayer. <u>See</u> <u>id</u>. at 13.[6] Minebea states that none of its claims allege reliance on the advice of its own counsel, and that it was Papst who first raised the issue by arguing that Minebea's reliance on Papst's representations was not justified because Minebea

---

[5] Judge Sear previously noted in this case that the "waiver by implication" doctrine "provides that the disclosure of otherwise privileged communications can 'waive the privilege not only with respect to the disclosed documents, but also as to all other communications made about the same subject between the attorney and the client.'" <u>In re Papst Licensing</u>, No. Civ. A. MDL-1298, 2001 WL 1135265, *4 (E.D. La. Sept. 24, 2001). Judge Sear found that, in submitting the Hymas declaration in opposition to Papst's motion for summary judgment, Minebea "affirmatively chose" to waive the attorney-client privilege in connection with the specific subject matter of "whether Minebea reasonably relied on alleged representations made by Papst." <u>Id</u>. at *5. Judge Sear therefore found that Minebea had waived privilege with respect to four documents created in 1991 and 1992 "relating to the same subject matter." <u>Id</u>.

[6] As the Court previously has noted, to the extent that Mr. Schnayer was acting as an expert or providing business rather than legal advice, Papst cannot assert privilege to protect its communications with him. <u>See</u> Oct. 19 Tr. at 70.

had its own counsel. See id. at 5.

It is fair to say that courts differ with respect to their willingness to find "at issue" waiver, particularly in cases in which attorney-client communications have not directly and expressly been placed at issue by the party asserting privilege, or where the advice of counsel defense has not been directly raised. The most relevant District of Columbia case is Judge Flannery's decision in United States v. Exxon Corp., 94 F.R.D. 246 (D.D.C. 1981), which in turn relied on Hearn v. Rhay, a 1975 case from the Eastern District of Washington, "perhaps the most exhaustive treatment of this subject." United States v. Exxon Corp., 94 F.R.D. 246, 248 (D.D.C. 1981). In analyzing the various limited exceptions to privilege, the court in Hearn found there to be three factors relevant to determining whether there has been implied or "at issue" waiver: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Hearn v. Rhay, 68 F.R.D. at 581. 'It follows that, as the Court previously noted, where the content of the attorney-client communications are "inextricably merged with the elements of plaintiff's case" or to an affirmative defense and are not "incidental to the case," "to deny access to them would preclude 'the court from a fair and just determination of the issues." Id. at 582.

Applying this analysis, Judge Flannery in Exxon found that Exxon's affirmative defense of good faith reliance on the government's regulations "put[] directly in issue the actions of counsel in deciding whether and when to unitize" and thus constituted a waiver by Exxon of "any privileges it has with regard to documents relevant to its subjective intent in deciding how

10

to comply with FEA regulations." United States v. Exxon Corp., 94 F.R.D. at 247-48. "[A] client waives his attorney-client privilege when he brings suit or raises an affirmative defense that makes his intent and knowledge of the law relevant." Id. (quoting Anderson v. Nixon, 444 F. Supp. 1195, 1200 (D.D.C. 1978)). In Exxon, as here, "the purpose of discovery was to ascertain whether one party acted in reliance on the representations of the other party," and the issue of reliance – whether good faith (as in Exxon), actual, justifiable or reasonable – "necessarily turns upon the subjective intention of the party claiming reliance and, therefore, demands investigation into [those] attorney-client communications [in which] such an intention would be manifested." United States v. Exxon Corp., 94 F.R.D. at 248.

        While Minebea has steadfastly maintained that it will not rely on any privileged material in presenting its case-in-chief, it also has stated repeatedly that it "justifiably relied" on Papst's and Papst's counsel's representations concerning various legal matters, such as the scope of the patents and what Minebea's rights would be under the licenses.  The Court is concerned that Papst will not be able to rebut this assertion of reliance by Minebea if information Minebea actually received from its own lawyers regarding the questions at issue were protected. Minebea has represented that it has disclosed documents and will disclose all information reflecting "facts" and "Minebea's understandings," regardless of the source of such facts or understandings. Still, one can easily foresee Minebea witnesses invoking privilege to withhold what would, in essence, be their understanding of the patents and licensing rights in question by claiming that it was "legal advice" because the "understanding" came from a Minebea lawyer or the "fact" involved was a lawyer's opinion. By putting reliance on Papst's statements in issue, Minebea has opened the door to exploration by Papst of what other persons, documents and information

11

Minebea relied on other than Papst. Without relevant documents in hand, how can lawyers for Papst effectively cross-examine a witness in an effort to demonstrate that Minebea did not just rely on Papst but had information, advice, analysis and understandings of their own, derived from other sources, including lawyers? And how could a jury fairly assess whether Minebea relied exclusively on Papst if deprived of testimony that Minebea had considered information from lawyers and of documents reflecting communications with lawyers? It is that prospect that leads the Court to conclude that Minebea has waived, in a limited manner, attorney-client privilege with respect to the nature of the patents and Minebea's rights under various agreements as they relate to the 1994 and 1995 negotiations of the 1995 Agreement between itself and Papst.

### C. Scope *of* Waiver

The Special Master has suggested a broad waiver, both in time and in scope. Although Minebea has placed its communications with counsel at issue by asserting reliance on Papst misrepresentations, a waiver of the scope suggested in the Special Master's Report and Recommendation is overly broad. As the Court suggested at oral argument, it cannot be that the filing of a fraud claim in and of itself constitutes implied or at issue waiver; there are too many fraud cases litigated where no such waiver is suggested or found. See Oct. 18 Transcript at 46-47. Rather, it is the justifiable reliance claim made by Minebea that requires the disclosure of what was discussed or written between Minebea and its lawyers, and it is only where Minebea claims reliance that Papst may explore other possibilities – including what Minebea's lawyers advised Minebea – to defend against that claim. Surely, counsel must be able to inquire what Minebea lawyers communicated to Minebea principals, employees, or agents during the 1994

and 1995 negotiations about the meaning'of the patents or terms of relevant prior agreements. To require less would unfairly deny Papst access to information "vital" to its defense that there was no reliance. Hearn v. Rhay, 68 F.R.D. at 582. To require more would go beyond what is necessary to permit the jury "to ascertain whether one party acted in reliance on the representations of the other party," United States v. Exxon Corp., 94 F.R.D. at 248, the issue at the heart of Minebea's fraud claim.'

    Although Papst has argued for the full scope of waiver as recommended in Report and Recommendation No. 6, in response to the Court's questions at oral argument Papst articulated a more limited waiver, suggesting that Minebea at least be ordered to produce documents dated or authored between November 1, 1994 and June 19, 1995 that concern (1) the scope of Minebea's licensing rights under prior agreements; (2) the scope of Papst's patents being negotiated between the parties; and (3) negotiations between Papst and Minebea. See Oct.

---

[7]   As the court said in Synalloy Corp. v. Gray:

> [Defendant], through its own affirmative action, injected the issue of fraudulent representation into the suit when it filed its amended counterclaim. Accordingly, [defendant] waived its right to prevent disclosure of communications which might have proven [defendant] did not rely on [plaintiff's] statements or that such reliance was unreasonable. Because [defendant] raised the issues of its lack of understanding of the Agreement and fraudulent misrepresentation, in circumstances in which perhaps the only people who would have explained the agreement to it were its attorneys, [defendant's] assertion in the counterclaim was an implicit waiver of the privilege.

142 F.R.D. 266, 267 (D. Del. 1992).

18 Tr. at 98. Still resisting any finding of waiver, Minebea nevertheless responded that if waiver were found the earliest date should be December 13, 1994 and further suggested that the disclosures should be limited to those documents that address the Appendix III patents only. See Oct. 18 Tr. at 100.

Upon consideration of the foregoing analysis, the Court will order Minebea to produce any withheld documents which are dated or authored between November 1, 1994 and June 19, 1995 and concern (i) the scope of the Appendix III patents; (ii) Minebea's rights prior to the 1995 Agreement as they relate to the Appendix III patents; (iii) the parties' respective rights under the 1995 Agreement as they relate to the Appendix III patents; or (iv) Minebea's reliance on Papst's representations with respect to (i), (ii), or (iii).

A separate Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 2/4/05

14