UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MINEBEA CO., LTD., PRECISION MOTORS DEUTSCHE MINEBEA, GMBH, AND NIPPON MINIATURE BEARING CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>GEORG PAPST, PAPST LICENSING GMBH & CO. KG AND PAPST LICENSING VERWALTUNGSGESELLSCHAFT MIT BESCHRANKTER HAFTUNG,<br><br>Defendants. | Civil Action No. 97-0590 (PLF)<br><br>Hon. Judge Paul L. Friedman<br><br>Reference to Special Master David W. Plant |

## PAPST STATEMENT OF MATERIAL FACTS
## AS TO WHICH IT CONTENDS THERE IS NO GENUINE ISSUE

In support of its motion for summary judgment on Minebea's conversion claims and pursuant to Local Civil Rule 7(h), Papst submits the following material facts as to which it contends there is no genuine issue:

1. Minebea commenced the captioned action on March 25, 1997. Docket No. 1.

2. Plaintiff Minebea and non-party Papst Motoren formed a so-called joint venture under the terms of an October 1990 General Business Agreement. **Ex. B**.

3. Plaintiff Minebea and non-party Papst Motoren entered an Intangible Assets Agreement on November 5, 1990. **Ex. C**.

4. Georg Papst was a director of PMDM during the period of the joint venture. Complaint ¶4.

5. On May 3, 1993, Plaintiff Minebea and non-party Papst Motoren entered a Termination Agreement, by which the joint venture between those two companies was terminated and Minebea acquired total ownership of Plaintiff PMDM. **Ex. F**.

6. At the time it entered the Termination Agreement, Plaintiff Minebea controlled at least 50% of the voting stock of Plaintiff PMDM. **Ex. B**, ¶2.

7. Non-party Papst Motoren sold its patent rights to Defendant Papst Licensing on May 26, 1993. **Ex. H** [English translation].

8. Minebea knew in advance that Papst Motoren was going to sell its patent rights to Papst Licensing. **Ex. F**, Art. 1.2c.

9. Exhibit B of the Termination Agreement expressly identifies ten German patent applications as relating to hard disk drives motors, as being filed during the period of the joint venture, and as belonging to Papst Motoren. **Ex. F**.

10. Among those ten German patent applications, the Exhibit B list specifically includes DE 41 36 996 (filed on 11 November 1991), DE 41 21 693 (filed on 1 July 1991), and DE 42 21 429 (filed on 30 June 1992). **Exs. F** and **R**.

11. Exhibit B of the Termination Agreement indicates that the respective filing dates (shown in Ex. B) of those listed German applications "constitute the priority-dates for the foreign corresponding Patent Applications of PAPST MOTOREN...." **Ex. F**.

12. U.S. Patent Nos. 5,394,283 and 5,331,483, the two U.S. patents identified in the Complaint in connection with the conversion claims, issued, respectively, from two U.S. patent applications that were among the corresponding "foreign" applications of Papst Motoren referred to in Exhibit B of the Termination Agreement. **Exs. D-F** and **R**.

13. The first page of U.S. Patent No. 5,394,283 indicates that it issued from U.S. patent application no. 974,419 filed on November 12, 1992. **Ex. D.**

14. The first page of U.S. Patent No. 5,394,283 indicates that a claim of foreign priority was made to German patent application DE 41 36 996 (filed on November 11, 1991). **Exs. D and R.**

15. **Exhibit M** includes a copy of the specification and drawings of U.S. patent application no. 974,419 (PL569290-306) that was filed in German in the USPTO on November 12, 1992.

16. **Exhibit N** includes a copy of the certified copy of the priority German patent application DE 41 36 996 (PL569379-95) that was submitted to the USPTO in connection with the prosecution of U.S. patent application no. 974,419.

17. Any subject matter disclosed in the priority German application DE 41 36 996 (**Ex. N**, PL569379-95) is also disclosed in U.S. patent application 974,419 as originally filed in German (**Ex. M**, PL569290-306). Indeed, except for heading information that was redacted above the word "Plattenspeicherantrieb", the latter appears to be a photocopy of the former. **Ex. R.**

18. The first page of U.S. Patent No. 5,331,483 indicates that it issued from U.S. patent application no. 907,516 filed on July 1, 1992. **Ex. E.**

19. The first page of U.S. Patent No. 5,331,483 indicates that a claim of foreign priority was made to German patent application DE 41 21 693 (filed on July 1, 1991). **Exs. E and R.**

20. **Exhibit O** includes a copy of the specification and drawings of U.S. patent application no. 907,516 (PL569134-43 and PL569151-54) that was filed in German in the USPTO on July 1, 1992.

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

21. **Exhibit P** includes a copy of the certified copy of the priority German patent application DE 41 21 693 (PL569227-36) that was submitted to the USPTO in connection with the prosecution of U.S. patent application no. 907,516.

22. Any subject matter disclosed in the priority German application DE 41 21 693 (**Ex. P**, PL569227-36) is also disclosed in U.S. patent application 907,516 as originally filed in German (**Ex. O**, PL569134-43 and PL569151-54). While the latter includes an additional drawing and discussion relating to that drawing, it also includes all of the drawings and discussion of the former. **Ex. R**.

23. The additional matter disclosed in U.S. patent application 907,516 (as originally filed) that is not disclosed in its priority German application DE 41 21 693 (**Ex. P**, PL569227-36) is disclosed in German application DE 42 21 429 (**Ex. S**).

24. The first page of German application DE 42 21 429 (**Ex. S**) indicates that it claims priority from German application DE 41 21 693 (**Ex. P**, PL569227-36). **Ex. R**.

25. Article 9.1 of the Termination Agreement (**Ex. F**) identifies the provisions of the Intangible Assets Agreement (**Ex. C**) that were to remain in force.

26. Paragraph 119 of the Complaint quotes the following language from §9a of the Intangible Assets Agreement (**Ex. C**): "both parties hereby confirm that new patents applicable only to HDD Motors shall be developed and registered under the name of GJV and GJV shall own and maintain such new patents."

27. The language from §9a of the Intangible Assets Agreement (**Ex. C**) that is quoted in Paragraph 119 of the Complaint occurs after the first two sentences on page 10 of the Intangible Assets Agreement (**Ex. C**) (ending with "may start from 1st of January 1996"), and is not included among the provisions listed in Article 9.1 of the Termination Agreement (**Ex. F**).

28. Article 9.2 of the Termination Agreement (**Ex. F**) states that the provisions of the Intangible Assets Agreement (**Ex. C**) that were not expressly listed in Article 9.1 (of the Termination Agreement, **Ex. F**) would cease to be effective.

29. Article 3.2 of the Termination Agreement (**Ex. F**) states, *inter alia*, that "any and all actions and performances of contractual duties taken, respectively made, by one party [i.e., including Papst Motoren] shall remain valid, and everything and/or anything received by one party [i.e., including Papst Motoren] shall remain the property of the party having received it. There shall be no claim for return and/or restitution."

30. Article 3.3 of the Termination Agreement (**Ex. F**) states, *inter alia*, that the "Parties shall consider the ceasing agreements as fulfilled."

31. Article 3.4 of the Termination Agreement (**Ex. F**) states, *inter alia*, that the parties "renounce any and all conceivable claims that may have arisen or may appear to arise from the ceasing agreements."

32. Because Plaintiff Minebea controls at least 50% of the voting stock of Plaintiff PMDM, Article 11 of the Termination Agreement (**Ex. F**) states that Plaintiff Minebea shall guarantee the fulfillment of the Termination Agreement (**Ex. F**) by Plaintiff PMDM.

33. Plaintiff PMDM previously brought and lost a parallel action in Germany against Papst Licensing, that resulted in a judgment by the Regional Court of Mannheim on February 13, 1998. **Ex. I** [English translation].

34. In considering ownership of German patent application DE 41 36 996, the 2/13/98 decision of the Mannheim court (**Ex. I**) applied Articles 3 and 11 and Exhibit B of the Termination Agreement (**Ex. F**).

35. As Exhibit B of the Termination Agreement (**Ex. F**) identified German patent application DE 41 36 996 as belonging to Papst Motoren, the 2/13/98 decision of the Mannheim court (**Ex. I**) found that Article 3 of the Termination Agreement (**Ex. F**) precluded Minebea from claiming the contrary, and that Article 11 of the Termination Agreement (**Ex. F**) bound PMDM to the release by Minebea.

36. The 2/13/98 decision of the Mannheim court stated that Minebea and Papst Motoren had

> agreed that [Papst Motoren] is entitled to the invention litigated herein [and had] declared that any reciprocal claims deriving from earlier contracts were considered settled. The acceptance of the fact that [Papst Motoren] is entitled to the invention litigated herein can be held against [PMDM] in its capacity as a subsidiary of [Minebea] because of [Article 11. Papst Licensing] has thus effectively acquired from [Papst Motoren] the patent application and/or invention litigated herein. Within the meaning of Art. 8 of the [German] Patent Law, [PMDM] is not the entitled party in the patent application for the invention litigated herein.

**Ex. I** at 14.

37. Article 5.3 of the Termination Agreement (**Ex. F**) states that the "Parties [Minebea and Papst Motoren]

> have checked and established that the [resigning directors] have no pending claims for expenses and/or remuneration and that the respective companies [including PMDM] have no pending claims of any kind against the resigning persons, and said persons are hereby granted discharge by the companies [including PMDM]."

38. During an extraordinary meeting on August 5, 1993, the shareholders of Plaintiff PMDM adopted a resolution that Georg Papst was no longer a managing director of PMDM, and that he was granted discharge ("Entlastung"). **Ex. K**.

39. Plaintiff PMDM previously brought a parallel action in Germany against Papst Licensing, that resulted in a judgment by the Regional Court of Konstanz on October 17, 1997,

and in an appellate decision by the Superior Court Karlsruhe on December 17, 1998. **Ex. Q** [English translation].

40. The 12/17/98 appellate decision of the Karlsruhe court elaborated on the legal effect of the August 5, 1993 discharge ("Entlastung") of Georg Papst by PMDM, and said that the claims released by such a discharge were those that were detectable to the shareholders' meeting, "upon careful examination of all supporting documents and reports, or of which [the sole shareholder Minebea] had private knowledge." (**Ex. Q** at 11). It continued that the claims released included "claims to illicit enrichment." *Id.*

May 4, 2005                                             Respectfully submitted

*/s/ Richard W. McLaren*

Richard W. McLaren, Jr.
Daniel R. Cherry
WELSH & KATZ, LTD.
120 South Riverside Plaza
22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Campbell Killefer
D.C. Bar No. 268433
VENABLE, LLP
Terrell Place
575 7th Street, N.W.
Washington, DC 20004-1601
(202) 344-4000

Counsel For Defendants