UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MINEBEA CO., LTD., PRECISION MOTORS DEUTSCHE MINEBEA, GmbH, and NIPPON MINIATURE BEARING CORPORATION, <br><br>Plaintiffs, <br><br>v. <br><br>GEORG PAPST, PAPST LICENSING GmbH & CO. KG, and PAPST LICENSING VERWALTUNGSGESELLSCHAFT MIT BESCHRANKTER HAFTUNG, <br><br>Defendants. | Civil Action No 97-0590 (PLF) <br><br>Hon. Judge Paul L. Friedman <br><br>Reference to Special Master David W. Plant |

## DECLARATION

I, Andreas Junius, declare as follows:

1. I am a German lawyer, knowledgeable and experienced in German law, and have been engaged in that capacity by the Defendants in connection with the captioned action.

2. I received my formal legal education at Ruhruniversität Bochum, Germany, Rheinische Friedrich-Wilhelms-Universität Bonn, Germany, and Columbia University School of Law, New York, New York. I received a Master of Laws degree from Columbia and a Dr. jur. (J.S.D. equivalent), magna cum laude, from Rheinische Friedrich-Wilhelms-Universität. I am admitted to practice law in New York and in Germany.

3. In 1982-83, I was a foreign associate for Walter Conston & Schurtman, P.C., New York. In 1983-86, I had various clerkships with the Ministry of Justice of the State of Hesse, Germany. In 1986-2000, I was an attorney with Pünder Volhard Weber & Axster, Frankfurt/Main and New York. Since 2000, I have been an attorney with Clifford Chance, New York. Among other things, my work encompasses cross-border transactions and transactions involving technology companies. I advise clients on questions of German law, and have acted as an expert witness on German law in US trials and as an arbitrator with the American Arbitration Association.

4. I am the author of "Übernahme ausländischer Unternehmen, USA," in Semler/Volhard, "Arbeitshandbuch fur Unternehmensübernahmen," 2001; "The United Nations Council for Namibia," 1988; "Die Richtlinien des US-Justizministeriums zu vertikalen Wettbewerbsbeschränkungen," 1985; and a co-author of "Gründen und Führen einer US-Unternehmung, Handbuch fur Direktinvestitionen in den USA," 1984.

5. I understand that the Plaintiffs in the captioned action have claimed conversion/unjust enrichment. I understand that those claims are based on allegations that employee inventions that allegedly should have belonged to Plaintiff PMDM were allegedly taken by Defendants for themselves.

  (a) Under German law, such a cause of action may be based on § 8 of German Patent Law (*Patentgesetz*).[*] That section is the statutory provision under which the lawful owner of an invention can claim assignment of a patent from the unlawful holder of a patent.

  (b) The German Employee Inventions Law governs the ownership of employee inventions. The employer becomes the lawful owner of an employee's invention after the invention is utilized in accordance with that law.

  (c) Following unlimited utilization (*Inanspruchnahme*) of the invention in accordance with the German Employee Inventions Law, the employer is entitled to apply for patent protection in Germany and in foreign countries (including the United States), and is entitled to sell those rights to a third-party. [§§13 and 14 of the Employee Inventions Law; Bartenbach-Volz, Commentary to the German Employee Inventions Law, 4th edition 2002, note 6 to §7]. In other words, by its unlimited utilization of an employee invention, an employer takes possession of and exercises ownership over the invention and the rights to apply for patent protection worldwide.

---

[*] English translations of the relevant portions of statutory provisions, commentaries and court decisions referred to or cited herein are provided in Appendix A hereto in the order they appear in the main text of this Declaration. All such translations are my own or have been confirmed by me to be accurate.

6.  I have read various documents in connection with the captioned action, including the May 3, 1993 Termination Agreement between Minebea and non-party Papst Motoren, and a February 13, 1998 judgment by the District Court of Mannheim (docket no: 7 O 231/97). (I have seen the original German judgment and an English translation.) The Mannheim judgment was in connection with an action brought by Plaintiff PMDM against Defendant Papst Licensing regarding ownership of German patent application DE 41 36 996 based on allegations also raised in the complaint in the captioned action.

(a) The Mannheim court relied on Exhibit B of the Termination Agreement expressly identifying a patent application in issue as belonging to Papst Motoren, on releases of Article 3 of the Termination Agreement precluding Minebea from making a claim to the contrary, on Article 11 (Group Clause) of the Termination Agreement binding PMDM to that concession by Minebea, and on Papst Licensing having purchased the property from Papst Motoren. The same reasoning, as the Mannheim court applied to the invention of German patent application DE 41 36 996, would be applicable in applying German law to determine ownership of the inventions described in all of the patent applications referred to in Exhibit B of the Termination Agreement.

(b) I understand that the "PMDM-G" mentioned in the Termination Agreement is the Plaintiff PMDM of the captioned action, that the parties to the Termination Agreement (Minebea and Papst Motoren) were the shareholders of PMDM when the Termination Agreement was executed, and that Defendant Georg Papst was one of the resigning members of the board of directors of PMDM to which Article 5.3 of the Termination Agreement refers. As the Termination Agreement was executed by Minebea and Papst Motoren, Article 5.3 constitutes a release of Georg Papst by the shareholders of PMDM. Under German law, this release of Georg Papst, and the implied undertaking not to raise any such claims, is also binding on Minebea with respect to PMDM because, in Article 11 of the Termination Agreement, Minebea guaranteed the fulfillment of the Termination Agreement by PMDM. This is consistent with the interpretation of Article 11 by the Mannheim court as discussed above.

7. I have also read an August 5, 1993 resolution adopted during an extraordinary meeting of the shareholders of PMDM, resolving that Georg Papst was no longer a managing director of PMDM, and that Georg Papst was granted discharge (*Entlastung*).

(a) Under German law, a discharge ("*Entlastung*") that is granted to a managing director operates as a waiver or recognition of the non-existence of any claims against the managing director for acts prior to discharge of which the shareholders knew or could have known by observing due diligence in reviewing submissions and reports made available to them. [BGH in NJW 1959, 192, 193, 194; BGHZ 97, 382, 384 et seq.; BGH in DB 1968, 2166, 2166; BGH in WM 1976, 736, 737]. It relinquishes claims for damages as well as claims for unjust enrichment. [BGHZ 97, 382, 385, 386].

(b) This was confirmed in an appellate decision elaborating on the legal effect under German law of this August 5, 1993 release of Georg Papst. PMDM apparently brought a separate lawsuit against Georg Papst in Germany to obtain certain records. There was a partial judgment by the Regional Court of Konstanz on October 17, 1997. (I have seen the original German judgment and an English translation.) After cross-appeals, there was a decision by the Superior Court Karlsruhe (Freiburg panel) on December 17, 1998. (I have seen the original German judgment and an English translation.) The Karlsruhe appellate decision elaborated on the legal effect of the discharge (*Enlastung*) under German law. The court said that the claims released by such discharge were those that were detectable to the shareholders' meeting, "upon careful examination of all supporting documents and reports, or of which [the sole shareholder Minebea] had private knowledge." [English translation at 11]. It continued that the claims released included "claims to illicit enrichment." [English translation at 11].

(c) Under German law, the knowledge attributable to a corporation is defined as the knowledge of all employees with a duty to keep management informed about the subject matter in issue and the knowledge ascertainable from the books and records of the company. [See

BGHZ 83, 293, 296; BGH in NJW 1984, 1953, 1954, BGH in NJW 1989, 2879, 2881, BGH in NJW 1989, 2881, 2882].

This Declaration expresses my expert opinions, and cites some German legal authorities supporting my opinions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 27 January 2005.

_____
Andreas Junius

## Appendix A

## Translations of Citations

**German Patent Law**

Sec 8.- Patent Vindication

An entitled person whose invention has been applied for by a person not so entitled may require the patent applicant to surrender to him the right to the grant of a patent. If the application has already resulted in a patent, he may require the patentee to assign the patent to him. ...

**German Employee Inventions Law**

Sec. 13.- Application for Domestic Industrial Property Protection

(1) An employer ... is exclusively entitled to apply for domestic industrial property protection for a service invention reported to him. ...

...

Sec. 14.- Application for Industrial Property Protection Abroad

(1) After making an unlimited claim to a service invention, an employer shall also be entitled to apply for industrial property protection abroad.

...


## Appendix A

## Translations of Citations

**German Patent Law**

Sec 8.- Patent Vindication

An entitled person whose invention has been applied for by a person not so entitled may require the patent applicant to surrender to him the right to the grant of a patent. If the application has already resulted in a patent, he may require the patentee to assign the patent to him. ...

**German Employee Inventions Law**

Sec. 13.- Application for Domestic Industrial Property Protection

(1) An employer ... is exclusively entitled to apply for domestic industrial property protection for a service invention reported to him. ...

...

Sec. 14.- Application for Industrial Property Protection Abroad

(1) After making an unlimited claim to a service invention, an employer shall also be entitled to apply for industrial property protection abroad.

...

**Bartenbach-Volz, Commentary to the German Employee Inventions Law, 4th edition 2002, note 6 to § 7**

"...As the person now **solely entitled**, the employer is entitled to all kinds of utilization of his rights in the invention, ..., to utilize it himself or grant (exclusive or simple) rights of utilization (licences); based on the conveyance he is also entitled to apply for industrial property protection abroad (see § 14 para (1)). He may freely dispose of the invention also by transferring it in whole or – in order to obtain industrial property rights protection abroad – in part..."

**BGH in NJW 1959, 192, 193**

"...The discharge [*Entlastung*] that is granted to a managing director of a limited liability company (*GmbH*) operates as a waiver or recognition of non-existence of claims against the managing director..."

**BGHZ 97, 382, 384 et seq.**

"...As summarized by this senate in its decision dated 20 May 1985 (II ZR 165/84, WM 1985, 1200), a discharge in the law pertaining to the limited liability company excludes the limited liability company from claims or reasons for termination which the shareholders' meeting could have known by observing due diligence in reviewing submissions and reports made available to them, or of which all shareholders had private knowledge..."

**BGH in DB 1968, 2166, 2166**

"...The discharging effect of the resolution granting discharge is limited to facts, of which the shareholders' meeting could have had knowledge by observing due diligence in reviewing all submissions and reports made available to them..."

**BGH in WM 1976, 736, 737**

"...The discharge exempts only from claims of which the shareholders' meeting could have known by observing due diligence in reviewing submissions and reports made available to them..."

**BGHZ 97, 382, 385, 386**

"... the discharging effect of the discharge can extend to claims that are not solely compensatory for damages in nature..."

"...In continuance of its case law, the senate affirms the issue that the effect of the discharge also includes claims against the managing director for unjust enrichment, to the extent the transfer of assets creating the enrichment is based on measures of the management..."

**BGHZ 83, 293, 296**

"...Who uses a representative to make declarations of intent in legal relations or subsequently ratifies of the actions of a person acting on his behalf as a representative without authority, has to acknowledge that – to protect the interests warranting protection of the addressee - that the knowledge of the representative is attributed to him as his own..."

**BGH in NJW 1984, 1953, 1954**

"...It is generally acknowledged that the knowledge of a member of the executive body of a legal entity about the cessation of payments or the initiation of bankruptcy proceedings is sufficient, even if he was not involved in the conclusion of the rescinded deal..."

**BGH in NJW 1989, 2879, 2881**

"...To support its decision, the IX. Civil senate refers to the general legal principle, according to which he who uses a representative when dealing with certain matters has to acknowledge that the knowledge the representative gained in this regard is attributed to him as his own, and he therefore cannot claim lack of knowledge..."

**BGH in NJW 1989, 2881, 2882**

"...He (*note*: the Plaintiff's representative) gained knowledge of the facts which were relevant here during his occupation for Plaintiff as his representative..."