

**THE HESS-ROBBINS GROUP**
477 West 22 Street, Suite 1, New York, NY 10011-2550, Phone 212 929 7263, Fax 212 675 0214
NEW YORK · WALD-ZURICH SWITZERLAND

*CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *a Judgment issued by the Regional Court of Mannheim on Feb. 13, 1998, bearing Index no. 7-0-231/97, in the litigation between Precision Motors Deutsche Minebea GmbH versus Papst Licensing GmbH*, has been translated by staff members of THE HESS-ROBBINS GROUP from *German* into *English* and is to the best of our knowledge, ability and belief a true and accurate translation of the original.

For THE HESS-ROBBINS GROUP:

Sworn to and subscribed before me

this 16th day of March 1998

MAYA HESS
Notary Public, State of New York
No. 4953017
Qualified in New York County
Commission Expires July 3, 19??

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

[Coat of Arms]

Index number:
7-0-231/97

Made public on February 13, 1998

Ms. Kirin, Court Employee
as Clerk of the Court
[Received stamp:]
Feb. 24, 1998

## The Regional Court of Mannheim

**7th Civil Chamber**

**In the name of the People**

## Judgment

In the litigation between

**Precision Motors Deutsche Minebea GmbH**
repres. by Mr. Oswald Kuwert, Managing Director
Max-Planck Str. 14, 78549 Spaichingen

- Plaintiff -

Trial attorneys:
Reeg and Colleagues, Mannheim, Box 245
Assisting: Patent Attorney Dr. Riebling, Lindau i.B.

versus

**Papst Licensing GmbH**
repres. by Mr. Georg Papst, Managing Director
Max-Planck Str. 14, 78549 Spaichingen

- Defendant -

Trial attorneys:
Schilling and Colleagues, Mannheim, Box 163
Assisting: Attorneys Schädel, Stuttgart

in re surrender of patents and information

the 7th Civil Chamber of the Regional Court of Mannheim
based on oral deliberations held November 28, 1997
with the participation of

Dr. Lippok, Presiding Judge at the Regional Court
Dr. Deichfuß, Judge at the Regional Court
Dr. Singer, Judge

have adjudged as follows:

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

2

1.  The complaint is dismissed.

2.  The Plaintiff shall bear the costs of the litigation.

3.  The Defendant may obtain provisional enforcement of the judgment if it submits a surety in the amount of DM 15,000.00.

    The surety may be submitted by means of an unlimited, principal guaranty issued by a bank authorized in Germany as a guarantor in customs and tax matters.

3

## Issues of Fact:

On October 2, 1990, the company known as Minebea Co., Tokyo, which is presently the sole shareholder of Plaintiff, and Papst-Motoren GmbH & Co. KG concluded an agreement described as a "General Business Agreement." Inter alia, the agreement provided for the establishment of a joint venture domiciled in Germany for the purpose of researching, developing, designing, manufacturing, and marketing of HDD motors. Accordingly, on January 4, 1991, the Plaintiff was established as a joint venture, and entered in the Commercial Register on January 21, 1991. Georg Papst, who was also at the same time the managing director and shareholder of Papst-Motoren GmbH & Co. KG, was appointed the sole managing director of Plaintiff and entered in the Commercial Register. Minebea Co., Tokyo, and Papst-Motoren GmbH & Co. KG at first each held 50% of the stock in the Plaintiff. Among other things, it was provided within the framework of the cooperation between Minebea Co. and Papst-Motoren GmbH & Co. KG that the Papst-Motoren GmbH & Co. KG operations department involved in the development and manufacturing of HDD motors, including the personnel, would be transferred to the Plaintiff. The new operation was to be established in Spaichingen. The employment contracts between Papst-Motoren GmbH & Co. KG and those employees who were to be transferred to the Plaintiff were terminated as of February 1, 1991. At the same time, the Plaintiff concluded new employment contracts with these employees as of February 1, 1991. Since no organizational preparations had been made at that point in time for integrating the HDD motor development department of Papst-Motoren GmbH & Co. KG into its plant in Spaichingen, the employees in question thus continued to remain at their respective work places at Papst-Motoren GmbH & Co. KG in St. Georgen. Thus, development engineer Jürgen Oelsch was transferred to the Plaintiff on February 1, 1991, but actually remained in the plant of Papst-Motoren GmbH & Co. KG until the end of 1991. Dr. Helmut Hans, director of development at Papst-Motoren

4

GmbH & Co. KG, was employed by Papst-Motoren GmbH & Co. KG until March 31, 1993 and thereupon changed his employment to the Plaintiff on March 13, 1993.

Dr. Helmut Hans and Jürgen Oelsch made an invention together regarding a bearing method for disk storage drives with a stator and a rotor having a centric hub, to whose outer surface one or more hard disks could be attached. Dr. Hans and Jürgen Oelsch together notified Papst-Motoren GmbH & Co. KG of this invention in a writing dated July 4, 1991 (Exhibit K 1). The invention was filed under internal file number DE-5011. Receipt of the notification of invention was acknowledged by Papst-Motoren GmbH & Co. KG in a writing dated July 16, 1991 (Exhibit B 1). By written statement dated October 22, 1991, Papst-Motoren GmbH & Co. KG claimed Invention No. DE-5011 from both Dr. Hans and Jürgen Oelsch. The claim was respectively acknowledged to Papst-Motoren GmbH & Co. KG by Dr. Hans on October 22, 1991 and by Jürgen Oelsch on October 23, 1991 (Exhibits B 2 and B 3). On November 8, 1991, Papst-Motoren GmbH & Co. KG filed a patent application for Invention No. DE-5011 with the German Patent Office with the disclosure document in Exhibit B 4. A request for examination was not made. Therefore, no patent was granted.

In addition to the above mentioned agreement dated October 2, 1990 (General Business Agreement, Exhibit K 3), Papst-Motoren GmbH & Co. KG and the Minebea company concluded an "Agreement for the Sale of Intangible Assets" (K 3, K 3 a) on November 5, 1990. The translation submitted by Plaintiff reads as follows in No. 9a, second paragraph, last sentence [Tr. note: This is a retranslation of the German translation]: "At the end of this period, Papst and Minebea shall negotiate regarding new patent licenses which Papst could acquire for products other than HDD motors, but which are applicable for HDD motors for the term of this agreement and which are required and necessary for the research and development (R+D), manufacture, and sale of HDD motors: however, both parties hereby

5

confirm that new patents pertaining to HDD motors only are to be developed and applied for in the name of the German joint venture, and that the German joint venture shall be the owner and holder of such patents."

The cooperation between Papst-Motoren GmbH & Co. KG and the Minebea Co., Tokyo, was ended by their entering into a "Termination Agreement" dated May 3, 1993 (Exhibit B 5). Article 3, nos. 3.2 and 3.3 provided that, barring some contrary provision in the same contract, all reciprocal demands of the parties in connection with their joint activities were settled and that each party was entitled to retain that which it had acquired out of the cooperation. Article 1, no. 1.2 b) of the same contract provided that Papst-Motoren GmbH & Co. KG's interest in the Plaintiff was to be transferred to Minebea Co., Tokyo, so the latter would become a 100% shareholder. In Article 7 of the contract, it was agreed that Minebea Co. would continue to be entitled to use the Papst-Motoren GmbH & Co. KG's patents and those inventions for which patent applications had been filed. This was also to be expressly applicable to such inventions which had been made by Papst-Motoren GmbH & Co. KG while the contracting parties were in cooperation. In accordance with Article 7, the latter inventions are listed in "EXHIBIT B," the annex to the contract. The inventions listed in EXHIBIT B also include Invention No. 4136996, with a filing date of November 11, 1991, which is undisputedly Invention No. DE-5011 (Exhibit B 4). Article 11 of the contract dated April 21, 1993 contains a group clause according to which Minebea Co., Tokyo and Papst-Motoren GmbH & Co. KG agreed that the Termination Agreement can also be complied with by companies in which either contracting party held a 50% or greater interest.

The Plaintiff has been a solely owned subsidiary of Minebea, Tokyo since August 16, 1993. Georg Papst ceased to be the Plaintiff's managing director; his employment relationship ended at the same time. On October 28, 1993, his termination as managing director

6

was entered in the Commercial Register.

In mid-1992, Georg Papst ceased to be a shareholder in Papst-Motoren GmbH & Co. KG; at the end of 1992, he established the Defendant, with himself as sole founding shareholder. By contract dated May 26, 1993, the Defendant acquired all of Papst-Motoren GmbH & Co. KG's inventions for which notification had been made by June 30, 1992, as well as patent applications and patents.

The German Patent Office disclosed under file no. DE-42 38 886 A an invention by Johann von der Heide, an employee of Plaintiff, regarding a procedure for manufacturing a disk storage unit. According to Exhibit B 6, the Plaintiff under its former company name is listed as the applicant.

Papst-Motoren GmbH & Co. KG paid one of its employees, Mr. Heinrich Cap, an invention bonus in the amount of DM 80,000.00 and debited half this amount to the Plaintiff, as evidenced by bookkeeping [debit] note dated January 21, 1992 (Exhibit K 6).

There is another legal dispute pending between the Plaintiff and the Defendant's managing director, Georg Papst, before the Regional Court of Konstanz (reference is made to the partial judgment dated October 17, 1997, attached as Exhibit K 5). Other proceedings are pending before the U.S. District Court in Washington between the Plaintiff to this litigation and its parent company, and the Defendant and its proprietor and managing director, Georg Papst.

The Plaintiff is of the opinion that it is entitled to a consent judgment assigning the patent, or alternatively assigning all the rights out of the patent application with respect to Patent No. P 41 36 996 (= DE-5011), because this was an employee invention, and that at the very least the main inventor, Jürgen Oelsch, had made the invention as its employee within the framework of work remunerated by it. It alleges it to be irrelevant that this

7

invention was made on the premises of Papst-Motoren GmbH & Co. KG.
Furthermore, it alleges that it is entitled to a claim in
accordance with Art. 8 of the Patent Law in connection with No. 9a
of the Agreement for the Sale of Intangible Assets (Exhibit K 3,
3a) dated November 5, 1990, since the latter provides that new
patents which pertain to HDD motors only are to be developed and
registered in its name, and that it is the owner and holder of said
patents. It claims that the invention pertains to HDD motors only.
It alleges that the Termination Agreement dated May 3, 1993
(Exhibit B 5) was not, as regards EXHIBIT B, authentic and was not
submitted to Minebea for signature, and is therefore not valid.

It claims that during his management tenure, intentionally and in
bad faith, Plaintiff's former managing director Georg Papst used
inventions made by Plaintiff's employees in order to file patent
applications in the name of Papst-Motoren or the Defendant.

It is of the opinion that according to Art. 260, Sec. 1 of the
Federal Code and Art. 242 of the Federal Code, it has a right to
disclosure from the Defendant, and that furthermore there is a
special relationship between the parties because the inventions
made by the Plaintiff's employees were administered by the patent
department of Papst-Motoren GmbH & Co. KG.  With regard to the
patents and patent applications resulting from these inventions, it
is of the opinion the Defendant is the legal successor to Papst-
Motoren GmbH & Co. KG. It claims it cannot acquire the information
required according to Art. 8 of the Patent Law by itself.  In and
of itself, debiting the Plaintiff for half the payment of the
amount of DM 80,000.00 raises the strong suspicion that the
Defendant applied for and received intellectual property rights
which are due the Plaintiff, which is why an order for disclosure
should be issued.

The Plaintiff petitions as follows:

8

1. That a consent judgment be entered, ordering the Defendant to assign to the Plaintiff the patent for which application has been made to the German Patent Office under File No. P 41 36 996,

   alternatively:

   That a consent judgment be entered, ordering the Defendant to assign to the Plaintiff all rights to the patent application filed with the German Patent Office under File No. P 41 36 996, in particular the right to granting of a patent.

2. That the Defendant be ordered to furnish the Plaintiff information concerning the following:

   a) all patents recorded in the Register of Patents maintained by the German Patent Office or the European Patent Office, in its name or in the name of Papst-Motoren GmbH & Co. KG or in the name of a third party,

   b) all patent applications filed with the German Patent Office or the European Patent Office, in its name or in the name of Papst-Motoren GmbH & Co. KG or in the name of a third party,

      that relate to inventions:

      (1) which were made by employees of the Plaintiff, in particular Messrs. Jürgen Oelsch, Johann von der Heide, Uwe Müller, and/or Guido Schmidt, as well as contract employees or others, who were active on the payroll of the Plaintiff within the framework of occupational activities performed by them at the Plaintiff's, or which include one of the above mentioned persons as co-inventor, or

      (2) for which permanent or contract employees of the Defendant or of Papst-Motoren GmbH & Co. KG or others, in particular Mr. Heinrich Cap, received compensation which was debited to the Plaintiff wholly or in part, at the expense of the Defendant or of the Papst-Motoren GmbH & Co. KG, or

      (3) which were notified to Papst Motoren GmbH & Co. KG during the period from January 4, 1991 through August 16, 1993, and which pertain to hard disk drive motors, even if other applications can be found for these inventions.

3. The Defendant is ordered to submit a sworn affidavit that the information it provides is correct and complete.

9

4.    Subsequent to providing the disclosure, the Defendant is
ordered to consent to assign such patents as are to be
specified in greater detail at that time, including co-
inventor share if applicable, or alternatively to agree to
assign all claims derived from the patent applications to be
specified in greater detail at that time, in particular the
right to granting of patents on the basis of said patent
applications, corresponding to the co-inventor share if
applicable.

It petitions for an interlocutory partial judgment with regard to
the claim for disclosure.

The Defendant petitions for

dismissal of the complaint.

The Defendant is of the opinion that the Plaintiff is entitled to
neither assignment nor disclosure.  The Plaintiff never declared
its claim to Invention No. DE-5011, and retroactive claim
declaration is barred by the statute of limitations.  It sets forth
that the Plaintiff's percentage share of the invention is also
questionable, since co-inventor Hans was undisputedly employed in
the service of Papst-Motoren GmbH & Co. KG.

It is of the opinion that furthermore the Defendant properly
received assignment of Invention No. DE-5011 from Papst-Motoren
GmbH on May 26, 1993.  It states that Papst-Motoren GmbH & Co. KG
was entitled to the invention based on a reading of the Termination
Agreement dated May 3, 1993 with the Plaintiff's "parent company"
as per the annex (EXHIBIT B), since this expressly states that the
invention shall remain with Papst-Motoren GmbH & Co. KG.  Insofar
as the Plaintiff is making reference to clauses in the contract
dated November 5, 1990 (Exhibit K 3), this has been cancelled by
the Termination Agreement of May 3, 1993.  It further states that
EXHIBIT B was available to the contracting party in the version
submitted herein at the time of signature of the contract, given
that the language of the contract makes explicit reference thereto.

10

It is of the opinion that the Plaintiff is not entitled to disclosure, since the suspicion expressed by the Plaintiff is without foundation, and the Defendant is entitled to the above mentioned invention No. DE-5011.

For further details, reference is made to the briefs exchanged with enclosures and to the record of the oral hearing of November 28, 1997 (Court File 84 et seq.).

11

## Rationale:

The admissible complaint is unjustified, the Plaintiff is not entitled to the assignment and disclosure claims it is asserting.

Petition Number 1 for assignment of patent P 41 36 996 should be dismissed, since the patent application did not result in the granting of a patent in the meaning of Art. 8, Sec. 2 of the Patent Law.

The alternative application for assignment of all rights out of the patent application filed with the German Patent Office should also be dismissed. Plaintiff has not shown any rights to the invention designated as file P 41 36 996.

It was undisputedly not the Plaintiff but Papst-Motoren GmbH & Co. KG which claimed the invention from the inventors, Dr. Hans and Jürgen Oelsch, in accordance with Art. 7, Sec. 1 in connection with Art. 6 of the Employee-Invention Act, by its letter dated October 22, 1991 in accordance with Exhibits B 2 and B 3. There is no evidence that Papst-Motoren GmbH & Co. KG was thereby representing the Plaintiff. In particular, it has not been shown that the Plaintiff is entitled to the work product of Mr. Oelsch and Dr. Hans, that the Plaintiff was performing its duties as employer within the framework of performing supervision, and that it is thus an employee invention belonging to the Plaintiff. The mere fact that one of the two inventors was employed and paid by the Plaintiff at the time of the invention does not necessarily suggest that it is an employee invention belonging to the Plaintiff, especially since the second inventor was undisputedly an employee of Papst-Motoren GmbH & Co. KG, and given that at the time of the invention, inventor and Plaintiff employee Oelsch was physically on the premises of Papst-Motoren GmbH & Co. KG and an integral part of the office at said location. The Plaintiff has not shown that it

12

instructed its employees to perform research in that direction, or even to what extent it acted as an employer, except for the payment of salaries.

Also, insofar as the Plaintiff sets forth that it did not have a patent department of its own at that point in time and that this function had been performed by Papst-Motoren GmbH & Co. KG, it nevertheless does not necessarily derive therefrom that the invention being litigated herein is an employee invention belonging to the Plaintiff. In particular, it is not readily apparent that it is precisely the Plaintiff which is entitled to the work product of the two inventors, whether in whole or in part. To that extent, the Plaintiff is therefore not entitled to the assignment it claims in accordance with Art. 8 of the Patent Law.

Nor does the Plaintiff's right with regard to the invention being litigated herein follow from Sec. 9a, 2nd paragraph of the agreement between Minebea, Tokyo, and Papst-Motoren GmbH & Co. KG dated November 5, 1990 (Exhibit K 3 and K 3a). The agreement of November 5, 1990 was concluded in conjunction with establishing the Plaintiff as a joint venture of the Minebea, Tokyo and Papst-Motoren GmbH & Co. KG. The cooperation within the framework of the joint venture was undisputedly ended by means of the Termination Agreement dated May 3, 1993 (Exhibit B 5), with Papst-Motoren GmbH & Co. KG consenting to transfer its shares in the Plaintiff to Minebea, Tokyo. In addition, in Article 3, Nos. 3.2 and 3.3, the contracting parties expressly covenanted that, barring specific contrary provisions within the same contract, all reciprocal claims were settled, and that each party was entitled to retain that which it had acquired out of the cooperation. The contracting parties thus obviously put an end to their joint commitment with the Plaintiff, and used said contract to regulate which party was entitled to claim what. The contracting parties explicitly set forth that all reciprocal claims were settled unless specific provisions were concluded in the same contract. A specific

13

provision of this type is contained in the annex "EXHIBIT B," and Article 7 makes express reference to the annex. This annex lists 10 patent applications indicating their file number and application date, and explicitly designating them to belong to Papst-Motoren GmbH & Co KG. The Minebea Co. Ltd., Tokyo thereby recognized that Papst-Motoren GmbH & Co. KG was entitled to the patent application being litigated herein. This adverse fact must be accepted by the Plaintiff, which was not a contracting party to the contract in question. In Article 11, the parties expressly agreed upon a group clause according to which Minebea had the obligation of guaranteeing performance of the contract, including by companies in which it held an interest of 50% or more. At that point in time, Minebea, Tokyo held a 50% interest in the Plaintiff's shares, and today it is the sole shareholder thereof.

Contrary to the Plaintiff's opinion, from the circumstance that the annex known as EXHIBIT B was not signed by a representative of the Minebea Co., Ltd. Tokyo, it does not necessarily follow that the parties failed to reach agreement in this regard. The Termination Agreement, together with the annex EXHIBIT B, signed and initialed by Dr. Gerhard Schätzle for Papst-Motoren GmbH & Co. KG, was undisputedly transmitted to Minebea Co. Ltd. The Termination Agreement, undisputedly signed by Minebea Co. Ltd., contains no indication that Minebea Co. Ltd. wished to make any changes to annex EXHIBIT B. The existence of the annex is expressly mentioned in the text of the Termination Agreement, Article 7 (third line from bottom). The Minebea Co. Ltd.'s signing of the contract referred to as the Termination Agreement thus encompasses the annex as well. Knowledgeable outsiders cannot interpret the contents of the acceptance declaration in any other way. In particular, the Plaintiff does not claim that the contents of annex EXHIBIT B were different at the time the contract was submitted to Minebea Co. Ltd., Tokyo, than they are now in Exhibit B 5 as submitted to the Court. The Plaintiff does not adduce what such other contents of the annex could have been. Evidently no changes to the annex were

14

made by Minebea, nor does the Plaintiff set forth that Minebea Co. Ltd. envisioned an annex whose contents were different. In particular, there is no statement that the annex EXHIBIT B includes any contents deviating from the oral agreement. Insofar as the representatives of Minebea Co. Ltd. signed the contract lacking any knowledge of the annex, the signature encompasses the annex as well, as the latter is mentioned in the very text of the contract.

Based on the agreement referred to as the Termination Agreement and the annex (EXHIBIT B) contained in this agreement, Minebea Co. Ltd. and Papst-Motoren GmbH & Co. KG thereby agreed that Papst-Motoren GmbH & Co. KG is entitled to the invention litigated herein, namely the invention and/or its [patent] application. At the same time, the contracting parties declared that any reciprocal claims deriving from earlier contracts were considered settled. The acceptance of the fact that Papst-Motoren GmbH & Co. KG is entitled to the invention litigated herein can be held against the Plaintiff in its capacity as a subsidiary of Minebea Co. Ltd. because of the group clause. The Defendant has thus effectively acquired from Papst-Motoren GmbH & Co. KG the patent application and/or invention litigated herein. Within the meaning of Art. 8 of the Patent Law, the Plaintiff is not the entitled party in the patent application for the invention litigated herein.

It is therefore not entitled to any assignment with regard to the patent application designated as file P 41 36 996.

Nor is the Plaintiff entitled to the disclosure it is claiming at No. 2. Insofar as the Plaintiff is basing its claim for disclosure on the circumstance that the Defendant applied for a patent to which it was entitled, designated as file P 41 36 996 (No. DE-5011), a reference to the above statements indicates that the Defendant, not the Plaintiff, is the party entitled to the patent application litigated herein.

15

Insofar as the Plaintiff is basing its disclosure claim against the Defendant upon the special relationship existing between the parties because Papst-Motoren GmbH & Co. KG administered the Plaintiff's patents and patent applications, one must conclude that such an activity was performed by Papst-Motoren GmbH & Co. KG, if at all, and under no circumstances by the Defendant.

Insofar as the Plaintiff is basing its claim for disclosure upon the suspicion that the Defendant possesses inventions, patent applications, or patents which belong to the Plaintiff, the Plaintiff has presented no adequate evidence to substantiate this suspicion.  Insofar as the basis used is that the Defendant filed a [patent] application for invention DE 42 38 986 A1 made by Plaintiff's employee Johann von der Heide, the Defendant has answered Plaintiff's assertion with Exhibit B 6, by producing the disclosure document with the corresponding index number, wherein the applicant listed is the Plaintiff under its former company name.  This circumstance has not been disputed by the Plaintiff.

Insofar as the Plaintiff is basing itself upon the applied-for invention DE 42 13 886 A1 made by its employees, Messrs. Müller and Oelsch, the Defendant has set forth that a patent application bearing such number is not known, and that a query to the German Patent Office showed that there was no disclosure document bearing this number.  The Plaintiff has set forth no further details with regard to the patent applications it claims; however, the mere suspicion that the Defendant made such a patent application without being entitled to do so is not sufficient to justify a claim for disclosure.

Also, insofar as the Plaintiff is using payment of half the DM 80,000.00 to an employee of Papst-Motoren GmbH & Co. KG as a basis for its claim for disclosure, this does not justify a claim for disclosure. In particular, the payment is not an indication of who is entitled to the invention. No detailed circumstances justifying

16

the Plaintiff's entitlement have been set forth.  The Plaintiff is
thus not entitled to any disclosure vis-à-vis the Defendant.  The
complaint should therefore be dismissed in its entirety.

The order as to costs is based on Art. 91 of the Code of Civil
Procedure, the decision regarding provisional enforceability is
based on Art. 709 of the Code of Civil Procedure.

Dr. Lippok                    Dr. Deichfuß              Dr. Singer
Pres. Judge at the Reg. Ct.   Judge at the Reg. Ct.    Judge

17

## <u>Ruling:</u>

The amount in dispute is set at DM 500,000.00.


Dr. Lippok
Pres. Judge at the Reg. Ct.

Dr. Deichfuß
Judge at the Reg. Ct.

Dr. Singer
Judge