IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MINEBEA CO., LTD, PRECISION MOTORS
DEUTSCHE MINEBEA GmbH, and NIPPON
MINIATURE BEARING CORP.,
Plaintiffs,
v.
GEORG PAPST, PAPST LICENSING GmbH, and
PAPST LICENSING
VERWALTUNGSGESELLACHAFT MIT
BESCHRANKTER HAFTUNG,
Defendants.

Civil Action No. 97-CV-590 (PLF)

Special Master David W. Plant

## MINEBEA'S MEMORANDUM REGARDING ISSUES TO BE DETERMINED UNDER GERMAN LAW

### I.   INTRODUCTION

Minebea submits this memorandum in accordance with Scheduling Order No. 6 to address Papst's incorrect and newly minted assertions that German law broadly controls in this action.

The most striking difference between the parties results from Papst's abrupt about face in now arguing that German law governs the fraud, negligent misrepresentation, breach of fiduciary duty and contract reformation counts. Indeed, until recently, Papst had agreed with Minebea that these counts are controlled by New York law based on the 1995 Settlement Agreement's choice of New York law provision, and the injury that resulted to Minebea's business in the United States from Papst's wrong doing. Based on this agreement, the Court too, applied New York law to these claims. Over the course of the past seven years that this case has been pending, Papst has time and again asserted in Court filings that the various

misrepresentation related counts are governed by New York law. Given this longstanding agreement between Minebea and Papst that New York law applies to the fraud related counts, as well as the fact that this Court and the Special Master adopted New York law and at times granted the relief sought by Papst, based on New York law, Papst is now estopped from arguing that German law applies to these misrepresentation counts. As explained more fully below, Papst is equally incorrect in arguing for the application of German law to the Conversion count and to the measure of Minebea's damages. Nonetheless, as is also explained below, with respect to Count II only, Minebea is willing to accept Papst's changed position with regard to the application of German law.

Papst's asserts that German law broadly applies to practically all of the issues, as such Minebea's items are, for the most part, subsumed within the issues identified by Papst. Therefore, this memorandum is structured around Papst's list which can be grouped into the following ten areas:

1. the fiduciary obligations owed by Papst to Minebea;

2. all aspects of Count II for fraud;

3. all aspects of Count III for negligent misrepresentation;

4. all aspects of Count IV for breach of fiduciary duty;

5. all aspects of Count V for conversion;

6. all aspects of Count VI for contract reformation;

7. the various Papst parties' liability based on corporate responsibility;

8. interpretation of the pre-1995 agreements;

9. issues relating to the German Employee Invention Act; and

10. damages relating to the fraud counts.

For purposes of this memorandum, these ten items can be further grouped into the following three basic categories. First, those issues on which the parties disagree as to whether German law applies. Second, those issues as to which Minebea is prepared to acquiesce in Papst's choice of German law. And third, those issues which both Minebea and Papst agree are governed by German law. Since the parties are free to stipulate on issues of choice of law, it is only necessary that the Special Master address the issues raised in the first category, i.e., those on which the parties clearly disagree. *See Borden v. Paul Revere Life Insurance Co.*, 935 F.2d 370, 375 (1st Cir. 1991) (where parties have agreed as to what law governs, the court can forgo independent analysis and accept the parties' agreement). Since Minebea agrees or acquiesces in the application of German law with respect to the fiduciary obligations owed by Papst to Minebea and Count II for fraud[1] (i.e. items 1 and 2 above) and certain aspects of items 7 through 10 above, the Court need only engage in a conflict of laws analysis for items 3 through 6, and parts of items 7 and 10 on Minebea's list.

## II. OVERVIEW OF DISTRICT OF COLUMBIA CONFLICT OF LAWS ANALYSIS

When a district court's jurisdiction is based on a federal question, the choice of law rules of the forum should govern claims based on the court's supplemental jurisdiction. *See A.I. Trade Fin. v. Petra Intl. Banking Corp.*, 62 F.3d 1454, 1459 (D.C. Cir. 1995). Thus, the District of Columbia's conflict of laws rules apply here. Under D.C. law, where the dispute involves a contract with an express choice of law clause, "the law of the state chosen by the parties to govern their contractual rights and duties will be applied." 1 Conflict of Laws Restatement Second § 187; *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391 (D.C. Cir.,1995)

---

[1] Germany has a well developed body of law on fraud, but does not have a well developed body of tort law for negligent misrepresentation, reformation, breach of fiduciary duty. Therefore, while we are prepared to accept Papst's selection of German law of fraud, we cannot do so on Counts II, IV and VI.

(determining that the parties' choice of law provision should govern); *Gray v. American Express Co.*, 743 F.2d 10, 17 (D.C.Cir.1984) (recognizing ability of parties to agree upon law that will govern contract provided choice bears some substantial relation to the parties to the transaction); *Norris,* 419 A.2d at 984 (D.C. Cir. 1980) ("parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified."); *Asia North America Eastbound Rate Agreement v. Pacific Champion Service Corp.,* 864 F. Supp. 195, 200 (D.D.C. 1994) (determining that the parties' choice of law provision should govern). Furthermore, "the effect of misrepresentation, duress, undue influence and mistake upon a contract" is governed by the law selected under Section 187. 1 Conflict of Laws Restatement Second § 201; *see Pacific Champion,* 864 F. Supp. at 201 (applying New York law to allegations of fraud where the contract specified New York choice of law would apply to the contract).

This dispute between Minebea and Papst arose as a result of Papst having threatened Minebea customers with suit in the United States for the alleged infringement of United States patents licensed to Minebea under the 1995 Settlement Agreement. The basic purpose for commencing this action was to establish that the rights granted to Minebea preclude Papst from attempting to obtain a second royalty from Minebea's customers based upon sales of HDD motors that were intended to (and did) enter the United States. The Second Amended and Supplemental Complaint further alleges that Papst engaged in various tortious activities, including fraud, negligent misrepresentation, and breach of fiduciary duty in an effort to defraud Minebea of previously granted patent rights so that Papst could collect a second royalty from Minebea's United States customers.

Given the pivotal importance of the U.S. market and U.S. patents to the transaction and given New York's leadership in commercial law, it is not surprising, therefore, that the 1995 Settlement Agreement contains a broad choice of law provision memorializing the parties' agreement that New York law would govern any contract related disputes. *See* Ex. 1, at ¶ 7.3. This provision encompasses any fraud committed in the negotiation of the agreement. Id.

For issues wholly unrelated to the contract, "the District of Columbia employs a governmental interests approach, which balances the competing interests of the jurisdictions." *Jacobsen v. Oliver*, 201 F.Suipp.2d 93, at 99 (D.D.C. 1999); *In re Korean Airlines*, 932 F.2d 1475, 1495 (D.C.Cir. 1991) ("choice of law principles followed by the District of Columbia courts seek to apply the substantive law of the jurisdiction with the closest connection to and greatest interest in a claim . . . and separate choice of law analysis of different substantive issues (called "depecage") is now routine.")

Where the interests are equal or where the foreign law is unclear, convenience will be part of the calculation and the court will pick the law that is the most efficient to apply. *See, e.g., Wujin Nanxiashu Secant Factory v. Ti-well International Corporation*, 2002 WL 1144903, * 2 (S.D.N.Y. 2002) (holding that where parties failed to establish the substance of the foreign law they refer to the case will be decided on the basis of New York law) citing Restatement 2nd of Conflicts § 136, cmt. h (1971) ("[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law... When both parties have failed to prove the foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum."); *Torah Soft Ltd.v. Drossnin*, 224 F.Supp.2d 704, 712-13 (S.D.N.Y. 2002)

(applying law of the forum where there were issues of Israeli law that neither party had addressed).

However, "unlike jurisdictional issues, courts need not address choice of law questions *sua sponte*." *In re Korean Airlines Disaster of September 1, 1983*, 932 F.2d 1475, 1495 (D.C.Cir. 1991). The District of Columbia will generally apply the law chosen by the parties. *Independent Petrochemical Corp. v. Aetna Casualty and Suretly Co.*, 1988 WL 877629, *3 (D.D.C. 1988); *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980) (holding that "parties to a contract may specify the law they wish to govern); *see also Borden*, 935 F.2d at 375 ("Where, however, the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement."); *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530-31 (7th Cir. 1985) ("Parties can within broad limits stipulate the substantive law to be applied to their dispute."). This is the present situation. Papst and Minebea chose New York law in the 1995 Agreement and for nearly seven years in represented to the Court that New York law applies to the contract and fraud counts

### III. PAPST ERRED IN IDENTIFYING THE FOUR FRAUD CLAIMS AS ISSUES TO BE DETERMINED UNDER GERMAN LAW

Although broken down into parts, Papst has included all aspects of Minebea's four fraud counts as claims that need to be determined under German law. Minebea acquiesces to Papst's identification of German law for Count II. Therefore, German law should be applied to Count II. *See, e.g., Norris*, 419 A.2d at 984 (applying the law agreed to by both parties). However, Minebea is unwilling to acquiesce to Papst's new position that German law should govern Counts III, IV, and VI. While Germany has a well-developed body of law on fraud, it does not have as well a developed body of tort law for negligent misrepresentation, contract

reformation, or breach of fiduciary duty. Therefore, while we are prepared to accept Papst's selection of German law of fraud as an expediency, we cannot do so on the other claims.

New York, rather than German, law should be applied to Counts III, IV, and VI. First, as Papst has previously argued for New York law to apply to the four fraud Counts, and as this Court has already adopted this position, Papst is bound to a New York application of law. Second, under a D.C. conflict of laws analysis, while Germany has an interest, New York has the greater interest and therefore New York law is the proper choice of law.

### A.  Papst Is Bound To New York Law For Counts III, IV and VI

As early as July 2, 1997, Papst both argued for and applied New York law to Minebea's fraud claims. *See* Ex. 2, Defendants' Rule 12(b) Motion to Dismiss at 38-39. In response to Papst's arguments, and Minebea's agreement with this position, this Court adopted the parties' position that New York law should govern Counts II, III, and VI. *Minebea Co., Ltd. v. Papst*, 13 F.Supp.2d 35, 43 n.10 (D.D.C. 1998) ("The parties agree that New York law applies to the allegations of fraud and negligent misrepresentation and the request for contract reformation."). Throughout this litigation, Papst has consistently applied New York substantive law to Minebea's four fraud Counts. *See e.g.*, Ex. 3, for examples of Papst's application of New York substantive law in relation to Minebea's four misrepresentation Counts, including Papst's briefs requesting summary judgment on the fraud Counts and arguing that Minebea has put "at-issue" privileged communications based on the substantive law of New York. Papst has also never disputed the statements in Minebea's briefs that "the parties are in agreement that New York law controls that fraud issues including whether Minebea acted reasonably in accepting Papst's misrepresentations at face value" and that "this Court has already held that New York substantive law applies to Minebea's license and fraud claims. . . . Both Minebea and Papst

concur fully in this result. Thus New York Law is controlling in determining the elements of fraud that Minebea is required to establish." *See* Ex. 4, for Minebea's undisputed statements.

In fact, as late as October 18, 2004, after having already submitted its first papers suggesting that German law should govern Minebea's fraud Counts on September 30, 2004, Papst argued to Judge Friedman that the Special Master's ruling regarding at-issue waiver, which was made based on the application of New York law, should be upheld. *See, e.g.*, 10/18/04 Hr'g Tr. 74-75. Papst cannot argue for the application of more than one jurisdiction's substantive law to the same issues based on what suits them at that moment. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 953 F.Supp 974, 978 (N.D. Ill. 1997) (finding party judicially estopped from taking a position diametrically opposed to its earlier position favoring the choice of law provision. . . . "Just because Bank One's interests have changed does not mean that the law must mold itself accordingly.").

New York law, rather than German law, should apply to Minebea's claims of negligent misrepresentation, breach of fiduciary duty, and contract reformation, including the damages and remedies available to Minebea under each of these claims. Papst, having successfully argued for the application of New York law to these Counts, continually applied New York law to these counts for the past seven years, and acquiesced to the Court's application of New York law, should be deemed to have waived any objection to the application of New York law. *See, e.g., Julian-Ocampo v. Air Ambulance Network, Inc.*, 2001 WL 34039480, *2-3 (D. Or., Dec. 13, 2001) (where party had successfully argued for the application of Oregon law, it was judicially estopped from later arguing that Washington law should apply); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, n.15 (11th Cir. 1995) (where district court accepted party's choice of law, and party acquiesced to that choice for extended period, appellate

court would not entertain argument from the same party that the law of another jurisdiction should apply); *Borden v. Paul Revere Life Insurance Co.*, 935 F..2d 370, 375 (1st Cir. 1991) ("The parties, sometimes explicitly, other times through the natural implication of their asseverations, have achieved a satisfactory consensus on the critical choice-of-law issues. . . . The court apparently acquiesced. Although Revere now beseeches us that Florida law should prevail in connection with the counterclaim, the afterthought comes too late. In the absence of exceptional circumstances, not present here, a litigant is bound by a plausible choice of law which it successfully urged the trial court to follow."); *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n. 1 (7th Cir. 1985) ("Both parties initially acquiesced in the application of New York law. . . . Thus, Muslin is deemed to have waived any objection to application of New York law which may have been available."); *Phoenix Canada Oil Company Limited v. Texaco, Inc.*, 842 F.2d 1466, 1477 n. 4 (3rd Cir. 1988) (Holding that while foreign law may have been applicable, Delaware law would apply where the parties had acquiesced to the district court's application of Delaware law). Papst is similarly estopped from arguing for application of German law to any of these counts, including the damages and remedies aspects of the counts.

**B.    Even If Papst Was Not Bound To The Application Of New York Law, It Would Still Be The Proper Choice Of Law**

As explained by Papst in their Rule 12(b) Motion to Dismiss (attached as exhibit 2), under the District of Columbia conflict of laws approach to contract issues, and issues connected to contract issues such as the fraud counts, the Court will honor an effective choice of law provision in the contract and apply the substantive law selected by the parties. *See* Ex. 2, Papst's Motion to Dismiss at 38-39 (citing *Asia North America Eastbound Rate Agreement v. Pacific Champion Service Corp.*, 864 F.Supp. 195, 200 (D.D.C. 1994)); *see also Ekstrom v.*

*Value Health, Inc.*, 68 F.3d 1391 (D.C. Cir. 1995) (applying the law identified in the parties' choice of law provision).

The 1995 Agreement, which is the subject of this dispute, contains an express choice of law provision identifying the parties' choice of New York law. *See* Ex. 1, at ¶ 7.3. As stated above, where an agreement contains an express choice of law provision, the D.C. courts will honor that choice of law so long as there is a reasonable relationship with the state specified and such choice is not contrary to a fundamental policy of a state with a materially greater interest. *See Norris*, 419 A.2d at 984; *Independent Petrochemical Corp.*, 1988 WL 877629, at *3.

> New York General Obligations Law Section 5-1401, states:
>
> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state.

N.Y. Oblig. Law § 5-1401. Therefore, despite the fact that neither party is closely related to New York, New York still has a policy interest, clearly articulated in governing state statute, in the application of its law to the claims related to the 1995 Agreement. The 1995 Agreement covers in aggregate significantly greater sums than $250,000. Therefore, even in the absence of a reasonable relation to New York, the parties New York choice of law clause should be honored. *See Fed. Deposit Ins. Corp. v. Zufle*, Civ. No. 90-2058, 2001 U.S. Dist. LEXIS 21231 *3 (E.D. La. Dec. 13, 2001) (applying New York law based on the parties choice of law provision and the N.Y. Oblig. Law § 5-1401). Of course, given Papst's intention of bringing suit against Minebea's customers in the United States under United States patents, it is not surprising

that Papst sought to bring the 1995 Agreement within the scope of New York law.[2] Papst and Minebea fully realized that the United States, including New York is the primary destination and market for hard disk drive motors.

The next issue is whether Germany has a greater interest in this matter. Although there are German parties to this litigation, were these issues in front of a German court, the court would apply New York law. Under German principles governing conflict of laws, if the tort occurred in connection with a special legal relationship between the parties, German courts will apply the law governing the special relationship. In this case, the torts relate to Papst's efforts to induce Minebea to enter into the 1995 Agreement, which Papst believed would allow it to approach Minebea's customers for infringement of the so-called "drive patents." German courts would recognize the 1995 Agreement as a relevant legal special relationship. In addition, the Agreement related to United States patents, the enforcement of which the United States has a greater interest than Germany. As such, given the subject matter of and the New York choice of law provision in the 1995 agreement, the German court's interest would be to apply New York law.

Papst may argue that these claims are not limited to the negotiations surrounding the 1995 Agreement. Although it is correct that some of the incidents relating to and supporting Minebea's fraud claims occurred prior to the commencement of negotiations for the 1995 Agreement, the dispute itself still arises out of the parties' disparate understanding of the 1995 Agreement. Therefore, the elements and defenses, as well as the remedy of contract reformation are properly governed under New York law. *See Pacific Champion*, 864 F. Supp. at 201 (applying New York law to allegations of fraud where the contract specified New York choice of

---

[2] Papst's original draft of the 1995 Agreement included an Illinois choice of law clause. Minebea changed this to New York and Papst accepted it. Thus, the choice of New York law was deliberate and should not be easily disregarded.

law would apply to the contract). On the other hand, Minebea is in agreement with Papst that the interpretation of some of the events occurring prior to the negotiations for the 1995 Agreement require the application of German law, for example some of the fiduciary obligations imposed by German law.

Even, if Germany's interest was greater, New York law is still controlling under the D.C. conflicts of law standard since New York law is not contrary to any fundamental policies of German law regarding these claims. New York law on negligent misrepresentation, breach of fiduciary duty, and contract reformation seeks to return the parties to the position they would be in if there had been no misrepresentation or breach. This does not conflict with the policies behind German law. Although New York and German law apply different standards to these claims, both seek to deter fraud and to restore the defrauded party to remedy the fraud.

Applying New York law to the misrepresentation claim does not violate fundamental German policy. Papst may argue that because German law requires specific knowledge on the part of the defrauding party and does not recognize negligence, application of such a negligence standard under U.S. law would be a fundamental violation of German policy. However, simply requiring different standards does not necessarily render the claim contrary to a fundamental policy. Papst is also likely to argue that the punitive damages permitted under New York law violate a fundamental policy of German law. However, if punitive damages were awarded, Germany could at a later date determine whether to allow the enforcement of the judgment against defendants' German assets.

German law does not have clear parallels to Minebea's claims for breach of fiduciary duty and contract reformation. Such claims would therefore have to be brought under Section 826 of German Civil Code, which establishes a claim where there is behavior contrary to

public policy and the willful causation of damages. However, German case law applying Section 826 to these issues is not well developed. In contrast, New York law on these claims is extensive. As such, the application of New York law would be more efficient than the application of German law. *See Rogers v. Grimaldi*, 875 F.2d 994, 1003 (2d Cir. 1989) (applying New York law where the foreign law was unsettled based on the presumption that the unsettled law of another state would resemble New York's). Further, having already heard argument regarding New York law on the fraud counts, the Court is already familiar with the law of New York. The application of German law is likely to require the use of experts and translations of German law. Where the interests of two jurisdictions are equal, the D.C. Court will select the more efficient law. *See The Stephen A. Goldberg Co. v. Remsem Partners, LTD.*, 170 F.3d 191, 194-5 (D.C. Cir. 1999) (where two jurisdictions conflict and both jurisdictions have an interest, the court will choose the more efficient jurisdiction).

### IV. PAPST ERRED IN IDENTIFYING CONVERSION AS AN ISSUE TO BE DETERMINED UNDER GERMAN LAW

Minebea's claim for conversion and unjust enrichment relates to two identified United States patents, U.S. Patent Nos. 5,394,283 and 5,331,483, as well as any additional U.S. patents and patent applications related to the two named patents. The basis for the conversion claim was the filing of the U.S. application. Furthermore, the assignments to Papst Motoren and Papst Licensing occurred in the United States, not in Germany.

#### A. Under D.C. Conflict Of Laws Analysis, Forum Law Should Apply To The Minebea's Claim For The Conversion Of U.S. Patents

Papst will argue that Germany has an interest because Minebea's claim requires an interpretation of German contracts and there are German parties on both sides with an

interest.[3] However, ownership of United States patents is controlled by American law. *Everex Sys. Inc. v. Cadtrak Corp.*, 89 F.3d 673 (9th Cir. 1996); 8 Donald S. Chisum, Chisum On Patents § 22.03 [4]. German court have no subject matter jurisdiction over the United States Patents. *Aluminum Co. of Am. v. Sperry Prods., Inc.*, 285 F.2d 911, 925 (6th Cir. 1960) ("A patent is granted by a sovereign power and its rights, privileges and obligations begin and end with the country that issues it"); Restatement (Third) of Foreign Relations Law § 482 cmt. d. American interest is more significant because not only because the property at issue are United States issued patents, but the conversion was accomplished and perfected by acts in the United States before the United States Patent Office through the filing of applications and assignments in the names of Papst Motoren and Papst Licensing. The District of Columbia in particular is recognized under United States patent law as having a special interest in patent matters involving a "patentee not residing in the United States." 35 U.S.C. § 293.

While the claim as a whole is not properly governed by German law, as is true with respect to the fraud counts, there are aspects of Minebea's conversion claim which may be interpreted under German law. These issues include the interpretation of the German Employee Invention Act, which Minebea and Papst both agree must be based on German law, and the interpretation of the pre-1995 agreements, which Minebea agrees in part with and is willing to acquiesce to the application of German law.

## V. THE COURT SHOULD APPLY GERMAN LAW TO THE ISSUES THE PARTIES AGREE SHOULD BE GOVERNED BY GERMAN LAW

As explained *supra* section II, the court need not address conflict of laws issues *sua sponte* where the parties are in agreement as to what law governs. *In re Korean Airlines*, 932

---

[3] It should be noted that, if German law were to apply to this claim, the closest analog to Minebea's conversion claim in Germany is unjust enrichment, rather than conversion.

F.2d 1475, 1495; *Borden*, 935 F..2d at 375 ("Where, however, the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement.).

      Minebea and Papst are in agreement that German law should apply to some degree to the circumstances pertinent to Minebea's claims that may have given rise to fiduciary obligations; the interpretation of the German Employee Invention Act; and the interpretation of the 1993 Termination Agreement, and certain other pre-1995 agreements, although to the extent the similar items on Papst's list go beyond the issues identified by Minebea, Minebea does not necessarily agree to the application of German law. There are also a number of issues for which Minebea is willing to acquiesce to Papst's choice of law, these include all aspects of Count II, including those relating to damages and the interpretation of all of the pre-1995 agreements. To all of these issues the Court should apply German law.

## VI. CONCLUSION

      For all the foregoing reasons, Minebea respectfully requests that Papst be estopped from arguing that German law applies to Counts III, IV, and VI. Minebea further requests that the Special Master find that the application of German law should be limited to those issues which Minebea and Papst agree should be governed by German law and to those issues which Minebea is willing to acquiesce to Papst's selection of German law.

Dated: December 7, 2004      Respectfully Submitted,

                                        _Joel E. Leitzke_ (LBE)

Joel E. Lutzker
Leonard S. Sorgi
David H. Kagan
SCHULTE, ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Fax: 212.593.5955

Tom M. Schaumberg   D.C. Bar No. 36574
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W.
Fifth Floor
Washington, DC 20036
Telephone: 202.467.6300
Fax: 202.466.2006

*Counsel for Minebea Co., Ltd., Precision
Motors Deutsche Minebea, GmbH, and Nippon Miniature
Bearing Corp.*