# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE PAPST LICENSING, GmbH          : MDL Docket No. 1298
PATENT LITIGATION                    : REF. C.A. 99-3118

## SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiffs Minebea Co., Ltd. ("Minebea"), Precision Motors Deutsche Minebea GmbH ("PMDM") and Nippon Miniature Bearing Corporation ("NMB") for their Second Amended And Supplemental Complaint (the "Complaint") against Georg Papst, Papst Licensing GmbH & Co. KG and Papst Licensing Verwaltungsgesellachaft Mit beschrankter Haftung allege as follows:

1.     Plaintiff Minebea is a Japanese corporation having a principal place of business at 1-8-1 Shimo meguro, Meguro ku, Tokyo 153, Japan.  Minebea itself and through its subsidiaries and related companies designs, manufacturers, markets and sells numerous electronic components including motors and other parts for use in computer hard disk drives.

2.     Plaintiff PMDM is a German corporation having a principal place of business at Max Planck Strasse 14, D-78549 Spaichingen, Germany.  At present, PMDM is a

subsidiary of Minebea. PMDM was, until 1993, known as Papst Minebea Disk Motor GmbH. PMDM designs and manufacturers motors and other components for use in computer hard disk drives.

3.    Plaintiff NMB is a corporation organized under the laws of the State of California having a principal place of business at 9730 Independence Avenue, Chatsworth, California 91311. NMB is an indirect wholly owned subsidiary of Minebea. NMB markets and sells throughout the United States the electronic products manufactured by Minebea and its subsidiaries, including motors and other parts for use in computer hard disk drives.

4.    Upon information and belief, defendant Georg Papst is a citizen of the Federal Republic of Germany, residing at Lutherstrasse 11, D-78112 Sankt Georgen, Germany. During certain relevant times, Georg Papst was the Director and Chief Operating Officer of PMDM which at that time was a joint venture between Minebea and Papst Motoren GmbH & Co. KG ("Papst Motoren KG"), a German corporation owned and controlled by Georg Papst and his immediate family.

5.    Upon information and belief, defendant Papst Licensing GmbH & Co. KG, formerly, Papst Licensing GmbH ("Papst Licensing") is a German limited trading partnership having a principal place of business at Max Planck Strasse 14, D-78549 Spaichingen, Germany. Upon information and belief, Papst Licensing obtained its present corporate form on December 1, 1998, when Papst Licensing GmbH, in the midst of this litigation, without notice to Minebea or the Court, was "transformed" into the present day limited trading partnership. Upon information and belief, Georg Papst secretly caused this transformation, *inter alia*, in an effort to escape liability to Minebea.

6.      Upon information and belief, defendant Papst Licensing Verwaltungsgesellschaft Mit beschrankter Haftung ("Papst Licensing MBH"), a limited liability company founded on September 24, 1998, has offices at Max Planck Strasse 14, D-78549 Spaichingen, Germany and is currently the general partner of Papst Licensing and acts within the United States through its agents Papst Licensing and Georg Papst. Upon information and belief, Georg Papst and other members of the Papst family are the sole owner of Papst Licensing MBH.

7.      As the general partner of Papst Licensing, Papst Licensing MBH is jointly and severally liable with Papst Licensing and Georg Papst and has derivative liability for each of the acts complained of herein in Counts I through XVIII.

8.      Papst Licensing is and since its inception has been controlled by Georg Papst and, upon information and belief, is Georg Papst's alter ego and agent with respect to the activities referred to herein. Its principal business is the licensing and enforcement of patents acquired from Papst Motoren KG related to motors, including motors for computer hard disk drives.

9.      Upon information and belief, Papst Licensing MBH is controlled by Georg Papst and is Georg Papst's alter ego and agent with respect to the activities referred to herein. Upon information and belief, its principal business conducted through Papst Licensing is the licensing and enforcement of patents acquired from Papst Motoren KG related to motors, including motors for computer hard disk drives. Papst Licensing, Georg Papst and Papst Licensing MBH are sometimes collectively referred to herein as "Papst."

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of the claims asserted herein by Plaintiffs for a declaratory judgment of patent invalidity and non-infringement pursuant to the Federal Declaratory Judgments Act, Title 28, United States Code, § 2201 and 2202. This Court has jurisdiction over the subject matter of these claims pursuant to Title 28, United States Code, § 1338(a), and venue is proper in this Court pursuant to 35 U.S.C. § 293 and 28 U.S.C. § 1391(d).

11.    This Court has jurisdiction over the subject matter of the claims asserted herein by Plaintiffs arising under the Lanham Act, 15 U.S.C. § 1051, et seq., and particularly under 15 U.S.C. § 1125(a) pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1338(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d).

12.    This Court has jurisdiction over the common law claims asserted by plaintiffs under 28 U.S.C. § 1367(a) and 28 U.S.C. § 1338(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d).

13.    This Court has personal jurisdiction over Georg Papst, Papst Licensing and Papst Licensing MBH pursuant to 35 U.S.C. § 293 because Papst Licensing is the assignee of each of the patents at issue in this Action.  As set forth more fully herein, Plaintiffs seek to have this Court declare such patents to be licensed to Plaintiffs and their customers, invalid or not infringed, and such patents are otherwise the subject matter of the claims herein.

14.    This Court has personal jurisdiction over Georg Papst, Papst Licensing and Papst Licensing MBH pursuant to Fed. R. Civ. P. 4(k)(2) based upon the contacts of Georg

Papst, Papst Licensing and Papst Licensing MBH throughout the United States, including through authorized acts of their agents and attorneys.

15.     Customers of Minebea and its subsidiaries, including PMDM and NMB, have notified Minebea and its subsidiaries, including PMDM and NMB, of patent infringement claims raised by Papst Licensing with respect to many of the United States Patents which are the subject of this litigation and assert that hard disk drive motors manufactured, designed and sold by Minebea and its subsidiaries, including PMDM and NMB, form the basis for Papst Licensing's claims.  Plaintiffs have a reasonable apprehension that Papst Licensing will assert each of the patents which are the subject of this litigation against one or more customers. The hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, are incorporated by their respective customers into disk drive assemblies which are sold and used within the United States. Based upon the foregoing, as well as the express and implied contractual terms with such customers and express and implied demands for indemnification by such customers, Minebea and its subsidiaries, including PMDM and NMB, reasonably apprehend that they may be legally liable for indemnification with respect to such infringement claims by Papst Licensing.  Papst's actions as described above are currently interfering with and will continue to interfere with the business relations between Minebea and its subsidiaries, including PMDM and NMB, and their customers.

16.     As set forth herein, a real and actual controversy exists between Georg Papst, Papst Licensing and Papst Licensing MBH, on the one hand, and Minebea and its subsidiaries, including PMDM and NMB, on the other, with respect to the validity and alleged infringement of the Asserted Papst Patents (hereinafter defined).

## ADDITIONAL ENTITIES DISCUSSED HEREIN

17.    Papst Motoren KG is a German corporation that was in the business of making, using and selling electric motors used in electronic and electrical equipment, including hard disk drive motors and related components.

18.    Papst Minebea Disk Motor (Thailand) Limited ("PMDM-T") is a corporation organized under the laws of the Kingdom of Thailand having its registered office at 1st Floor, Bank of America Building, 2/2 Wireless Road, Kwaeng Lumpinee, Khet Pathumwan, Bangkok 10330, Thailand. During certain relevant times, Georg Papst was a Director of PMDM-T, and PMDM-T constituted a joint venture between Minebea and Papst Motoren KG.

19.    Hans Dieter Papst is the brother of Georg Papst and the former head of Papst Motoren KG's patent department. Hans Dieter Papst knowingly aided and abetted in the various deceptions, misdeeds and failures to disclose material information that were perpetrated by Georg Papst and Papst Licensing against Minebea and PMDM.

## GENERAL NATURE AND DESCRIPTION OF PLAINTIFFS' CLAIMS

20.    As described more fully in the succeeding paragraphs of this Complaint, the claims asserted herein concern acts of fraud, negligent misrepresentation, breach of fiduciary duty, conversion, assertion of unenforceable or invalid patents and other misdeeds by Georg Papst, Papst Licensing and Papst Licensing MBH.

21.    As described more fully herein, Papst Licensing is the owner of certain patents which claim hard disk drive assemblies. Georg Papst and Papst Licensing have granted to Minebea and its subsidiaries an unrestricted license to manufacture and sell hard disk drive spindle motors, a component whose sole intended use is in a hard disk drive

assembly. The hard disk drive spindle motors that Georg Papst and Papst Licensing have licensed to Minebea and its subsidiaries to manufacture and sell have no substantial non-infringing uses. Under established Supreme Court precedent, including United States v. Univis Lens Co., 316 U.S. 241 (1941) and Burke v. Adams, 17 Wall. 453 (1873), the authorized sale by Minebea and its subsidiaries, including PMDM and NMB, of a component part that has no substantial use except in accused hard disk drive assemblies, exhausts the Asserted Papst Patents and there can be no legitimate basis on which these patents may be asserted against Plaintiffs' customers who incorporate the licensed hard disk drive spindle motors provided by Plaintiffs into a hard disk drive assembly.

22.     As described more fully herein, any attempt by Georg Papst, Papst Licensing or Papst Licensing MBH to limit the license granted to Minebea to exclude Minebea's customers from incorporating a Minebea supplied spindle motor into a hard disk drive assembly without fear of infringement could only result from acts of fraud, negligent misrepresentation and breach of fiduciary duty by Georg Papst and Papst Licensing and derivatively by Papst Licensing MBH.

23.     The gist of the patent misuse count is that Asserted Papst Patents (hereinafter defined) are unenforceable because Georg Papst, Papst Licensing and Papst Licensing MBH have impermissibly expanded their scope by receiving and attempting to collect second royalty payments from Minebea Motor Customers (hereinafter defined) despite having already received a first royalty payment under the Asserted Papst Patents from Minebea, pursuant to the 1995 Settlement Agreement, and have in furtherance of the scheme to collect the second royalty payments commenced in bad faith baseless lawsuits against certain Minebea Motor Customers.

-7-

24.    As described more fully herein, HDDs, HDD motors and HDD motor technology each constitute a relevant market for consideration of Georg Papst, Papst Licensing and Papst Licensing MBH's antitrust behavior. They have monopoly power in each of these markets. The gist of the first Section 2 antitrust count is that they have engaged in the following anti-competitive conduct with the specific intent to maintain that monopoly power to the detriment of Plaintiffs: (1) engaged in a scheme to systematically extract second royalty payments from Minebea Motor Customers, thereby harming Minebea and its subsidiaries and driving up the price of hard disk drives, and (2) commenced and pursued baseless law suits in bad faith asserting that certain Minebea Motor Customers infringe one or more of the Asserted Papst Patents based on their sale of hard disk drives incorporating Minebea Motors even though Georg Papst, Papst Licensing and Papst Licensing MBH know that their rights under such patents have been exhausted by virtue of the first royalty payment made by Minebea and its subsidiaries, (3) through the California Actions and other assertions of infringement sought to regulate the number and identity of those companies participating in each of these markets, (4) upon information and belief, conditioned the granting of one or more licenses under the Asserted Papst Patents on the licensee agreeing to waive a right to bring a claim against a third party supplier, (5) the assertion of patents knowingly obtained through inequitable conduct, and (6) the totality of the circumstances.

25.    As described more fully herein, HDDs, HDD motors and HDD motor technology each constitute a relevant market for consideration of Georg Papst, Papst Licensing and Papst Licensing MBH's antitrust behavior. They seek monopoly power in each of these markets. The gist of the second Section 2 antitrust count is that they have engaged in the

following anti-competitive conduct with the specific intent to obtain monopoly power to the detriment of Plaintiffs:  (1) engaged in a scheme to systematically extract second royalty  payments from Minebea Motor Customers, thereby harming Minebea and its subsidiaries and driving up the price of hard disk drives, and (2) commenced and pursued baseless law suits in bad faith asserting that certain Minebea Motor Customer's infringe one or more of the Asserted Papst Patents based on their sale of hard disk drives incorporating Minebea Motors even though Georg Papst, Papst Licensing and Papst Licensing MBH know that their rights under such patents have been exhausted by virtue of the first royalty payment made by Minebea and its subsidiaries, (3) through the California Actions and other assertions of infringement sought to regulate the number and identity of those companies participating in each of these markets, (4) upon information and belief, conditioned the granting of one or more licenses under the Asserted Papst Patents on the licensee agreeing to waive a right to bring a claim against a third party supplier, (5) the assertion of patents knowingly obtained through inequitable conduct, and (6) the totality of the circumstances.

26.    The gist of the Section 1 antitrust count is that Georg Papst, Papst Licensing and Papst Licensing MBH have entered into a contract or contracts in restraint of trade by forcing customers to enter into a package license covering both (1) the sale of the customer's hard disk drives incorporating a Minebea Motor, and (2) the sale of the customer's hard disk drives incorporating other manufacturers' motors in a circumstance where a right to enforce the Asserted Papst Patents against a Minebea Motor Customer has been exhausted to the extent the Minebea Motor Customer incorporates a Minebea Motor in a hard disk drive.

-9-

27.    The gist of the inequitable conduct count is that the applicant, Papst Licensing and its predecessors in interest, and their attorneys breached a duty of candor, good faith and honesty before the United States Patent & Trademark Office during the prosecution of the applications leading to the issuance of United States Patent Nos. 5,946,161, 5,777,822, 5,729,403, 5,708,539, 5,424,887 and 4,922,406 by failing to disclose certain material prior art known to them during the prosecution of the applications.

28.    As described more fully herein, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH, and the various persons and instrumentalities under their direction and control schemed to defraud Minebea and its subsidiaries, including PMDM and NMB, of rights to certain valuable patent licenses that had previously been granted by Papst Motoren KG to Minebea.

29.    The gist of the fraud perpetrated by Georg Papst, Papst Licensing, and derivatively Papst Licensing MBH was to mislead Minebea and PMDM through the use of misstatements, failures to disclose and other acts of deceit, including the abuse of a longstanding fiduciary relationship on which Minebea and PMDM had come to rely, that certain previously licensed Papst patents had not been licensed to Minebea and sublicensed to its subsidiaries, including PMDM and NMB, and that these patents were unnecessary for Minebea's ongoing business and that of its subsidiaries, including PMDM and NMB. These false and misleading statements were intended to and did mislead Minebea and PMDM into relinquishing certain valuable patent rights.

30.    As described more fully herein, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH and the various persons and instrumentalities under their direction and control negligently misrepresented material facts which were known or should have

been known to each of them with the intent that Minebea and PMDM would rely on these misrepresentations and omissions to their detriment and thereby agree to relinquish certain valuable patent rights that had previously been granted by Papst Motoren KG to Minebea and sublicensed to its subsidiaries, including PMDM and NMB.

31.    The gist of the negligent misrepresentations by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH is that despite a duty owed to Minebea and PMDM, Georg Papst and Papst Licensing failed to alert Minebea and PMDM that certain patents had been previously licensed to Minebea and sublicensed to its subsidiaries, including PMDM and NMB, and that these patents were necessary for Minebea's ongoing business and that of its subsidiaries, including PMDM and NMB. George Papst, Papst Licensing, and derivatively Papst Licensing MBH instead misrepresented these facts to Minebea and PMDM as a result of intent or lack of due care.

32.    As described more fully herein, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH owed a fiduciary duty to Minebea and PMDM based upon the long standing business relationship and the joint venture relationship between Minebea and Papst Motoren KG. Georg Papst owed further and additional fiduciary duties to Minebea and PMDM because of his capacity as Managing Director and Chief Operating Officer of PMDM, the joint venture between Papst Motoren KG and Minebea.

33.    The gist of the breach of fiduciary duty claims is that Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH, through the use of fraud, deceit and negligent misrepresentation, failed to abide by the standards of candor and honesty required of a fiduciary and instead through acts of self-dealing converted certain valuable PMDM joint venture assets to themselves.

34.     As discussed more fully herein, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH unjustly enriched themselves at the expense of PMDM and Minebea by converting valuable patent rights that rightfully belonged to PMDM.

35.     The gist of the unjust enrichment and conversion claims is that certain patentable inventions that were made by PMDM employees during the period of the joint venture and therefore belonged to PMDM were instead converted by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH by assigning said patents to themselves.

36.     As described more fully herein, Georg Papst, Papst Licensing and Papst Licensing MBH have engaged in unfair competition under the Lanham Act, § 43(a)(1)(B), by falsely informing customers of Minebea, PMDM and NMB that Minebea, PMDM and NMB are not licensed under any of the Asserted Papst Patents, or although licensed to make and sell motors under the Asserted Papst Patents, their use by such customers for their sole intended use in a hard disk drive assembly constitutes patent infringement.

37.     The gist of the Lanham Act claims is that Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH's infringement charges against Minebea, PMDM and NMB's customers are false for at least the following reasons: (1) Minebea, PMDM and NMB and their customers are fully licensed under the terms of the various agreements between Papst and Minebea, and that any provisions to the contrary are void and unenforceable; and (2) customers of Minebea, PMDM and NMB are free of any claim of infringement under the applicable principles of the patent exhaustion doctrine, and any provisions to the contrary are void and unenforceable.

38.    As discussed more fully herein, certain agreements between Georg Papst, Papst Licensing and Minebea are subject to reformation based upon the acts of fraud, deception and negligent misrepresentation perpetuated by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH. They therefore do not reflect the true nature of the agreement reached between the parties.

39.    The acts of fraud, deceit, negligent misrepresentation and breach of fiduciary duty perpetrated by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH, both individually and under the totality of the circumstances, constitute egregious conduct that forms the basis for Plaintiffs' claims for punitive and exemplary damages to be awarded in favor of Plaintiffs and against Georg Papst, Papst Licensing and derivatively Papst Licensing MBH.

40.    As discussed more fully herein, certain patents asserted by Papst Licensing, Georg Papst and Papst Licensing MBH against Plaintiffs' customers are invalid for failure to comply with the requirements for patentability.

41.    As discussed more fully herein, products manufactured by Plaintiffs' customers that incorporate Plaintiffs' hard disk drive motors do not fall within the scope of at least certain of the Asserted Papst Patents and therefore do not infringe such patents.

42.    As discussed more fully herein, Georg Papst, Papst Licensing and Papst Licensing MBH, through their counsel, have engaged in a scheme of objectively baseless litigation and threats of litigation with the specific intent of furthering their unlawful activities.

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

## FACTS

43.     In or about August 1990, Georg Papst and Papst Motoren KG communicated with Minebea regarding an offer to license 45 patents to Minebea owned by Papst Motoren KG.

44.     In a letter to Minebea dated August 17, 1990, Hans Dieter Papst described the 45 Papst Motoren KG patents as "reflect[ing] somehow PAPST'S activity in developing [sic] spindle motors."  The August 17, 1990, letter from Hans Dieter Papst is incorporated herein by reference.

45.     Based in part on the representations of Georg Papst, Hans Dieter Papst and Papst Motoren KG, on October 2, 1990, Minebea executed an agreement known as the General Business Agreement with Papst Motoren KG.  The General Business Agreement is incorporated herein by reference.

46.     Under the terms of the General Business Agreement, Minebea and Papst Motoren KG established a joint venture for the research and development, engineering, manufacture and sale of hard disk drive motors (sometimes also referred to as HDD spindle motors).  PMDM and PMDM-T were the principal joint venture entities established by the parties.

47.     The mutually understood purpose for formation of the joint venture was for Minebea and Papst Motoren KG to combine their respective resources in the hard disk drive motor business to create a joint venture company which would develop, design, manufacture and sell motors for use in hard disk drive assemblies.  Prior to the establishment of the joint venture, Minebea and Papst Motoren KG had each produced and sold hard disk drive motors in relatively small quantities.  The formation of the joint

venture presented a valuable opportunity for both companies through which Minebea was able to contribute its manufacturing and marketing strengths and, as detailed in the agreements between the parties discussed below, Papst Motoren KG contributed all of its worldwide patents relating to the use, sale, manufacture, development, research and engineering of hard disk drive motors.

48.    It was mutually agreed and understood that the joint venture's products would be manufactured, marketed and sold through Minebea and its subsidiaries and that customers who purchased the joint venture's products would be able to use them in their intended way free and clear of any claim of infringement by Minebea or Papst Motoren KG.

49.    The General Business Agreement further provided in paragraph 5(a) that Minebea shall pay to Papst Motoren KG for the transfer of the Papst patent portfolio relating to hard disk drive motors (which the Agreement describes as the "Intangible Assets") the sum of between 22 million Deutschemark and 28 million Deutschemark, depending on certain conditions subsequent.  Twenty two million Deutschemark (approximately 14 million dollars) was paid by Minebea pursuant to this provision in full consideration of the rights obtained by Minebea and its subsidiaries pursuant to the joint venture agreements.

50.    Pursuant to the terms of the General Business Agreement, Georg Papst was to be appointed chief operating officer of PMDM and PMDM-T, the joint venture companies.

51.    As contemplated by the General Business Agreement, on November 5, 1990, Minebea and Papst Motoren KG entered into an Agreement For the Sale of Intangible

Assets. The Agreement For the Sale of Intangible Assets is incorporated herein by reference.

52. Paragraph 4(a) of the Agreement for the Sale of Intangible Assets provided that: "Papst as holder of patents (for the purposes of this agreement the term 'patent' is defined as patents, and patent applications) grants to Minebea the right to use all its patents, especially the predominant German patents and the corresponding international patents, enumerated in Exhibit [C] attached hereto, worldwide as far as they are required and necessary for research and development (R+D), manufacturing, engineering, use and sale of HDD Motors." (Emphasis added.) In keeping with the intent of the parties at the time the joint venture was conceived, it was mutually agreed and understood by Minebea, on the one hand, and Papst Motoren KG and Georg Papst, on the other, that, by virtue of this grant of patent rights, purchasers of HDD spindle motors from PMDM or Minebea and its subsidiaries would be free to utilize such motors for their sole intended use in hard disk drives without any infringement liability with respect to patents owned or controlled by Papst Motoren KG or Georg Papst.

53. Paragraph 9(a) of the Agreement for the Sale of Intangible Assets provided that if the General Business Agreement were to be terminated, Minebea's rights to the patents would continue upon payment of a running royalty to Papst Motoren KG for a period of eight fiscal years.

54. Thereafter, on June 25, 1991, Georg Papst wrote to Minebea acknowledging that PMDM (joint venture) customers "can be released by PAPST without their having to pay any extra license fee" for their use in hard disk drives of HDD spindle motors purchased from PMDM. The June 25, 1991, letter from Georg Papst is incorporated herein by

reference. In this letter, Georg Papst falsely represented to Minebea that certain patents had not been previously licensed to Minebea and were "reserved solely for Papst's exploitation." At the time of this misrepresentation, Georg Papst was the chief operating officer of PMDM and PMDM-T and owed an unquestioned fiduciary duty to each of PMDM, PMDM-T and Minebea. Minebea, believing that Papst was acting in good faith and in keeping with his fiduciary duties, accepted Papst's characterization of the patents and of Minebea's lack of rights thereto. Minebea reasonably relied upon these representations of Georg Papst regarding the nature and scope of and rights to these patents in all of its subsequent discussions and dealings with Georg Papst as detailed below.

55.    Following the execution of the Agreement for the Sale of Intangible Assets, Papst Motoren KG wrote to Minebea acknowledging that "looking at the whole agreement clearly and unambiguously reveals that PAPST has renounced the patents forever.  A proof of this is also that after the end of the joint venture the rights to use the patents finally stay with MINEBEA." (Emphasis added). Papst Motoren's letter of February 21, 1991, is incorporated herein by reference.

56.    In or about 1991, Papst Motoren KG provided a list to Minebea which characterized the invention covered by each listed patent. In almost every instance, Papst Motoren KG characterized the patents as relating to "mechanical motor construction, e.g., bearing concepts" or "[m]otor drive principles for HDD spindle motors." The list provided by Papst Motoren KG is incorporated herein by reference.

57.    From the time of its formation in January 1991 until May 1993, the activities of PMDM, the joint venture company, were directed and controlled by Georg Papst,

including appointment of his personal legal counsel as PMDM's legal counsel; the appointment of his brother, Hans Dieter Papst, as the head of PMDM's patent affairs; and the control of the day-to-day activities of PMDM.

58.    During this same period, and while owing a fiduciary duty of undivided loyalty to PMDM, Georg Papst formed Papst Licensing for the purpose of, inter alia, converting valuable PMDM assets to his benefit and to the detriment of PMDM and Minebea.

59.    During this same period, Minebea reasonably relied upon Georg Papst as its principal conduit of information to Minebea with respect to the financial, legal and business affairs of PMDM, the joint venture company.

60.    During this same period, consistent with the controlling agreements and the understanding of the parties, no charges of infringement of any of the Papst patents were made by Papst Motoren KG or Georg Papst against any customers regarding their manufacture and sale of hard disk drive assemblies using hard disk drive motors made or sold by PMDM, or Minebea or any of its subsidiaries.

61.    During this same period, under the management and control of Georg Papst, Papst Motoren KG began to experience irreversible financial losses that drove it to the brink of bankruptcy.  Unable to meet payroll, Georg Papst desperately sought to shore up his failing enterprise through any means available.

62.    In order to provide Papst Motoren KG and Georg Papst with the necessary financial support, Minebea agreed to purchase Papst Motoren's interest in PMDM and PMDM-T. Following its acquisition of full ownership of PMDM, Minebea has continued the business of PMDM without substantial change.

63.     At Georg Papst's urging, in an agreement executed on April 13, 1993, by Papst Licensing and on April 27, 1993, by Minebea, the parties entered into a Loan Agreement and Agreement Concerning Alterations of License Agreements between Minebea and Papst Licensing ("the Alteration Agreement.")  The Alteration Agreement is incorporated herein by reference.

64.     The Alteration Agreement provided, inter alia, that: (1)  the rights previously granted to Minebea under the November 5, 1990, Intangible Assets Agreement would remain in full force and effect; (2) Papst Licensing was to be substituted for Papst Motoren KG; (3) Minebea would pay Papst Licensing the additional sum of Two Million Deutschemark and that "Minebea will be granted licenses under the subject patents . . . free from any further royalty"; and (4) "[i]t is understood between the parties that such license shall not apply to the so called drive patents (US Pats: B1 Re. 32.702 and 4.337.491 and Jap. Pat. Appl. 142 123/1979 and German Patent 29 44 212), so-called Drive Patents, which are not licensed under the Intangible Assets Agreement and are not licensed under this present agreement."

65.     The provision in the Alteration Agreement which purports to carve out from the license the "Drive Patents" was based upon the false and misleading representations by Georg Papst and Papst Licensing to Minebea that neither U.S. Patent No. Re. 32,702 nor German Patent 29 44 212 was included within the 1990 Agreement.  Georg Papst and Papst Licensing also represented to Minebea that these "Drive Patents" were unnecessary for the continued business of PMDM.  These statements were false, misleading and deceptive since Georg Papst and Papst Licensing knew full well or should have known that U.S. Pat. No. Re. 32,702 and German Patent 29 44 212 were necessary for the

ongoing hard disk drive spindle motor business of Minebea and its subsidiaries, including PMDM and NMB, and further that both patents had been previously licensed under the 1990 Agreement. The falsity of these statements was unknown to Plaintiffs at that time. These false statements were made by Papst at a time when a formal joint venture relationship existed and Papst unquestionably owed fiduciary obligations to Minebea and PMDM.

66.      Georg Papst's misrepresentations concerning the nature and scope of various patents and Minebea's and PMDM's rights thereto had been made over a period of almost two years during which a formal joint venture relationship existed. Georg Papst took advantage of his position of trust during the joint venture to mislead Minebea and PMDM as to the nature of the patents and their necessity to the hard disk drive spindle motor business of Minebea and its subsidiaries. Believing in Georg Papst's loyalty to the joint venture, Minebea and PMDM did not scrutinize Georg Papst's characterizations and representations as they would have had they been dealing with Georg Papst at "arm's length." Minebea's and PMDM's reasonable reliance on these characterizations and representations lead to the signing of the Alteration Agreement and the other agreements discussed below.

67.      Contrary to the statements of Georg Papst and Papst Licensing, the German 29 44 212 patent is specifically listed on Exhibit C to the 1990 Agreement For the Sale of Intangible Assets as a "predominant German patent and corresponding international patents . . . required and necessary for research and development (R+D), manufacturing, engineering, use and sale of HDD Motors." U.S. Pat. No. Re. 32,702 is a corresponding

international patent to one of the German patents listed on Exhibit C to the 1990 Agreement for the Sale of Intangible Assets.

68.     Minebea only agreed to the purported carve out of German 29 44 212 patent and U.S. Patent No. Re. 32,702 from its previously granted license based on the misrepresentations and omissions of Georg Papst and Papst Licensing on which it reasonably relied.

69.     On May 3, 1993, at the behest of Georg Papst and Papst Licensing, Minebea and Papst Motoren KG entered into an agreement known as the Termination of Joint Venture Agreement in which the joint venture between the parties was terminated.    The Termination of Joint Venture Agreement is incorporated herein by reference.

70.     In their negotiations and representations to Minebea regarding the dissolution of the joint venture, both Georg Papst and Papst Licensing owed a fiduciary duty to Minebea to act with the highest standards of good faith and fair dealing.

71.     Under the terms of the Termination of Joint Venture Agreement: (1) All shares of PMDM and PMDM-T were transferred to Minebea; (2) Papst Motoren KG continued to grant a patent license to Minebea "for all patents . . . required and necessary in the field of HDD motor[s] . . . use and sale of such motors"; (3) the right of Papst Motoren KG to transfer all patents to Papst Licensing was recognized and it was provided that royalties or a lump sum payment may be paid to Papst Licensing instead of Papst Motoren KG; and (4) Papst Motoren KG was to "continue to grant to Minebea the right to use all the Patents . . . . "

72.     On May 26, 1993, pursuant to a Patent Sale and License Agreement between Papst Motoren KG and Papst Licensing, all of the Papst patents were transferred from