Papst Motoren KG to Papst Licensing. Minebea was notified of this transfer by a memorandum dated May 26, 1993, from Georg Papst, Papst Motoren KG and Papst Licensing. This memorandum is incorporated herein by reference.

73.     Although they were Minebea's joint venture partners in the field of hard disk drive motors, Georg Papst, Papst Motoren KG and later, Papst Licensing, had, from time to time, written to Minebea asserting patents purporting to relate to other types of motors. These assertions were resolved on a case by case basis. On December 13, 1994, Georg Papst and Papst Licensing wrote to Minebea and offered a further license in an effort to "avoid future conflicts concerning the existing PAPST patent portfolio once and for all." In the December 13, 1994 letter, Papst stated that "[b]ecause of the past, MINEBEA and PAPST have a special relationship with each other. With the former Joint Venture PAPST granted MINEBEA the use of all hard disk spindle motor patent rights as well as for PAPST patent rights usable for DC brushless fans." The letter further stated that "because of the special historical and personal relationship between MINEBEA and PAPST. Therefore, [the Papst Licensing offer] should not be a subject of debate but should be accepted unchanged in its totality." The December 13, 1994, letter is incorporated herein by reference.

74.     An attachment to the December 13, 1994, letter listed all of the Papst patents that were the subject of the license offer, along with a characterization of the invention covered by each patent. In almost every instance, the Asserted Papst Patents are listed and characterized by Papst as relating to motors, i.e., as either "mechanical motor constructions, e.g., bearing concepts" or "[m]otor drive principles."

75.    The Papst offer was reiterated in a February 2, 1995, letter to Minebea in which Georg Papst and Papst Licensing represented that acceptance of the offer would result in a "lasting peace" through the grant by Papst Licensing to Minebea of "all patent rights which are presently issued as well as presently pending patent applications." Georg Papst and Papst Licensing further represented that this offer was "an unparalleled case just for MINEBEA." The February 2, 1995, letter is incorporated herein by reference.

76.    On February 9, 1995, Georg Papst and Papst Licensing, through their United States counsel and agent located in Washington, D.C., Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., wrote to PMDM purportedly to clarify the relationship between Papst Licensing and PMDM. In this letter, the scope of the rights that PMDM had under existing agreements is deceptively mischaracterized by representing that certain so-called Disk Drive Patents had been excluded, when in fact they had not. The purpose of these mischaracterizations was to induce Minebea to accept Papst Licensing's offer as contained in the December 13, 1994, letter. The February 9, 1995, letter is incorporated herein by reference.

77.    The false statements made in the February 9, 1995 letter were a continuation of Georg Papst's mischaracterizations of various patents and Minebea's and PMDM's rights thereto which had begun in 1991. Thus, the misrepresentations made during the joint venture period when Minebea and PMDM had reasonably trusted Georg Papst, were extended throughout the ongoing business relationship with Papst. Minebea and PMDM continued to reasonably rely upon these representations even after the formal joint venture relationship was consensually ended.

78.    In or about May 1995, Minebea agreed to accept Papst's December 1994 offer. As evidenced in correspondence dated May 8, 1995, from Richard H. Smith, Esq. to Minebea, dated June 2, 1995, from Jerold B. Schnayer, Esq. to Minebea, dated June 2, 1995, from Georg Papst and Papst Licensing to Minebea and dated June 9, 1995, from Jerold B. Schnayer, Esq. to Minebea, which are incorporated herein by reference, Georg Papst and Papst Licensing used as their agents and were represented by counsel located in Washington, D.C. and Chicago, Illinois in connection with the negotiation and execution of the final agreement.

79.    As a result, on June 19, 1995, Georg Papst, Papst Licensing and Minebea entered into a Settlement Agreement ("the Settlement Agreement").  As detailed further below, under the Settlement Agreement, the Papst portfolio of patents and patents pending is divided into three categories with reference to APPENDICES I, II and III which are separately attached to the back of the Settlement Agreement.  The APPENDIX I and II patents and patents pending are included as "Papst Patents," while the APPENDIX III patents are referred to as "Papst Drive Patents."  As detailed further below, the Settlement Agreement grants rights to Minebea and its subsidiaries, including PMDM and NMB, under the Papst Patents as well as under the Papst Drive Patents, but as a result of misrepresentations made by Papst Licensing and Georg Papst, purports to reserve certain rights against purchasers of Minebea's HDD spindle motors.  The Settlement Agreement is incorporated herein by reference.

80.    The Settlement Agreement provides as its purpose "the parties further desire to ensure that no . . . dispute arises in the future in relation to past, current or future intellectual property rights of Papst."  A fundamental understanding underlying the

Settlement Agreement was that Plaintiffs would continue in the development, design, manufacture and sale of HDD spindle motors and that Plaintiffs and their customers would continue to be free of any claims of infringement by Papst with respect to such motors or their intended use.

81.    Paragraph 1.4 of the Settlement Agreement defines "Papst Patents" as all patents "owned [or] controlled" by Papst Licensing, including "without limitation" the patents and patents pending set forth in APPENDIX I and II to the Settlement Agreement, but further provides that Papst Patents will not include the patents and patent applications set forth in APPENDIX III to the Settlement Agreement (the "Papst Drive Patents"). In APPENDIX I, the Papst Drive Patents are properly identified by their titles and are characterized by Papst as "U.S. Patents for motor and motor controls of general applicability, such as . . . HDD [Hard Disk Drives]." However, in APPENDIX III the titles of these patents have been changed and they have been characterized as "covering Hard Disk Drives."

82.    The Appendices to the Settlement Agreement were prepared by Papst's counsel and were provided to Minebea only shortly before the execution of the Agreement.

83.    Paragraph 2.4 of the Settlement Agreement provides: "Papst and each of them agree not to assert any claim or prosecute any action, suit or proceeding against Minebea or any of them for contributory infringement or inducement of infringement of any Papst Patent or Papst Drive Patent."

84.    Paragraph 3.1 of the Settlement Agreement further provides: "Nothing herein shall be construed as limiting or abridging the rights of Minebea under [the prior] . . . agreements [between the parties], and any such rights are incorporated herein and

preserved hereby. However, with regard to the rights and obligations of the parties to this Agreement concerning Papst Drive Patents... such rights and obligations shall be governed only by the provisions of this Agreement." Accordingly, the rights of Minebea and its subsidiaries preceding the Settlement Agreement are preserved and no claims of infringement of Papst Drive Patents, can, under any circumstances, be made against Plaintiffs' customers with respect to hard disk drive motors purchased prior to June 19, 1995.

85.     The Settlement Agreement further grants a license and release to Minebea to each of the Papst Patents but provides in paragraph 4.1 that "no license is granted hereunder to any Minebea customer with respect to the Papst Drive Patents."

86.     The Settlement Agreement provides in paragraph 5.2: "Papst and each of them further warrant that Minebea's manufacture, distribution, use or sale of motors by themselves do not directly infringe the claims in the Papst Drive Patents. Papst and each of them agree not to assert any claim or initiate any proceeding against Minebea or any of them for contributory infringement or inducement of infringement of any Papst Drive Patent."

87.     The Settlement Agreement further provides in paragraph 7.3 that "this Agreement shall be governed by and interpreted in accordance with the laws of New York."

88.     Each of the patents listed by Papst in APPENDIX III as "covering Hard Disk Drives" is also listed by Papst in APPENDIX I to the Settlement Agreement as among the "PAPST U.S. Patents for motor and motor controls of general applicability . . . ."

89.     Papst's description of the APPENDIX III patents as "covering Hard Disk Drives" is inconsistent with prior descriptions and representations made by Papst. Not only have

the subject matter titles of the patents been altered, but such description is inconsistent with the descriptions of these patents that are contained in the August 17, 1990, letter to Minebea from Hans Dieter Papst, the 1991 list provided by Papst Motoren KG to Minebea and the attachment to the Papst Licensing letter to Minebea of December 13, 1994.

90.    Starting in or about the Spring of 1995, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH through their United States counsel and agents have made unfounded infringement claims of certain Papst Patents and Papst Drive Patents (the "Asserted Papst Patents" including the patents identified in paragraph 138 herein) against Minebea's, PMDM's and NMB's customers.  These assertions are based upon the use by such customers of hard disk drive motors that were designed, manufactured, marketed and sold by Minebea and its subsidiaries and are fully licensed under the Papst Patents and Papst Drive Patents.  Thereafter and following the aforesaid demands by customers for indemnification, Minebea and its subsidiaries, including PMDM and NMB, learned for the first time that contrary to the repeated representations of Georg Papst and Papst Licensing, as described in detail above, the Settlement Agreement did not provide a "lasting peace," "avoid[ance] of future conflicts . . . once and for all," or "ensure that no such dispute arises in the future."  Rather, through fraud and deceit, Georg Papst and Papst Licensing had purported to carve out patent rights necessary for the ongoing HDD spindle motor business of Minebea, including its subsidiaries, PMDM and NMB, which had been previously assigned and sold to Minebea and are asserting these patents against the use of hard disk drive motors purchased by these customers from Minebea and its subsidiaries, including PMDM and NMB.

91.    In pursuing its assertions against Minebea's, PMDM's and NMB's customers, Georg Papst, and Papst Licensing and Papst Licensing MBH have falsely stated and represented to such customers that Minebea and its subsidiaries, including PMDM and NMB, are not licensed under the Asserted Papst Patents.

### Papst's Baseless Litigation Tactics

92.    Following institution of this law suit in the United States District Court for the District of Columbia, Georg Papst and Papst Licensing issued written threats to Minebea's customers that they were necessary parties to the litigation and would be added as counterclaim defendants.  On information and belief, Papst never intended to join Minebea's customers as parties in this law suit and made such threats solely for the purpose of coercing unlawful royalty payments.

93.    In further pursuit of their unlawful scheme, Papst commenced a litigation against three of Minebea's customers in the United States District Court for the Northern District of Illinois.  Papst knew that it had no basis for commencing an action in Illinois, but selected that venue to avoid adjudication of the merits of its claim in a timely or efficient manner.  Papst was forced to dismiss its claim against one such customer the day after it was filed because the claim was brought in express violation of contract.  After the Illinois Court, sua sponte, suggested the award of Rule 11 sanctions because Papst was unable to explain any basis for venue in Illinois, Papst was forced to consent to transfer of the litigation against the two remaining customers.

94.    In a further effort to avoid adjudication on the merits and "buy time" so that it could coerce additional Minebea customers to pay unlawful royalties, Papst engaged in a continual and objectively unjustifiable pattern of delay in the District of Columbia.  As

-28-

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

part of this effort, Papst lodged frivolous objections to every discovery request made by Minebea, knowingly violated Court orders to provide discovery and filed repetitive motions solely for the purpose of delay.

### COUNT I

### PLAINTIFFS' AUTHORIZED SALES OF HDD SPINDLE MOTORS EXHAUSTS DEFENDANTS' PATENT RIGHTS AND PLAINTIFFS' CUSTOMERS ARE FREE TO USE THESE MOTORS WITHOUT CLAIMS OF INFRINGEMENT

95.    Plaintiffs repeat and incorporate by reference paragraphs 1-94 of the Complaint

96.    Under the terms of the 1995 Settlement Agreement, including, without limitation, the covenants not to sue provided in paragraphs 2.4 and 5.2, Minebea on behalf of itself and its subsidiaries is granted unrestricted authority and license to make, use and sell hard disk drive motors under all patents owned or controlled by Georg Papst and Papst Licensing.

97.    The hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, have no useful purpose other than in hard disk drive assemblies and are alleged to embody essential features of the Asserted Papst Patents.

98.    The unrestricted and authorized sale by Minebea and its subsidiaries, including PMDM and NMB, both prior to and following June 19, 1995, exhausts the patent rights, including without limitation, those of the patents listed in Appendix III of the Settlement Agreement, notwithstanding any attempted reservation of rights to proceed against their customers.    Accordingly, such customers do not require any further rights or authorization from Georg Papst, Papst Licensing or Papst Licensing MBH to

manufacture, use or sell hard disk drive assemblies incorporating hard disk drive motors manufactured and sold by Minebea and its subsidiaries. As set forth herein, a real and actual controversy exists between Plaintiffs and Defendants with respect to whether the Asserted Patents are exhausted by such authorized and unrestricted sale.

## COUNT II

## FRAUDULENT CONCEALMENT

99.     Plaintiffs repeat and incorporate by reference paragraphs 1-94 of the Complaint.

100.     Georg Papst and Papst Licensing and its predecessor companies, and derivatively, Papst Licensing MBH had knowledge of material facts concerning the nature and scope of the various patents owned by Papst, as well as the fact that the "Drive Patents" had been previously licensed to Minebea.

101.     As they had done in 1993 when the formal joint venture relationship existed and Papst owed unquestionable fiduciary obligations to Minebea and PMDM, in 1995, prior to the execution of the Settlement Agreement and as described in detail above, Defendants concealed and misrepresented to Minebea the material fact that the "Drive Patents" were in reality previously licensed patents necessary to the HDD spindle motor business of Minebea and its subsidiaries, including PMDM and NMB. Defendants' misrepresentations and omissions were intended to and did deceive Minebea into executing the 1995 Settlement Agreement which purports to carve out the previously licensed "Drive Patents."

102.     As described in detail above, Defendants had an affirmative duty to disclose the nature and scope of the APPENDIX III patents, as well as the fact that they

had been previously licensed to Minebea, based upon the special fiduciary relationship existing between the parties and the superior knowledge available to Defendants and not readily available to Minebea.

103.    Plaintiffs    reasonably    relied    upon    the    foregoing    fraudulent misrepresentations and concealments by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH and were thereby misled into relinquishing valuable patent rights. In furtherance of the scheme to defraud, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH have appropriated for themselves the books and records of PMDM that were created during the period of the joint venture and have refused to provide timely access to these records upon demand by PMDM and its attorneys. As a result, Plaintiffs' discovery of the fraudulent misrepresentations and concealments by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH was delayed.

## COUNT III

## NEGLIGENT MISREPRESENTATION

104.    Plaintiffs repeat and incorporate by reference paragraphs 1-94 and 100-103 of the Complaint.

105.    Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH owed fiduciary duties to Minebea based upon the special relationship that existed between the parties, including, inter alia, their relationship as joint venturers under the 1990 Agreement as well as their long standing business relationship.

106.    Georg Papst owed a fiduciary duty to Minebea and PMDM based, inter alia, on his status as Director and Chief Operating Officer of the Papst/Minebea joint venture companies.

107.       Georg Papst and Papst Licensing made representations and averments to Minebea that a special relationship existed between the parties and that Minebea could rely on Papst to protect its interests.

108.       Georg Papst and Papst Licensing had an affirmative duty to exercise due care in ascertaining the truth of the statements that they made to Minebea and PMDM.

109.       Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH failed to exercise their duty of due care in at least the following respects: (1) by negligently misrepresenting to Minebea that the APPENDIX III Patents to the 1995 Settlement Agreement were not necessary to the ongoing HDD spindle motor business of Minebea and its subsidiaries, including PMDM and NMB; and (2) by negligently misrepresenting to Minebea in the 1993 Loan Agreement and Agreement Concerning Alterations of License Agreements that U.S. Pat. No. Re. 32,702 and German Patent No. 29 44 212 were not previously licensed patents.

110.       Minebea reasonably relied upon the negligent misrepresentations and negligent failures to disclose by Georg Papst and Papst Licensing and was thereby misled into relinquishing valuable patent rights.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

111.       Plaintiffs repeat and incorporate by reference paragraphs 1-94, 100 – 103, 105 - 110 of the Complaint.

112.       Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH owed a fiduciary duty to Minebea based upon, inter alia, the special relationship between

the parties; their relationship as joint venturers under the 1990 Agreement; as well as their long standing business relationship.

113.        Georg Papst owed a fiduciary duty to Minebea and PMDM based, inter alia, on his status as Managing Director and Chief Operating Officer of the Papst/Minebea joint venture companies.

114.        Georg Papst and Papst Licensing made representations and averments to Minebea that a special relationship existed between the parties and that Minebea could rely on Papst to protect its interests.

115.        As described in detail above, Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH violated and breached a fiduciary duty owed to Minebea and PMDM by, inter alia, (1) making false and misleading statements which were intended to and did mislead Minebea into relinquishing valuable patent rights; (2) self dealing in the assets of PMDM, the joint venture, by inducing Minebea to relinquish valuable patent rights owned by the joint venture; and (3) failing to observe the high standard of candor and good faith owed by a fiduciary.

## COUNT V

## CONVERSION, UNJUST ENRICHMENT AND FOR AN ACCOUNTING

116.        Plaintiffs repeat and incorporate by reference paragraphs 1-94, 100 – 103, 105 – 110 and 112 - 115 of the Complaint.

117.        As Director and Chief Operating Officer of the Papst/Minebea joint venture, one of the duties of Georg Papst was to ensure that patent applications were filed in the name of PMDM on all patentable inventions created by any PMDM employees.

118.    During the period of the joint venture enterprise, certain patentable inventions were created by PMDM employees working within the scope of their employment. All such inventions belong to PMDM.

119.    Paragraph 9(a) of the Agreement for the sale of Intangible Assets between Minebea and Papst Motoren KG further provides that "both parties hereby confirm that new patents [invented by Minebea or Papst Motoren] applicable only to HDD Motors shall be developed and registered under the name of GVJ [the German Joint Venture, PMDM] and GVJ shall own and maintain such new patents." (Emphasis added).

120.    During the period of the joint venture enterprise, certain patentable inventions applicable only to HDD Motors were created by Papst Motoren, either individually or jointly with PMDM employees working within the scope of their employment. All such inventions belong to PMDM.

121.    Rather than file the patent applications arising from (1) inventions created by PMDM employees working within the scope of their employment or (2) inventions of Papst Motoren KG applicable only to HDD motors, in the name of PMDM, Georg Papst and Papst Licensing instead filed the patent applications in the name of Papst Licensing and/or assigned the inventions to Papst Licensing.

122.    United States Patent No. 5,394,283, entitled DISK STORAGE DRIVE HAVING A ROTOR MOUNTED WITH A PLURALITY OF BEARINGS, and filed November 12, 1992, and United States Patent No. 5,331,483, entitled AXIALLY COMPACT DIRECT DRIVE FOR STORAGE DISK HUB, and filed on July 1, 1992, represent at least two such patents that should have been assigned to PMDM, but instead were assigned to Papst Licensing.

123.        Plaintiffs believe that additional patent applications and related filings that properly belong to PMDM may have instead been improperly converted by and assigned to Papst Licensing.

124.        The foregoing acts by Georg Papst, Papst Licensing and derivatively, Papst Licensing MBH constitute conversion of valuable PMDM assets by Georg Papst, Papst Licensing and Papst Licensing MBH.

125.        The foregoing acts constitute unjust enrichment by Georg Papst, Papst Licensing and Papst Licensing MBH to the detriment of PMDM and Minebea.

126.        An accounting of all United States patents and patent applications filed by Papst Licensing as well as each entity or organization owned or controlled by Georg Papst is necessary in order to determine the full extent of the conversion of PMDM assets by Georg Papst, Papst Licensing and Papst Licensing MBH.

## COUNT VI

## CONTRACT REFORMATION

127.        Plaintiffs repeat and incorporate by reference paragraphs 1-94, 100 – 103, 105 – 110, 112 – 115 and 117 - 126 of the Complaint.

128.        The primary purpose and intent of the 1995 Settlement Agreement was to ensure that no further patent disputes would arise in the future between Georg Papst and Papst Licensing, on the one hand, and Minebea and its subsidiaries, including PMDM and NMB, on the other hand.

129.        It was never the purpose or intent of Minebea to relinquish patent rights necessary to allow its customers, and those of its subsidiaries, to use Minebea's hard disk drive spindle motors in their intended manner in hard disk drives.

130.        Contract provisions in the 1995 Settlement Agreement that purport to result in the relinquishment by Minebea and its subsidiaries of patent licenses to customers and therefore necessary for their ability to make, use and sell motors for use in hard disk drives fail to reflect the meeting of the minds of the parties to the agreement by virtue of unilateral mistake by Minebea regarding the nature and scope of the APPENDIX III Patents and fraud or misrepresentation by Georg Papst and Papst Licensing.

131.        The 1995 Settlement Agreement should be reformed to delete Appendix III in its entirety.

## COUNT VII

## VIOLATION OF SECTION 43(A) OF THE LANHAM ACT

132.        Plaintiffs repeat and incorporate by reference paragraphs 1-94, 100 – 103, 105 – 110, 112 – 115, 117– 126 and 128 - 131 of the Complaint.

133.        This claim arises under The Trademark Act of 1946, 15 U.S.C. § 1051, et seq., and particularly under 15 U.S.C. § 1125(a).  This claim is to redress the use in commerce of false descriptions and representations by defendants.

134.        Minebea is one of the largest manufacturers in the world of hard disk drive electric motors.

135.        Minebea and its subsidiaries, including PMDM and NMB, have invested considerable resources to develop good will with their customers who have come to view Minebea, PMDM and NMB as reputable suppliers of high quality motors.

136.        Defendants have made false or misleading factual representations regarding the nature and characteristics of Minebea's, PMDM's, and NMB's goods by

-36-

Minebea v. Papst
Civil Action No. 97-0590
(PLF)

falsely claiming that their use in a hard disk drive infringes the Asserted Papst Patents and that Minebea, PMDM and NMB are not licensed under such patents. Absent these falsehoods, Plaintiffs' sales would have been substantially greater since customers would have necessarily elected to purchase from Plaintiffs as a licensed and non-infringing source.

## COUNT X

## DECLARATORY JUDGMENT OF LICENSE RIGHTS

137.    Plaintiffs repeat and incorporate by reference as if fully set forth herein paragraphs 1 – 94 of the Complaint.

138.    Upon information and belief, Papst Licensing is the owner of United States Patent Nos.    4,337,491, 4,519,010, 4,535,373, 4,604,665, 4,651,241, 4,658,312, 4,698,542, 4,779,165, 4,882,511, 4,894,738, 4,922,406,    4,991,211,    4,998,032, 5,001,581, 5,006,943, 5,040,085, 5,128,819, 5,170,083, 5,173,814, 5,216,557, 5,237,471, 5,317,241, 5,382,853, 5,422,769 , 5,424,887,    5,446,610, 5,557,487, 5,661,351, 5,708,539, 5,729,403,    5,774,302,    5,777,822,    RE 34,412,    RE 34,268, RE 32,702, RE B1 32,702, RE 35,792, and 4,517,480, 4,667,122, 4,843,500, 5,801,900, 5,864,443   and   RE 36,016 and   4,517,480,   4,667,122,   5,361,010, 5,652,470, 5,887,916, 5,909,072, 5,945,751, 5,946,161, 5,949,164, 6,005,746, RE 35,763 and 36,168.

139.    Certain third party computer product manufacturers (collectively "Minebea Motor Customers") purchase hard disk drive motors designed, manufactured and sold by Minebea, including its subsidiaries PMDM and NMB.

140.     Papst Licensing, Georg Papst and derivatively, Papst Licensing MBH have asserted that the Minebea Motor Customers, by combining certain Minebea Motors with other components to form a computer hard disk drive and then selling the completed hard disk drive, have infringed one or more of the Asserted Papst Patents.

141.     Plaintiffs have a reasonable apprehension that Papst Licensing, Georg Papst and derivatively, Papst Licensing MBH will assert each of the Asserted Papst Patents against one or more of the Minebea Motor Customers alleging that, by combining Minebea Motors with other components to form a computer hard disk drive and then selling the completed hard disk drive, they have infringed the Asserted Papst Patents.

142.     Minebea Motor Customers have notified Minebea and its subsidiaries, including PMDM and NMB, of patent infringement claims raised by Papst Licensing with respect to many of the United States Patents which are the subject of this litigation and assert that hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, form the basis for Papst Licensing's claims. Plaintiffs have a reasonable apprehension that Papst Licensing will assert each of the Asserted Papst Patents against one or more Minebea Motor Customers. The hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, are incorporated by their respective customers into disk drive assemblies which are sold and used within the United States. Based upon the foregoing, as well as the express and implied contractual terms with such customers and express and implied demand for indemnification by such customers, Minebea and its subsidiaries, including PMDM and NMB, reasonably apprehend that they may be legally liable for indemnification with respect to such infringement claims by Papst Licensing.

-38-

143.    As set forth herein, a real and actual controversy exists between Papst Licensing, Georg Papst and Papst Licensing MBH, on the one hand, and Minebea and its subsidiaries, including PMDM and NMB, on the other, with respect to license rights to the Asserted Papst Patents.

144.    Pursuant to the terms of the Settlement Agreement, the Asserted Papst Patents are licensed to Minebea.

145.    Pursuant to the terms of the Settlement Agreement, Papst Licensing, Georg Papst and Papst Licensing MBH may not assert the Asserted Papst Patents against the Minebea Motor Customers for their manufacture, use or sale of hard disk drives incorporating a Minebea Motor.

## COUNT XI

## DECLARATORY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT OF THE '010 PATENT, '665 PATENT, '373 PATENT, AND '406 PATENT

146.    Plaintiffs repeat and incorporate by reference as if fully set forth herein paragraphs 1 - 94 of the Complaint.

147.    Upon information and belief, Papst Licensing is the owner of United States Patent No. 4,519,010 (the "'010 Patent") entitled "Driving Mechanism For Magnetic Hard Disk Memories" which issued on May 21, 1985.

148.    Upon information and belief, Papst Licensing is the owner of United States Patent No. 4,604,665 (the "'665 Patent") entitled "Driving Mechanism For Magnetic Hard Disk" which issued on August 5, 1986.

149.    Upon information and belief, Papst Licensing is the owner of United States Patent No. 4,535,373 (the "'373 Patent") entitled "Labyrinth Seal In Disk Storage Drive" which issued on August 13, 1985.

150.     Upon information and belief, Papst Licensing is the owner of United States Patent No. 4,922,406 (the "'406 Patent") entitled "Labyrinth Seal In Disk Storage Drive" which issued on May 1, 1990.

151.     Upon information and belief, Papst Licensing has not filed with the United States Patent Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the '010 Patent, '665 Patent, Patent, '373 Patent and '406 Patent.

152.     The Minebea Motor Customers purchase hard disk drive motors designed, manufactured and sold by Minebea, including its subsidiaries PMDM and NMB.

153.     Papst Licensing, Georg Papst and derivatively, Papst Licensing MBH have asserted that Minebea Motor Customers, by combining certain Minebea Motors with other components to form a computer hard disk drive and then selling the completed hard disk drive, have infringed the Asserted Papst Patents.

154.     Minebea Motor Customers have notified Minebea and its subsidiaries, including PMDM and NMB, of patent infringement claims raised by Papst Licensing with respect to many of the United States Patents which are the subject of this litigation and assert that hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, form the basis for Papst Licensing's claims. Plaintiffs have a reasonable apprehension that Papst Licensing will assert each of the Asserted Papst Patents against one or more of the Minebea Motor Customers. The hard disk drive motors manufactured and sold by Minebea and its subsidiaries, including PMDM and NMB, are incorporated by their respective customers into disk drive assemblies which are sold and used within the United States. Based upon the foregoing,

as well as the express and implied contractual terms with such customers and express and implied demands for indemnification by such customers, Minebea and its subsidiaries, including PMDM and NMB, reasonably apprehend that they may be legally liable for indemnification with respect to such infringement claims by Papst Licensing.

155.    As set forth herein, a real and actual controversy exists between Papst Licensing, Georg Papst and Papst Licensing MBH, on the one hand, and Minebea and its subsidiaries, including PMDM and NMB, on the other, with respect to the validity and alleged infringement of the '373 Patent, '406 Patent, '010 Patent and '665 Patent.

156.    Minebea, PMDM and NMB aver that each claim of the '373 Patent and '406 Patent is invalid, void and unenforceable under the patent laws of the United States, 35 U.S.C. § 1 et seq.

157.    Minebea, PMDM and NMB aver that the manufacture, use and sale by the Minebea Motor Customers of a computer hard disk drive incorporating a Minebea Motor does not infringe any valid claim of the '373 Patent, '406 Patent, '010 Patent and '665 Patent.

### The '373 And '406 Patents Are Invalid

158.    The '373 Patent is generally directed to a disk storage drive having a clean chamber and an electric motor having a stator and a rotor to drive a disk. One or more labyrinth seals defined by air gaps are located between the motor and clean room chamber, the purpose being to prevent contaminants from the internal portion of the motor from reaching the clean room and thereby disrupting the reading and/or writing onto the disk.

159.     Independent Claim 1 is directed to an embodiment utilizing only a single labyrinth seal between portions of the stator and the rotor.  Independent Claim 17 is directed to "labyrinth seals located between the drive parts of the motor and the contaminant free chamber."

160.     In summary, the '373 Patent is directed to a disk drive having a motor utilizing labyrinth seals, which are a maze of narrow gaps forming a tight passage such that "the overall affect on contaminant particles is that of a seal because of the structural containment of the particles being restricted by the maze." '373 Patent, Column 7, Lines 35-38.

161.     A review of the prosecution history leading to the issuance of the '373 Patent, including the October 4, 1983, Office Action and March 4, 1984 Amendment, makes clear that the reason for its allowance was the inclusion of the labyrinth seal limitation within each of the claims.  In the October 4, 1983, Office Action the Examiner rejected each of the then pending Claims 1 through 27.  The claims were rejected for, among others, the following reason:

> Claims 1-27 are rejected under 35 U.S.C. § 103 as being unpatentable over Duncan, et al. [U.S. Patent No. 4,005,490; Exhibit 25] or Stollorz in view of Vidwans and Bolton et al.

162.     October 4, 1983, Office Action at pages 3.

163.     The Examiner found the inclusion of a labyrinth seal in a disk drive mechanism to be obvious.  The Examiner even found the narrower claims relating to variations on the shape of the labyrinth or certain motor structure to be such that there was no "indication