UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MINEBEA CO., LTD., et al.,              )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 97-0590 (PLF)
                                        )
GEORG PAPST, et al.,                    )
                                        )
            Defendants.                 )
_____)


<u>MEMORANDUM OPINION</u>

            This matter is before the Court on Papst's remaining objections to the Special

Master's Report and Recommendation No. 6 ("R&R 6").  The Court has reviewed R&R 6,

Papst's objections, Minebea's opposition and Papst's reply, Minebea's request for clarification of

the April 29, 2005 Order and Papst's comments thereto.  The majority of Papst's objections to

R&R 6 were already resolved in this Court's oral ruling of October 19, 2004.  This Opinion

addresses Papst's remaining objections to the Special Master's conclusions with respect to

(a) waiver of privilege with respect to the subject matter of infringement analyses sent to third

parties, (b) foreign language documents, and (c) Minebea's waiver of the joint defense privilege.


                        *A.  Subject Matter Waiver*

            The Special Master concluded that Papst's "deliberate and voluntary transmittal to

potential licensees of infringement analyses, reflecting both technical and legal opinions, waived

whatever privilege or work product protection" might otherwise have attached to such analyses

as well as whatever privilege might otherwise have attached to communications between Papst

and its counsel on the subject matter of the transmittal.  <u>See</u> R&R 6 at 71.  The Special Master

further concluded that any privilege that might otherwise have attached to counsel's advice to

Papst regarding infringement by Minebea was waived when Mr. Schnayer sent to Minebea a

copy of Mr. Schnayer's November 10, 1993 "analysis of some of the Papst Licensing patents

which we believe cover Minebea floppy disk drives."  <u>Id</u>.  The Special Master concluded that

Papst should produce all documents relating to "any Papst consideration or analysis of Minebea's

infringements whether actual, potential, or otherwise – considered by counsel for Papst and by

Papst representatives."  <u>Id</u>. at 72.  The Special Master recommended that Papst be ordered to

produce "each withheld document relating to the subject matter of any communication between

Papst and a third party, including Minebea, in which a Papst analysis or opinion of any kind as to

the scope or infringement of any Papst patent was disclosed or discussed."  R&R 6 at 80.

      In general, the Court agrees with the Special Master's recommendation, but

believes that clarification is warranted concerning the scope of any waiver.  The Court has

reviewed the documents submitted by Minebea in support of its argument and reviewed by the

Special Master and has concluded that the waiver suggested by R&R 6 is overly broad.

### 1.  Attorney-Client Privilege

      "[I]f a client wishes to preserve the privilege, it must treat the confidentiality of

attorney-client communications like jewels – if not crown jewels."  <u>In Re Sealed Case</u>, 877 F.2d

976, 980 (D.C. Cir. 1989).  Because of this principle, a waiver of the privilege in an attorney-

client communication, even an inadvertent one, "extends to all other communications relating to

the same subject matter."  <u>Id</u>. at 980-81 (quotations omitted).  Minebea has submitted to the

Court two letters – one from Mr. Schnayer to Mr. Naka and one from Mr. Papst to Mr. Mizukami – which attached letters from Mr. Schnayer to Mr. Papst. Papst's decision to send Minebea copies of these otherwise privileged communications clearly waived the attorney-client privilege with respect to these documents, as well as with respect to all other attorney-client communications on the same subject.

The letter sent by Mr. Schnayer to Mr. Naka on February 16, 1994 was intended to "discuss the patent infringement issues concerning [Minebea's] floppy disk drives." See Opposition, Exh. 7 at Exh. 30. It attaches a letter sent by Mr. Schnayer to Georg Papst dated November 10, 1993, which is an "analysis of some of the Papst Licensing patents which we believe cover Minebea floppy disk drives." Id. By sending this letter to its adversary, Papst has waived the attorney-client privilege with respect to any other attorney-client communications which discuss patent infringement issues with respect to the patents listed in the letter.

The second letter, sent by Mr. Papst to Mr. Mizukami on June 8, 1994, discusses a potential settlement with respect to infringement of floppy disk drive spindle motor patents. See Opposition, Exh. 7 at Exh. 31. It attaches a letter from Mr. Schnayer to Mr. Papst, dated June 6, 1994, which is a "summary of [Mr. Shnayer's] opinion concerning the merits of Papst's charge of infringement against Minebea's floppy disk drive motors." Id. Once again, all other attorney-client communications on the subject of infringement of those patents must be produced.[1]

---

[1]     Other examples include a letter from Georg Papst to Richard Smith, Esq. asking that Mr. Smith convey to Minebea the "content of your draft to me" which explained "how far Minebea may be permitted to go under the base plate integrated patent." See Opposition, Exh. 7 at Exh. 45. This letter certainly implies that a letter was sent to Minebea attaching an attorney-client communication on the subject. Any such letter would waive privilege with respect to all attorney-client communications on this subject. Minebea also included a letter sent from Richard Smith, Esq. to Hans-Dieter Papst discussing excluding pending non-U.S. patent applications with

The Court rejects Papst's suggestion that communicating assertions of infringement to an accused infringer never results in subject matter waiver. Clearly, distributing otherwise privileged letters between counsel and client to third parties necessarily waives the privilege with respect to the subject matter of the disclosure. A party can inform an adversary of claims of infringement without revealing attorney-client communications, but that was not done in this instance.

The Court does agree, however, that the waiver of privilege is limited to the specific patents involved in the third party communications, for that by definition is the specific subject matter involved. "[T]he subject matter of the disclosure must be determined in reference to the content of the disclosed document." Katz v. AT&T Corporation, 191 F.R.D. 433, 440 (E.D. Penn. 2000) ("In determining the scope of the waiver, the Special Master correctly limited the scope of the waiver to the patents at issue in the prior litigation."). Indeed, "Minebea agrees with Papst to the extent that any waiver must be limited to the same specific subject matter as the disclosed communication." Minebea's Statement of Points and Authorities in Opposition to Papst's Motion to Reject Special Master Plant's Report and Recommendation No. 6 at 32 n.18. The scope of any subject matter waiver therefore is limited to the specific patents discussed in the disclosed communication and any attachments thereto.

HDD disclosures from the Nidec license. See Opposition, Exh. 7 at Exh. 46. It is not clear to whom this letter was sent, but disclosing this attorney-client communication clearly waives any privilege with respect to other communications discussing what to exclude from the Nidec license. Similarly, a letter from Richard Smith, Esq. to Georg Papst discussing an indemnification demand from Nidec and an analysis of a 1990 Agreement between PM-KG and Nidec, which was apparently sent to a third party, waives attorney-client privilege with respect to the subject matter of this letter. See Opposition, Exh. 7 at Exh. 47.

2.   Attorney Work Product

Disclosure of attorney work product to an adversary or third party does not so easily lead to waiver with respect to all documents and communications concerning the same subject matter.  Of course, the first question always is whether the contested documents are privileged work product to begin with.  For example, this Court has already rejected Papst's argument that all license negotiations are in anticipation of litigation and therefore constitute work product.  See October 19, 2004 Oral Ruling at 68.  As the Court stated "Papst cannot assert a blanket privilege over all negotiation material. . . .  Papst's business is not anticipating litigation."  Id.  To reiterate, not every assessment of patent infringement is prepared in anticipation of litigation, and Papst is directed to abide by this Court's earlier rulings on this subject.  If there are any such documents which have still not been produced, they must be produced immediately.

With respect to those documents that truly are protected attorney work product, the question becomes whether the subject matter of that work product is waived by voluntarily disclosing the work product itself.  While the attorney-client privilege exists to protect a confidential relationship, the attorney work product privilege, in contrast, exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent."  United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1298 (D.C. Cir. 1980).  Because of the different nature of the two privileges, subject matter waiver may be found in the work product context only when "it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed."  In re United Mine Workers of America Employee Benefit Plans Litigation, 159 F.R.D. 307, 312

(D.D.C. 1994).  Such a situation might arise, for example, "where a party expressly agreed to disclose attorney work product or where it deliberately disclosed documents in an attempt to gain a tactical advantage."  Id.  Providing attorney work product – such as an infringement analysis – to an adversary in an attempt to procure a license agreement appears to be just such a situation: the privileged material was disclosed in order to gain a tactical advantage.  If Papst sent letters to a third parties, such as Quantum Corporation, and attached an infringement analysis of a given patent, the Court concludes that work product protection would be waived with respect to other, unrevealed work product concerning infringement of that same patent.

        The Court is not satisfied, however, that the specific letters to third parties submitted by Minebea to the Court and to the Special Master reveal attorney work product to third parties.  For example, Mr. Schnayer sent a letter to Calluna PLC which quotes claims from various Papst patents and then states that Calluna's products infringe those claims.  See Opposition, Exh. 7 at Exh. 12.  There is no analysis of the infringement, just a statement that Calluna products infringe certain patent claims.  The Court does not believe that this type of letter reveals attorney work product and, without the revelation of work product in the correspondence, there can be no work product waiver with respect to the subject matter.  Similarly, a letter sent to Quantum Corporation informs Quantum that Papst had filed a request to reexamine a reissue patent and requests that Quantum enter into a license agreement.  See Opposition, Exh. 7 at Exh. 13.  Again, the Court does not see how this letter reveals attorney work product.  Finally, a letter sent to counsel for NEC responds to various points made during a previous meeting between NEC and Papst and then again quotes claims from Papst patents and states that NEC products infringe those claims.  See Opposition, Exh. 7 at Exh. 51.  There is no

analysis of the infringement, merely a recitation of the claim and a statement that NEC products infringe.  None of these letters demonstrate to the Court that Papst has revealed attorney work product in these particular communications, so there can be no subject matter waiver.

By contrast, if Papst has sent letters to third parties which provide any analysis of the alleged infringement, or otherwise reveal attorney work product, that <u>would</u> constitute work product waiver and Papst would have to produce all other work product involving infringement analyses of the same patents.  Once again, the Court rejects Papst's suggestion that communicating assertions of infringement to an accused infringer can never result in subject matter waiver.  If Papst has revealed attorney work product to an adversary, that conduct results in the waiver of work product with respect to all other documents dealing with the same subject matter.

## B.  Foreign Language Documents

The Special Master also noted that Papst withheld many foreign language documents for which the Special Master was not provided a translation.  The Special Master therefore recommended that all of these documents be produced.  <u>See</u> R&R 6 at 77.  This Court has already ruled, with respect to Minebea's Objections to R&R 6, that Minebea must produce any documents for which it originally failed to provide a translation to the Special Master.  <u>See</u> April 29, 2005 Opinion at 1 n.1.  The same standard applies to Papst.  Papst will immediately produce all foreign language documents for which it originally failed to provide a translation to the Special Master.[2]

---

[2]      Minebea notes in its Request for Clarification of the April 29, 2005 Order Regarding Report and Recommendation No. 6 that Papst, in response to this Court's October 19,

Minebea has requested clarification as to whether it must produce documents for which it produced only a partial or summary translation to the Special Master and for which Minebea has never provided a full translation to either the Court or the Special Master.  Minebea does not have to produce these documents.  Minebea is directed, however, to review all such documents with a judicious eye and to produce all non-privileged documents in accordance with this Court's previous rulings.

### C.  Joint Defense Privilege

Papst also objected to the Special Master's conclusion that Papst "has not made a showing of need or undue hardship necessary to warrant penetrating either ordinary or opinion work product production" with respect to Minebea's "joint defense" communications.  R&R 6 at 47 n.25.  Papst appears not to dispute this conclusion at all with respect to work product, but now says it wants attorney-client privileged documents on the ground that Minebea waived the attorney-client privilege with respect to the joint defense agreements through its damages claims.  See Objections at 42.  Because there was a waiver, Papst argues, no "special need" must be shown.  The Court agrees that there is no "special need" requirement to obtain documents if Papst can demonstrate waiver of the attorney-client privilege.

---

2004 Order, indicated to the Special Master that English language translations of the remaining withheld foreign language documents would be provided in camera.  Papst responded that it submitted full English translations of all of its documents to the Special Master with its revised privilege log last November.  This is of no consequence.  In failing to provide translations when the Special Master originally requested them, Papst failed in its burden to demonstrate the privileged nature of the documents.  They must therefore be produced.  The parties will not be treated differently in this regard.  Just like Minebea, however, Papst does not have to produce documents for which summary or partial translations were originally submitted to the Special Master.

On the merits of its argument, Papst argues that because Minebea seeks damages for lost sales and reduced sales prices, Minebea has put the state of mind of its customers at issue and has waived protection for any communications about the customers' purchasing decisions. See Objections at 42.[3]  The Court is unconvinced by Papst's argument.  This Court has exhaustively discussed "at issue" waiver in the past and will not reiterate the law here.  Should Minebea succeed on the question of liability, Minebea would bear the burden of proof on the question of damages.  If proof of damages relies on otherwise privileged communications or information, Minebea will be faced with a choice then as to whether to waive that privilege by offering certain evidence.

A separate Order consistent with this Memorandum Opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: May 13, 2005

---

[3]      Papst also argues that it has made a showing of special need because the information is available through no other source but, as Papst concedes, this is really irrelevant to the attorney-client privilege argument.

9