UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
MINEBEA CO., LTD., et al.,            )
                                      )
       Plaintiffs,                     )
                                      )
    v.                              )   Civil Action No. 97-0590 (PLF)
                                      )
GEORG PAPST, et al.,                  )
                                      )
       Defendants.                     )
_____)


OPINION AND ORDER

        This matter is before the Court on defendants' objections to the Special Master's Report and Recommendation No. 11 ("R&R 11"), Report and Recommendation No. 13 ("R&R 13"), Report and Recommendation No. 19 ("R&R 19"), the supplement to Report and Recommendation No. 19 ("R&R 19S") and Report and Recommendation No. 23 ("R&R 23"). Although testimony has now been taken from all the witnesses in question under the Hague Convention, Minebea continues to assert that the issues regarding the "control" of these witness by Papst needs to be established so that either (1) Papst can be ordered to produce the witnesses in person for trial, or (2) adverse inferences can been drawn from its failure to do so. It is not clear whether, if the witnesses are not produced in person, Minebea seeks preclusion of the Hague witness summaries as well as adverse inferences. Minebea's initial reaction in open court was that it would prefer both.

        Upon consideration of all of the reports and recommendations, Papst's objections thereto, Minebea's oppositions and Papst's replies, the Court concludes that Papst should have

produced the inventors: Bernard Schuh, Heinrich Cap, Dieter Elsaesser, Ulrich Koletzki, Johann von der Heide and Rolf Mueller for deposition testimony in the United States. Papst is directed to produce these witnesses for live testimony at trial. If Papst fails to do so, the jury will be instructed as to what adverse inferences may be drawn from Papst's failure to produce them. The Court concludes, however, that Papst should not be ordered to produce Dr. Gerhard Schaetzle, Dr. Hans-Joachim Koenig, and Messers. Michael Herrmann and Klaus Lenz.

I. SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS

At the time the Special Master issued R&R 11, the witnesses in question were (a) seven alleged inventors of Papst patents, (b) Dr. Schaetzle, the past president of Papst Motoren, (c) Dr. Koenig, a German attorney once retained by Papst Motoren, and (d) Messrs. Herrmann and Lenz, former employees of Papst Motoren.[1] R&R 11 explains that each of the seven inventors had executed an assignment to Papst Motoren which expressly provided that the inventor would testify with regard to the assigned invention when requested by Papst Motoren, its successors and assigns. See R&R 11 at 2. None of the other witnesses have executed any written commitments. See id.

Papst, in cooperation with Minebea and the Special Master, delivered letters to all of the witnesses requesting their voluntary appearance for deposition. All of the witnesses declined. See Defendants' Objections to Report and Recommendation No. 11. Minebea then asked the Special Master to compel Papst to produce these witnesses for deposition or, in the alternative, to require Papst to sue them in Germany to compel their appearance. See R&R 11 at

---

[1] When the Court refers to "Papst," it is referring to the defendant, Papst Licensing, GmbH. It will refer to Papst Motoren as "Papst Motoren."

3. Minebea also requested that if Papst failed to do so (1) adverse inference be drawn, and (2) Papst be precluded from making any arguments based on testimony from any such witness. See id. The Special Master declined to order Papst to pursue its contractual rights through lawsuits in Germany. See id. The Special Master did, however, recommend that Papst be ordered to "take all appropriate steps to compel each of the eleven German witnesses identified in Minebea's motion to appear for deposition in this action," and required Papst to report to the Special Master the steps taken and progress made. Id. at 4. The request for sanctions was deferred. Papst objected to the Special Master's ruling.

The Special Master then issued Report and Recommendation No. 13. The Special Master noted that Papst continued to maintain that under the Federal Rules of Civil Procedure it had no obligation to produce the witnesses in question, that the assignments in the record did not create a benefit by which Minebea could compel depositions, and that Minebea must proceed by way of the Hague Convention. See R&R 13 at 2-3. The Special Master stated that unless Papst filed suit in a German court to enforce the inventors' assignment agreements, Papst could not be said to have taken all appropriate steps to comply with Report and Recommendation No. 11. See id. at 6. The Special Master also noted that it was unclear what obligation Dr. Schaetzle had to Papst Licensing, but the Special Master suggested that Papst be ordered to take all steps available to produce him for deposition and that Papst produce any documents referring to Dr. Schaetzle's duties and responsibilities at Papst Motoren and the terms of his employment. See id. at 8.

The Special Master also suggested in Report and Recommendation No. 13 that Dr. Koenig's refusal to appear for deposition was based upon Papst's refusal to release him from his duty of secrecy. See R&R 13 at 10. The Special Master recommended that Papst be ordered

to provide Dr. Koenig with such a release as well as produce any documents referring to Dr. Koenig's duties and responsibilities at Papst Motoren and/or Papst Licensing and any terms of his engagement by either. See id. Finally, the Special Master explained that the record gave him no basis for determining whether Messrs. Herrman and Lenz have any obligation to testify at Papst Licensing's request, but the Special Master did order that Papst be directed to produce any documents referring to their duties and responsibilities at Papst Motoren and/or Papst Licensing and any terms of employment by either. See id. at 11. The Special Master ordered Papst to submit monthly reports as to the status of its endeavors to produce the witnesses in question. Papst objected to the Special Master's ruling.

In accordance with R&R 13, Papst began submitting status reports to the Special Master and the Court in connection with its efforts to produce these witnesses for deposition. The first status report indicated that Papst was investigating the available courses of action for bringing suit against the inventors in Germany to obtain their testimony. See Papst's Status Report Concerning German Witnesses at 2. Papst also indicated that it was reviewing Dr. Schaetzle's contractual obligations to Papst Motoren and the duty of secrecy asserted by Dr. Koenig. See id. at 3. Papst's second status report, submitted June 1, 2004, indicated that Dr. Schaetzle owed a duty of secrecy to Papst Motoren and that ebm-papst St. Georgen was the successor to Papst Motoren. See Second Status Report Concerning German Witnesses at 1. The Report also indicated that Dr. Koenig has a duty of secrecy to ebm-papst St. Georgen. See id. Papst's third status report argued that the inventors were compelled by statute to execute the assignment agreements in question and that they therefore did not "volunteer" to testify by signing the assignment agreements. See Third Status Report Concerning German Witnesses at 1. The fourth and fifth status reports indicated only that Papst awaited the Court's decision on

4

R&R 11 and R&R 13.  See Fourth Status Report Concerning German Witnesses; Fifth Status Report Concerning German Witnesses.

    The Special Master then submitted Report and Recommendation No. 18 in preparation for the September 2, 2004 status conference before the Court and in response to Minebea's request that certain facts be treated as established as a sanction for Papst's failure to produce these witnesses for deposition.  See R&R 18 at 1.  The Special Master noted that Papst representatives and counsel had had numerous oral and written communications with the German witnesses and that these communications were revealed for the first time in Papst's July 28, 2004 report to the Special Master, even though the communications had been on-going since October 2003.  See id. at 4.  The Special Master noted that while Papst's conduct might warrant imposing on Papst the entire cost to all parties of going forward with proceedings in Germany, he had reservations about the sanctions Minebea had proposed.  See id. at 5.  The Special Master recommended that the Court instruct the Special Master whether he should consider and report further as to (1) the propriety of the inferences sought by Minebea, and (2) the propriety of compelling Papst to bear all parties' costs of the proceedings in Germany pursuant to the Letters of Request.  See id. at 6.

    The Special Master then submitted Report and Recommendation No. 19, which explained that it came to the Special Master's attention in an emergency telephone conference on September 5, 2004 that counsel for Papst had been arranging for meetings between Mr. Schnayer and each of the witnesses in Germany.  See R&R 19 at 2.  The purpose of the meetings was to prepare the witnesses to give testimony pursuant to the Hague Convention.  See id.  Mr. Schnayer anticipated that the witnesses would retain Mr. Schayer as their counsel and that Papst would pay the fees incurred.  See id.  The Special Master noted that Papst had failed to bring this

information to the Court's attention. See id. The Special Master also suggested that Papst's counsel had set up a "real possibility for a conflict of interest." See id. The Special Master concluded that Papst's behavior "has gone a long way toward providing additional persuasive evidence" that the Papst defendants have control over the witnesses in question. The Special Master was prepared to recommend sanctions should Papst fail to produce the witnesses. See id. at 3.

The Special Master then filed a supplement to Report and Recommendation No. 19. The Special Master explained that Mr. Schnayer had met with all of the potential German witnesses and was representing at least six of them – five of the inventors and Mr. Lenz – and that Papst was to pay the fees for the representation of those witnesses. See R&R 19S at 2.[2] Dr. Koening, Dr. Schaetzle and Mr. Elsaesser were to be represented by counsel selected by Papst Motoren, and Papst Motoren was to pay the fees. The arrangements with respect to Mr. Hermann had yet to be made. See id. Mr. Schnayer was reported to have urged each witness to appear voluntarily in the United States. See id. The Special Master opined that because Papst's lawyers were serving as counsel for six of the witnesses, Papst clearly was in a position to produce those six witnesses. See id. at 6. The Special Master further recommended that Papst could, through Papst Motoren, produce Dr. Koenig, Dr. Schaetzle and Mr. Elsaesser. See id. The Special Master recommended that if Papst failed to produce the witnesses for deposition in

---

[2]   Although there were originally eleven witnesses referenced, the Special Master indicated that as of the issuance of R&R 19S, the number seemed to have dropped to ten. See R&R 19S at 2 n.1. One of the inventors is apparently no longer at issue. Papst notes in its response to R&R 19S that it is paying for the representation of five of the inventors: Messers. Schuh, Von der Heide, Koletzki, Cap and Dr. Muller, but that Mr. Lenz has accepted representation from Papst Motoren. Papst explains that the inventors are expected to retain German counsel for whom Papst will pay. Obj 19S at 15.

the United States, that Papst bear all the costs of the Hague proceedings in Germany.  See id. at 10.

Papst's sixth status report indicated that counsel for Papst had met with each of the German witnesses and urged them to appear in the United States.  See Sixth Status Report Concerning German Witnesses at 2.  Papst also indicated that Messers. Schuh, von der Heide, Koletzki, Muller, Cap and Lenz had retained Papst's counsel to represent them.  Id.  Papst's seventh status report indicated that it would take no further action absent the Court's ruling on its various objections.  See Seventh Status Report Concerning German Witnesses at 1.

Finally, the Special Master issued Report and Recommendation No. 23 which concluded that "Papst's counsel's conduct as evidenced in the recent correspondence . . . reinforces my opinion that Papst's repeated exercise of its unilateral control over each of the German witnesses . . . demonstrates that Papst is in a position to produce each of the German witnesses in this District for a deposition in this action."  R&R 23 at 6.  The Special Master concluded that the Hague proceedings should go forward and recommended that resolution of who should bear the costs of the Hague Convention proceedings should await the outcome of those proceedings at the time of the determination of the admissibility of the Hague Convention evidence.  See id. at 7.

Papst's eighth through eleventh status reports document which examinations had been completed under the Hague Convention.  The most recent status report submitted by Papst indicated that, as of the end of April, the Hague Convention examinations had been completed for all of the German Witnesses.  See Twelfth Status Report Concerning German Witnesses at 1.

II. DISCUSSION

These reports and recommendations were originally issued in connection with Minebea's attempts to depose the witnesses in question. Since that time, testimony has been obtained from all of the witnesses through the German courts under the auspices of the Hague Convention. Minebea continues to maintain that all of these witnesses are under the "control" of Papst and that the evidence obtained through the Hague convention is insufficient. Counsel for Minebea explained in open court that the German court provides only an official summary of the testimony and that the unofficial "transcript" is a result of handwritten notes. Minebea contends that Papst should be ordered to produce the witnesses for live testimony at trial and that adverse inferences should be drawn if Papst fails to do so.

Papst indicates that it "attempted to obtain voluntary appearances from the proposed deponents." See Defendants' Objections to Report and Recommendation No. 11 at 1. Papst says that the letters sent to the German witnesses notified them of their "contractual obligations to give testimony (where applicable)" and requested that they appear voluntarily, either in Germany or in the United States. See id. All of the witnesses declined to appear voluntarily for United States style depositions. See id. at 2. Papst continues to argue that it was under no obligation to produce these witnesses for deposition and similarly has no obligation to produce them for trial.

The Court had hoped that approving the letters rogatory and permitting testimony to be taken through the Hauge Convention, though an unwieldy process, would obviate the need

for the Court to rule on the issue of Papst's "control" of these witnesses. Because this is not the case, however, the Court will resolve the question now.[3]

### A. The Parties' Arguments

Papst maintains that the witnesses in question are not officers, directors or managing agents of the defendants and that Papst has no obligation to produce ordinary employees under Rule 30 of the Federal Rules of Civil Procedure. See Defendant's Objections to R&R 11 ("Obj. 11") at 4-6.[4] Papst clarified in its objections to R&R 13 that Papst Motoren, although it shares the name "Papst" with the defendant in this case, is not a predecessor in interest to Papst Licensing. Rather, it has been owned since 1992 by non-party EBM. See Defendants' Objections to R&R 13 ("Obj. 13") at 3. Papst maintains that even if it does have some "control" over the witnesses, it has no obligation to exercise that control. Obj. 11 at 7. Although the Special Master has recommended ordering Papst to pursue lawsuits in Germany, if necessary, to produce these witnesses, Papst argues that it is highly unlikely that a government which has "gone to great lengths to protect its citizens' constitutional rights against the compulsory taking of evidence by private parties," would order its citizens to attend depositions in the United States. Id. at 17. Papst repeatedly argues that it should not be sanctioned for refusing to violate international law. See id.

---

[3] Minebea has also filed a motion for monetary sanctions in connection with Papst's behavior in connection with these witnesses. The Court will resolve the question of monetary sanctions at a later point in time.

[4] Minebea notes that none of the cases cited by Papst for the proposition that proposed deponents who are not managing agents, officers or directors must be deposed through the Hague Convention involved individuals who have a contractual obligation to testify. Opp. 13 at 10.

With respect to the inventors, Papst argues that the assignment agreements between Papst Motoren and the inventors does not create any obligation for the inventors to appear as witnesses for Minebea. See Obj. 11 at 9. Papst also argues that at least some of the inventors were at one time employees of plaintiff PMDM and that they therefore they should be considered at least equally available, if not more available, to plaintiffs. See Rep. 13 at 11. Specifically, Papst argues that Johann von der Heide was an employee of PMDM from 1993 until "some years after" this lawsuit was filed in 1997. Id. Papst thus argues that plaintiffs should be able to directly compel his testimony. See id. With respect to the remainder of the witnesses, Papst explains that Dr. Koenig owes a duty of secrecy to Papst Motoren and that Messers. Hermann and Lenz and Dr. Schaetzle are all former employees of Papst Motoren. Obj. 13 at 5. Papst maintains that it therefore has no control of these witnesses.

Minebea responds that each of the witnesses has assumed contractual and post-contractual obligations that require him to testify at Papst's behest. See Minebea's Memorandum of Points and Authorities in Opposition to Papst's Objections to Report and Recommendation No. 11 ("Opp. 11") at 2. Minebea argues with respect to the inventors that Papst is the successor in interest to patents for which the assignment agreement from the inventor to Papst Motoren expressly obligated the inventor to testify at the request of Papst Motoren, its successors and assigns. See id. at 11. With respect to the remainder of the witnesses, Minebea argues that Papst Motoren has control over its current and former employees because German law recognizes "post contractual duties" by which contracts contain implied legal obligations which extend beyond the termination date of an agreement. Id. at 9. Because Papst Motoren is contractually obligated to assist Papst to enforce its patent rights, Minebea maintains that Papst Motoren must provide the witnesses in question. See id. at 9-10. Minebea

argues that Dr. Schaetzle, as former managing director of Papst Motoren, and Messrs. Hermann and Lenz, as former employees of Papst Motoren, have a post-contractual duty of allegiance to Papst Motoren. See id. at 16, 19. Likewise, Minebea argues that under German procedural rules an attorney must appear as a witness if called upon by a former client and Dr. Koenig was an attorney for Papst Motoren. See id.

Minebea maintains that ordering Papst to enforce voluntarily entered into contractual obligation is not the type of "compulsion" which is prohibited by the Hague Convention. See Opp. 13 at 3. With respect to Papst's argument that a German court is unlikely to order the witnesses to appear, Minebea responds, citing its expert's opinion, that the German court is actually quite likely to require the parties to comply with their contractual obligations. Opp. 13. Minebea continues to argue that Papst's failure to produce these witnesses should result in adverse inferences being drawn.[5]

### B. Conclusions

Minebea does not dispute that Dr. Koenig, Dr. Schaetzle, and Messers. Hermann and Lenz are not now, and never have been, employees of any defendant. They are former employees, or, in the case of Dr. Koenig, formerly served as an attorney to, Papst Motoren. Rather, Minebea maintains that Papst Motoren has control over these witnesses under the German law concept of "post-contractual duties." Minebea then relies on the fact that Papst Motoren expressly agreed

---

[5] Minebea's opposition to Papst's objections to R&R 11 details what adverse inferences Minebea believes should be drawn with respect to each of the witnesses in question. See Opp. 11 at 27-35.

> to render such assistance to Assignee as may be necessary to
> perfect the title to the Papst-Motoren Patent Rights in said
> Assignee, its successors and assigns, to enable Assignee to
> prosecute all . . . applications, and to enable Assignee to obtain and
> enforce proper patent protection for the Papst-Motoren Patent
> Rights,

id., Exh. 7 at 3, to draw the conclusion that Papst Motoren is under an obligation to Papst to enforce what post-contractual duties may exist to produce these witnesses for testimony in this trial. Minebea's arguments are too tenuous to persuade the Court to order the appearance of these non-citizen, non-employee witnesses. The Court is not satisfied that Papst is in a position to compel, either directly or indirectly, the appearance of these witnesses. Even the Special Master, at various times, indicated his concern that it was unclear what obligation these witnesses have to testify on the behalf of any defendant. Papst will not be sanctioned for its failure to produce at deposition or at trial Dr. Koenig, Dr. Schaetzle, and Messers. Hermann and Lenz.

With respect to the inventors, however, the Court is persuaded that Papst has the ability to compel them to appear for testimony at trial and should have had the ability to make them available in the United States for deposition testimony. The inventors had all executed written assignment agreements with Papst Motoren which contained express agreements to provide testimony at the request of Papst Motoren and its successors and assigns. Messers. Cap, Elsaesser and Koletzki signed assignment agreements containing the following language:

> And I/We hereby further covenant and agree that I/We will,
> without further consideration, communicate with assignee, its
> successors and assigns, any facts known to me/us respecting this
> invention <u>and testify in any legal proceeding</u>, sign all lawful papers
> when called upon to do so, execute and deliver all papers that may
> be necessary or desirable to perfect the title to this invention in
> said assignee, its successors and assigns, execute all divisional,
> continuation, and reissue applications, make all rightful oaths and

> generally do everything possible to aid assignee, its successors and assigns, to obtain and enforce proper patent protection for this invention in the United States, it being understood that any expense incident to the execution of such papers shall be borne by the assignee, its successors and assigns.

Minebea's Opposition to Papst's Objections to Report and Recommendation No. 11, Exh. 5 (emphasis added). Similarly, Messers. Von der Heide, Schuh and Muller signed assignment agreements containing the following language:

> And we further covenant and agree, in consideration of the premises that we, our executors and administrators, will at any time, upon request, communicate to the said Papst-Motoren KG, its successors and assigns, any facts relating to the said invention and the history thereof, known to us or to our executors and administrators, and that we will testify as to the same in any interference or other litigation when requested so to do by the said Papst-Motoren KG, its successors and assigns.

Id., Exh. 6 (emphasis added). Papst Motoren assigned rights under these patents to Papst, who thus became the beneficiary of the written assignment agreements between the inventors and Papst Motoren. The inventors are thus obligated to provide testimony at the request of Papst.[6]

---

[6] The Special Master also concluded, and Minebea continues to urge, that Papst's provision of counsel to the inventors in connection with their Hague Convention testimony, is a further example of Papst's ability to control these witnesses. Papst steadfastly maintains that an attorney does not control his client. See Papst's Objections to Supplement to Special Master's Report and Recommendation No. 19 Concerning the German Witnesses ("Obj. 19S") at 10. It appears that, in the end, counsel for Papst may not have directly represented some or all of these witnesses in the Hague Convention proceedings, but rather that independent counsel was paid for by Papst. Minebea notes that two of the witnesses had agreed to appear for a U.S. style deposition, but changed their minds after their retention of separate counsel paid for by Papst. See Minebea's Opposition to Papst's Objections to the Supplement to Special Master's Report and Recommendation No. 19S ("Opp. 19S") at 3. While the Court is troubled by the potential conflicts raised by Papst's provision of Mr. Schnayer as counsel to these witnesses at any point and, to a lesser extent, by the selection and payment by Papst or its counsel of other lawyers unaffiliated with Mr. Schnayer to act as counsel for the witnesses, the question ultimately is whether the advice provided by these other lawyers was truly "independent" or not. Because the Court finds that the language of the assignment agreements is dispositive with respect to Papst's ability to produce the inventors for testimony at trial, however, the Court finds it unnecessary to explicitly address this concern.

Papst argues that, even if it is the beneficiary of the assignment agreements, the agreements do not create a benefit by which a third party, Minebea, can demand testimony from the inventors. Papst maintains that the agreements are only meant to benefit Papst Motoren (and thus Papst itself), not a third party. The Southern District of New York, in assessing similar assignment agreements with German inventors which stated, in relevant part, "we hereby agree, whenever requested, to . . . testify in *any* legal proceedings," disagreed. It explained that "[t]he Court interprets this clause to mean that the four inventors have agreed to testify in any legal proceedings, not just those in which Bayer [the patent holder] would like them to testify." In re Nifedipine Capsule Patent Litigation, 13 U.S.P.Q.2d 1574, 1575 (S.D.N.Y. 1989). This Court agrees.

It is true that the court in In re Nifedipine gave weight to the fact that Bayer, as the plaintiff, had purposefully availed itself of courts in the United States, see id., and in this case it is the defendant, Papst, that is the patent holder. Even if the fact that the patent holder is the defendant might weigh against compelling the patent holder to enforce the assignment agreements in some cases, however, this case is unique because Papst – through the ubiquitous Mr. Schnayer who, at the time, was representing the witnesses and preparing them to testify, see R&R 19 at 2; R&R 19S at 2-4 – purportedly did "request" that the inventors appear in compliance with their agreements and they mysteriously, in violation of their contractual agreements, "declined." As the Special Master concluded:

> Given the Papst defendants' repeated failures to report completely and accurately as to their communications and their counsel's communications with the German witnesses and with the German authorities, and the Papst defendants' continued reluctance to lay out for this Court the full story of their communications and arrangements with the German witnesses since September 5, the Special Master is constrained to conclude that the communications

14

>by and on behalf of the Papst defendants have effectively
>discouraged and dissuaded all of the German witnesses from
>appearing in this District for their depositions.

R&R 19S at 8. Because the inventors are expressly required to testify at the request of Papst by written contracts, the Court cannot but conclude that Papst's "request" for the voluntary appearance of the inventor witnesses was made with a wink and a nod and that their failure to appear must be attributed to Papst. The Court concludes that Papst has willfully failed to produce these witnesses. If it continues to fail to produce them for testimony at trial, the Court will instruct the jury what adverse inferences may be drawn from Papst's failure to produce the witnesses.

Accordingly, it is hereby

ORDERED that the Special Master's Report and Recommendation 11, 13, 18, 19, 19S and 23 are ADOPTED in part and REJECTED in part; it is

FURTHER ORDERED that Papst shall take immediate steps to enforce the assignment agreements with the seven inventors to obtain such testimony as is required by the assignment agreements for trial in the United States. Should Papst fail to produce these witnesses for trial, the Court will instruct the jury as to what adverse inferences may be drawn from Papst's failure to produce the witnesses; and it is

FURTHER ORDERED that Minebea shall file, on or before June 10, 2005, a report containing the adverse inferences it requests that the Court draw with respect to each of these six inventors.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
DATE: June 6, 2005                     United States District Judge