UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MINEBEA CO., LTD., et al.,                )
                                          )
            Plaintiffs,                   )
                                          )
      v.                                  )      Civil Action No. 97-0590 (PLF)
                                          )
GEORG PAPST, et al.,                      )
                                          )
            Defendants.                   )
_____ )

MEMORANDUM OPINION AND ORDER

         This matter is before the Court on Papst's Objections to the Special Master's

Report and Recommendation No. 29.  Upon consideration of Report and Recommendation No.

29, Papst's objections, Minebea's opposition, and Papst's reply, the Court concludes that the

Special Master's Report and Recommendation must be adopted in part and rejected in part.

         The Special Master's ultimate recommendation in Report and Recommendation

No. 29 is once again that Papst be ordered to produce all of its withheld documents to Minebea

because of its wrongful withholding and inadequate privilege log.  While the Court understands

the Special Master's frustration, it will not order this extreme remedy.  The Court will, however,

for the last time, clarify the definition of privilege in this Circuit and will order Papst to comply

with this Memorandum Opinion and Order.  The Court notes that subsequent to the Special

Master's Report and Recommendation and subsequent to filing its own objections, Papst has

produced substantially more documents to Minebea.

### A.  Attorney-Client Privilege and Work Product Privilege

The D.C. Circuit has explained that:

> The [attorney-client] privilege applies only if (1) the asserted
> holder of the privilege is or sought to become a client; (2) the
> person to whom the communication was made (a) is a member of
> the bar of a court or his subordinate and (b) in connection with this
> communication is acting as a lawyer; (3) the communication relates
> to a fact of which the attorney was informed (a) by his client
> (b) without the presence of strangers (c) for the purpose of securing
> primarily either (i) an opinion on law or (ii) legal services or
> (iii) assistance in some legal proceeding, and not (d) for the
> purpose of committing a crime or tort; and (4) the privilege has
> been (a) claimed and (b) not waived by the client.

In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting United States v. United Shoe

Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950).  It has further explained that

"[c]ommunications from attorney to client are shielded if they rest on confidential information

obtained from the client."  Id. at 99.  It thus follows that "when an attorney conveys to his client

facts acquired from other persons or sources, those facts are not privilege."  Id.  Because the

purposes of the attorney-client privilege is to promote a "free and open discussion between the

client and the attorney in seeking or giving legal advice, the privilege should protect only the

client's communications to the attorney (and so much of the attorney's communications to the

client that might tend to reveal a client communication) and not facts or other information

contained in the communication."  In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 389

(D.D.C. 1978).  "It is not necessary that the information be confidential," but rather

"[c]ommunications must be made with the intention of confidentiality and the attorney's

communications must be ones that were considered confidential by the client and would

indirectly or directly reveal a confidential client communication."  Id.

Papst's objections state inconsistent standards for the attorney-client privilege. While it states the standard properly on page 7 of its objections, when it is discussing specific communications from attorney to client, Papst elsewhere suggests that so long as the communication is made in confidence, it is privileged.  See, e.g., Objections at 11.  The problem is that the word "confidential" is being used in far too many contexts.  The holding in In re Sealed Case could not have been clearer.  A communication from attorney to client must not only be made "in confidence" for the purpose of transmitting legal advice, but it must also "rest on confidential information obtained from the client."  Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 618 (D.C. Cir. 1997) (emphasis added).  This does not require that the "confidential information" obtained from the client is, for example, trade secret or other "secret" information.  Rather it requires that the communication from attorney to client rest on a previous communication made by the client "in confidence" that would be directly or indirectly revealed were the communication from attorney to client made public.

While the Court does believe that the Special Master may have applied too stringent a standard with respect to what qualified as "confidential information," it is clear from Papst's objections that in many cases Papst failed to consider whether the communication from the attorney to the client "rest[ed] on confidential information obtained from the client" and looked only to see whether the communication from the attorney to the client was made "in confidence" for the purpose of obtaining legal advice.  That is sufficient for communications from client to attorney, but not from attorney to client.

Papst provided the Court with five in camera examples of documents with respect to which Papst claimed that the Special Master applied the wrong test of confidentiality in his

3

attorney-client privilege analysis.  Papst's reply, however, indicated that two of these documents have now been produced as non-privileged.  The remaining documents are discussed below:

- **PLP 0012108.**  This is a letter to Papst Motoren from Michael J. Striker, Esq.  Papst maintains that it "provides legal advice about how the attorneys have addressed the client's concern re: the subject matter disclosed and referred to in the [patent] application."  Privilege Log Entry for PLP 0012108-09.  This letter appears to be in response to a telex from Papst.  It is thus fair to say that the advice contained within indirectly reveals a confidential client communication.  This document was properly withheld.

- **PLP 0005061.**  This is a letter to Mr. Burford, Esq. from Hans Dieter Papst.  Mr. Papst is responding to various questions apparently posed by his counsel in connection with a U.K. patent application.  This is a communication from a client to his attorney, and does appear to have been made "in confidence" for the purpose of obtaining "legal services." This document was properly withheld.

- **PLP 0012898.**  This is a letter to Hans Dieter Papst from Phillip Watt, Esq.  The letter does, as Papst's log indicates, "opine[] on how the client should respond to an office action for the patent application and why the client should respond that way."  Papst argues that the Special Master improperly found that the letter was not privileged because it is clear that the letter was sent "in confidence."  As the Court stated above, this is not the entire test for attorney-client privilege with respect to communications from attorney to client.  The communication must also rest on confidential information received from the client.  The letter is offering suggestions with respect to a patent application which appear to be based entirely on information which was already submitted in a patent application, and thus is not confidential.  This letter does not, therefore, rest on any previous confidential client communications.  The document must be produced.

Because it is entirely unclear to the Court which documents described by the Special Master – and, for that matter, by Papst in its Objections – are still being withheld, the Court will not perform a document-by-document analysis.  In any case, the Court has only been provided with five documents.  Papst is directed, however, to review its withheld documents and immediately produce any communications from attorney to client that were withheld merely

because they were communications made "in confidence" from attorney to client.  If the communications do not "rest on" previous confidential communications from the client, they must be produced immediately.

### B.  Privilege Log Entries

Papst also objects to the Special Master's repeated criticism of Papst's privilege log entries which fail to state that the document being described is a "confidential communication."  While the Court agrees with Papst that generic rubrics are unnecessary, Papst's repeated assertion that "there were no other recipients" does not necessarily correspond to an assertion that the communication was "confidential" and never revealed to a third party.  The specific names of all recipients and identifying information about them (including those who were cc'd or bcc'd) must be included in a privilege log.  Assuming this rule has been applied to these documents, and that Papst's representation that "there were no other recipients" meant that the communication was never shared with any other person or entity, the Court will accept Papst's representation.  To the extent that Papst's privilege log entries failed to reflect the requirement that a communication from attorney to client rests on a previous confidential communication from the client, the Court's view is discussed in Part A, above.

### C.  Tolling Agreements

As the parties should by now be well aware, the attorney work product rule "protects from disclosure any material prepared by or for a party or its attorney or by or for a party's representative in anticipation of litigation."  Hertzberg v. Veneman, 273 F. Supp. 2d 67, 75 (D.D.C. 2003).  "While litigation need not be imminent or certain in order to satisfy the

anticipation-of-litigation prong of the test, this circuit has held that 'at the very least some

articulable claim, likely to lead to litigation, must have arisen,' such that litigation was 'fairly

foreseeable at the time' the materials were prepared." Id.  Courts thus have refused to find that

"threatening" letters indicate that litigation is anticipated where the purpose of the letter appears

to be to persuade the other party to negotiate a solution to the disagreement.  See Binks

Manufacturing Co. v. National Presto Industries, Inc, 709 F.2d 1109, 1120 (7th Cir. 1983)

("Although the tone of [defendant's] letter is more threatening . . . it still falls short of stating that

[defendant] intended to institute litigation . . . .  Rather the letter clearly states that [defendant]

still intended to persuade [plaintiff] to correct the problem in the System and, falling short of

that, to withhold full payment of the purchase price of the System.").

        Papst has submitted a copy of its Tolling Agreement with Western Digital in

support of its argument that documents can be created "in anticipation of litigation" during the

pendency of a tolling agreement.  In the case of Western Digital, Papst had filed a lawsuit, but it

was dismissed without prejudice once the tolling agreement was entered.  The Court does not

believe that parties are still "anticipating litigation" once they dismiss a lawsuit – or where a

lawsuit has never been filed – and enter into a tolling agreement in a serious, good faith effort to

negotiate a patent license.  This is particularly true in a case such as this where the purpose of the

threat of litigation in the first place is to encourage the development of a licensing relationship.

The Court therefore is unpersuaded that attorney work product survives a tolling agreement

because the documents at issue are no longer created for litigation purposes; rather, they are

produced to facilitate a business relationship.  This is true even if the parties eventually end up in

litigation because the negotiations fail.  In such a situation, there is clearly a point at which the

parties once again begin "anticipating litigation" as the relationship decays.  At that point, even if

the tolling agreement is still in place, it would be appropriate to withhold documents on the basis

of attorney work product.  For these reasons, the Court agrees with the Special Master that

documents created during the pendency of a tolling agreement are generally not created "in

anticipation of litigation" and must be produced.

### D.  Need for Work Product

Minebea also maintained that it has demonstrated a need for Papst's opinion and

fact work product due to Papst's "stonewalling" during discovery.  From the Court's perspective,

neither party has acted particularly professionally during the course of discovery.  The Court does

not find that Minebea has demonstrated a need for Papst's work product on this basis.

Accordingly, it is hereby

ORDERED that the Special Master's Report and Recommendation No. 29 is

ACCEPTED in part and REJECTED in part; it is

FURTHER ORDERED that Papst must immediately produce any

communications from attorney to client withheld under the attorney-client privilege which do not

"rest on" previous confidential communications from client to attorney; and it is

FURTHER ORDERED that Papst must immediately produce documents currently

withheld under the attorney work product rule that were created during the pendency of a tolling

agreement and thus during the course of business negotiations rather than in anticipation of

litigation.

        SO ORDERED.


                                        _____

                                        PAUL L. FRIEDMAN
                                        United States District Judge

DATE: