UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
MINEBEA CO., LTD., <u>et al.</u>,                    )
                                                  )
            Plaintiffs,                           )
                                                  )
      v.                                          )        Civil Action No. 97-0590 (PLF)
                                                  )
GEORG PAPST, <u>et al.</u>,                          )
                                                  )
            Defendants.                           )
_____           )

<u>OPINION</u>

Rule 702 of the Federal Rules of Evidence effectively codifies the Supreme

Court's decisions in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and

<u>Kumho Tire Co. V. Carmichael</u>, 526 U.S. 137 (1999).  In <u>Daubert</u>, the Court charged trial judges

with the responsibility of acting as "gatekeepers" to shield unreliable or irrelevant expert

testimony and evidence from the jury.  In <u>Kumho</u> the Court made clear that the gatekeeper

function applies to all expert testimony, not just scientifically-based testimony.  Rule 702

therefore provides that if the Court finds that scientific, technical or other specialized knowledge

"will assist the trier of fact to understand the evidence or to determine a fact in issue," and if the

Court finds that the witness is qualified as an expert "by knowledge, skill, experience, training,

or education," then the Court may permit the witness to testify -- so long as the witness'

testimony is based on "sufficient facts or data," the testimony "is the product of reliable

principles and methods," and the witness has "applied the principles and methodology reliably to

the facts of the case.  FED. R. CIV. P. 702.

As the D.C. Circuit has explained, the twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance.  See Ambrosini v. LaBarraque, 101 F.3d 129, 133 (D.C. Cir. 1996); see also McReynolds v. Sodexho, 349 F. Supp. 2d 30, 34-35 (D.D.C. 2004); Groobert v. Georgetown College, 219 F. Supp. 2d 1, 6 (D.D.C. 2002).  With respect to realiability, the Court's focus must be on the methodology or reasoning employed by application of the factors in Rule 702 and the non-exhaustive lists of factors set forth in Daubert and Kumho.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 595 (the "focus, of course, must be solely on principles and methodology, not on the conclusions they generate"); Ambrosini v. LaBarraque, 101 F.3d at 140 ("the admissibility inquiry focuses not on conclusions but on approaches").  With respect to relevance, the Court must determine whether the proffered testimony is sufficiently tied to the facts of the case and that it will aid the jury in resolving a factual dispute.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 592-93.

In this case, plaintiffs have proffered nine experts and defendants have proffered five.  Their areas of expertise vary widely.  Some are experts on the technology at issue; others on patent law and licensing; others on damages; others on Japanese culture and negotiations; and still others on legal ethics.  The Court has considered the expert reports and supplemental reports of each expert; a written summary of the methodology, opinions and conclusions of each; and briefs (sometimes in the form of objections or motions in limine and oppositions thereto) with respect to why the proponent believes the testimony should be admitted and why the opponent believes it should be excluded.  Over the course of three days, the Court heard live testimony from each of the fourteen experts.  The Court's rulings follow:

*A. Legal Ethics Experts*

Minebea has proffered the testimony of Steven Lubet, a Professor of Law and Director of the Program on Advocacy and Professionalism at the Northwestern University School of Law in Chicago. Professor Lubet, in a lengthy written report, has offered opinions concerning the activities of certain attorneys for Papst including Jerold Schnayer and Richard Smith and has concluded that both lawyers violated Rule 4.2 of the Rules of Professional Conduct by dealing directly with a represented party, namely Minebea, and improperly circumventing that party's lawyers. Professor Lubet pointed to at least seven incidents where Mr. Schnayer or Mr. Smith violated rule 4.2.[1]

Although Papst believes Professor Lubet's testimony is irrelevant and should be excluded, in the event the Court admits it Papst proposes to rebut Professor Lubet with the testimony of Geoffrey Hazard, Trustee Professor of Law at the University of Pennsylvania School of Law in Philadelphia. Professor Hazard prepared an expert report and testified that in his opinion there were no violations of Rule 4.2 by Mr. Schnayer or Mr. Smith. Alternatively, if there were violations, they were technical or minor in nature and, in the context of this civil litigation, they are not material because they had no adverse effect on the relationship between Papst and Minebea.

There is no question about the knowledge, skill, and experience of Professor Lubet or Professor Hazard. They are pre-eminent in their field and are recognized experts in legal ethics. The Court also has no question about their methodology or reasoning. The Court agrees with Papst, however, that the testimony of neither is relevant to the issues to be tried

---

[1]     Mr. Schnayer is bound by the Illinois Rule and Mr. Smith by the D.C. Rule. Professor Lubet testified that the differences were insignificant for these purposes.

3

before the jury in this case.  Professor Lubet's testimony seeks to raise collateral ethics issues

that are peripheral and irrelevant to the issues to be decided.  The jury trial before this Court is

not the appropriate venue in which to raise Minebea's ethical concerns about the conduct of Mr.

Schnayer or Mr. Smith.  The Court, therefore, grants Papst's motion in limine to exclude the

testimony of Professor Lubet.  Without Professor Lubet's testimony, there is no need for the

rebuttal testimony of Professor Hazard and the Court therefore will exclude his testimony as

well.

### B.  Japanese Culture and Negotiation Experts

Papst has proffered Thomas C. Dodd, the President of IP Options, Inc., an

intellectual property consulting company who has extensive experience in negotiating patent

licenses with Japanese businesses.  He is proffered as an expert on Japanese business practices

and negotiations between Japanese parties and Westerners.  In his opinion, Minebea's legal

expertise and support are greater than that typically found in a Japanese company.  Based upon

his opinions and observations on these matters and on negotiating patent licenses more

generally, and on the documents he reviewed, Mr. Dodd proposes to testify that Minebea did not

in fact rely on Papst because Minebea's actions are consistent with a Japanese company

conducting an arm's-length patent negotiation with a Western company.

To counter Mr. Dodd, Minebea proposes the testimony of Rochelle Kopp, a

Managing Principal at Japan Intercultural Consulting, who is a professional business consultant

specializing in Japanese culture.  She is offered as an expert witness to testify with respect to

internal decision-making and interpersonal relations within Japanese companies and the manner

in which Japanese executives interact with and negotiate with others in business settings.  Based

on her knowledge of Japanese business practices and culture and her understanding of the facts

of this case.  Ms. Kopp is of the opinion that Minebea relied on Papst and that such reliance was

reasonable.  To avoid impinging on ultimate questions for the jury, however, Minebea proposes

to limit Ms. Kopp's testimony to the explanation of the elements of Japanese culture and

business practices that would have influenced Minebea's actions and that are evidenced in the

testimony of the witnesses and the documents that have been produced in this case.  In addition

to Ms. Kopp, Minebea offers the testimony of Edward Fiorito (discussed *infra)*[2] on negotiating

patent license agreements between Japanese and non-Japanese parties.

       The Court concludes that, while Mr. Dodd has extensive experience in

negotiating with Japanese companies and Ms. Kopp is eminently qualified in the area of

Japanese culture, their testimony will not assist the jury in understanding the evidence any better

than would the testimony of lay witnesses who actively participated in the negotiations at issue.

Indeed, because the testimony of both rely on so many materials and experiences not directly

related to this case, their testimony likely would tend to confuse rather than edify.  Finally, the

proffered testimony comes so close to an ultimate issue in the case -- namely, reliance -- that the

Court will exclude it.  For similar reasons, Mr. Fiorito's testimony on license negotiations

between Japanese and Western parties is likewise excluded.

### C.  Damages Experts

       Minebea  offers four experts on the issue of damages: Edward Fiorito, Thomas

Gardner, Jerry Hausman, and James Malackowski.  Papst offers two experts on the issue of

damages: Bruce Dubinsky and Chera Sayers.

---

[2]     Mr. Fiorito's background is discussed in full in a later portion of this Opinion.

1. Edward Fiorito

Edward Fiorito is a patent lawyer with extensive experience in patent disputes and patent licensing.  Minebea has offered to provide Mr. Fiorito's testimony on the calculation of a reasonable royalty.  His testimony is based on his experience and by applying the fifteen factors set forth in Georgia-Pacific Corp. v. United States Plywood, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Despite the fact that Mr. Fiorito is an experienced patent and licensing attorney, the Court will not allow him to testify as to the calculation of a reasonable royalty because it is unclear what facts or data he has relied upon and his methodology is unreliable.  Mr. Fiorito's application of the Georgia Pacific factors in order to arrive at the royalty rate of $1 per motor has at least the following flaws in data and methodology: Mr. Fiorito's analysis does not offer any mathematical computations leading to his $1 royalty; he does not compare lump sum license payments to running royalty rates; he does not take into account whether market conditions over the 1990, 1993 and 1995 time periods would (or could) affect the royalty that HDD[3] manufacturers would be willing to pay to Papst; and he did not do a detailed per patent analysis for each license agreement he considered.  As the Court inquired during the Daubert hearing: Where did the $1 figure come from?  And why did $3, for example, just "feel too high" to Mr. Fiorito under Georgia Pacific?  The Court finds Mr. Fiorito's proposed testimony to be too speculative to satisfy the reliability threshold of Rule 702 since such testimony would invite conjecture and confusion rather than assist the jury in determining a reasonable royalty rate.

---

[3]      HDD stands for hard disk drives.

6

### 2.  Thomas Gardner

Thomas Gardner is a HDD industry consultant familiar with all aspects of the HDD industry including, without limitation, engineering, marketing, and operations.  Minebea offers Mr. Gardner to provide testimony on the HDD market, submarkets, products and technologies; the HDD spindle motor market, submarkets and products; Minebea's and Nidec's market share of the worldwide HDD spindle motor market; the significance of the U.S. HDD market; the business implications of Papst's royalty demands on Minebea's customers; supply and demand in the market approach "but for" scenario; and Minebea's production capabilities under "but for" scenarios.  Mr. Gardner's methodology includes forecasting techniques whereby he reviewed various market data sources in order to calculate the HDD and HDD spindle motor market.  Mr. Gardner has made determinations regarding the U.S. spindle motor market and Minebea's potential share in such market if Papst acknowledged Minebea's patent rights.   The Court is not persuaded by Papst's objections to Mr. Gardner's methodology and conclusions.  Mr. Gardner's testimony is appropriate for the jury's consideration under Rule 702.  Mr. Gardner is a qualified damages expert, he employed reliable methodology, and he used the data properly in order to arrive at reliable conclusions.

### 3.  Jerry Hausman

Jerry Hausman is a Professor of Economics at the Massachusetts Institute of Technology.  In addition, he has extensive experience in the computer industry and has consulted for numerous computer hardware and software companies.  Minebea offers Professor Hausman to provide testimony on (1) Papst's market power and (2) Minebea's lost profits as a result of Papst's alleged actions.

With regard to Papst's market power, Professor Hausman employs a two-step methodology. The first step is market definition and the second step is determination of whether Papst possesses market power in the defined markets. For the first step, market definition, Professor Hausman relies on the DOJ's Antitrust Guidelines for the Licensing of Intellectual Property and the hypothetical monopolist test from the Horizontal Merger Guidelines. For the second step, determination of Papst market power in the defined markets, Professor Hausman relies on the expert report of Warren Dalziel.[4]

The Court may hear testimony from Professor Hausman regarding market power. The methodology employed by Professor Hausman is reliable, his conclusions are based on sufficient facts and such testimony could, in combination with other testimony, aid the jury in determining the patent misuse issue. A patent misuse analysis involves many factors. Therefore Minebea must present adequate additional testimony to lay the proper foundation for the rest of its patent misuse claim before Professor Hausman's testimony on market power will be admitted. Standing alone it would be incomplete and not helpful to the jury.

With regard to Minebea's lost profits as a result of Papst's alleged actions, Professor Hausman provides two alternative calculation approaches. Both approaches employ Mr. Fiorito's (Minebea's excluded damages expert) royalty calculation of $1 per motor. One approach, the price premium approach, assumes Minebea does not adjust its quantity while it increases its price by $1 per motor. For his calculation, Professor Hausman determines lost profits by multiplying the $1 royalty rate by the number of motors Minebea sold during the relevant period. Professor Hausman's second approach, the combined price and quantity approach, assumes that Minebea responds to the royalty by adjusting both its price and quantity.

---

[4]     Mr. Dalziel is being offered by Minebea as a HDD technology expert.

8

For this approach, Professor Hausman applies the well-known Nash equilibrium concept.  He employs data on market shares and prices in order to structure the demand in the spindle motor industry.  Then he uses this same demand structure to calculate the equilibrium prices and market shares after the imposition of the royalty.

The Court has no doubt about Professor Hausman's qualifications or methodology.  Because the Court has already excluded Mr. Fiorito's testimony with respect to a reasonable royalty, however, Professor Hausman's analysis is rendered incomplete because there is no number to which to apply it.  Any of Professor Hausman's testimony that is based on Mr. Fiorito's reasonable royalty rate therefore must be excluded as unreliable.   In other words, since Mr. Fiorito's proffered testimony has been excluded, Professor Hausman's analysis that employs Mr. Fiorito's $1 royalty likewise must be excluded.  Furthermore, Professor Hausman's proffer of testimony on calculations based on royalty rates other than $1 is not reliable because Professor Hausman cannot himself lay a proper factual foundation for any such royalty rates used.  In sum, Professor Hausman will not be permitted to testify on lost profits unless Minebea first presents lay witness testimony with respect to royalty rates to which one of Professor Hausman's methodologies may then be applied by the jury in determining a reasonable royalty. In order for Professor Hausman's analyses to generate reliable conclusions, Minebea must first lay a foundation from which the jury can determine a reasonable royalty rate.  Otherwise, Professor Hausman's testimony will be excluded.

### 4.  James Malackowski

James Malackowski is President and Chief Executive Officer of ICMB Ocean Tomo.  He is a Certified Public Accountant with extensive experience as a management

consultant and forensic accountant with a specialty in intangible assets.  Minebea offers him to testify that Minebea has suffered damages as a result of Papst's alleged actions.  More specifically, he is offered to testify about money owed to Minebea by Papst under (1) a restitution theory and (2) two different lost profits damages theories, a Market Approach and an Accounting Approach.

In calculating restitution damages, Mr. Malackowski reviewed and analyzed the agreements between the parties and the consideration paid by Minebea to Papst for the patent rights in dispute.  For determining lost profits in his Market Approach, Mr. Malackowski determined that it was reasonable in the but-for world to base a market leadership position on Nidec's actual average experience.  Mr. Malackowski's Accounting Approach, based on the Panduit[5] factors, includes an assumption that all unlicensed units would have been sold by Minebea as the only fully licensed manufacturer of spindle motors.  Mr. Malackowski calculated lost profits for fiscal years 1991 through 2003.  He calculated future lost profits by projecting Minebea's average selling prices using a regression best fit line plot to estimate an annual decrease in selling price.

The Court is persuaded that Mr. Malackowski is highly qualified in the area of damages calculations, he has used sound methodology, and he has properly applied it to the appropriate facts in this case.  His testimony will aid the jury.

### 5.  Bruce Dubinsky

Bruce Dubinsky is a principal in the firm of Klausner Dubinsky + Associates, P.C. where he holds the position of Director of the Forensic Accounting and Dispute Analysis Department.  He holds a Masters degree in tax from Georgetown and is a CPA and a certified

---

[5]     Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152, 1156 (6th Cir. 1978).

valuation analyst.  Papst offers Mr. Dubinsky to provide testimony based on a theory of restitution damages to Minebea.  Mr. Dubinsky's restitution analysis is based on the return to Minebea of the amount of money it paid under the various agreements between the parties minus the value of intangible benefits received by Minebea from Papst.  Mr. Dubinsky also is offered to testify in rebuttal to each of Minebea's four damages witnesses:  Mr. Malackowski, Mr. Fiorito, Professor Hausman, and Mr. Gardner.  Mr. Dubinsky's rebuttal testimony will be based on his opinion that Minebea's damages experts each use flawed lost profits methodologies and that their lost profits calculations are speculative and cannot be determined with the requisite degree of certainty.

Minebea argues that Mr. Dubinsky should not be allowed to rebut Minebea's expert testimony as to lost profits because Mr. Dubinsky was not specifically tasked with performing an independent complete lost profits analysis; rather Mr. Dubinsky's proposed testimony is more in the fashion of "poking holes" at Minebea's experts' methodology.  The Court finds this method of rebutting Minebea's expert to be proper since Mr. Dubinsky is simply using his acknowledged expertise, training and knowledge to identify flaws in Minebea's damages theories.  His methodologies are reliable and have been properly applied to the facts at issue.  His testimony is clearly relevant to Minebea's damages claims, and his testimony would be helpful to aid the jury.  The Court will allow Mr. Dubinsky to testify as to the areas specified in his expert reports.  Obviously, he will not be permitted to testify in rebuttal to experts whose testimony is excluded or to those portions of their testimony that is excluded.

6.  Chera Sayers

Chera Sayers is an economist and senior consultant with the Forensic Accounting and Dispute Analysis Department of Klausner Dubinsky + Associates, P.C.  Papst offers the testimony of Dr. Sayers as rebuttal to the anticipated expert testimony of Minebea's economist, Professor Hausman.  For example, Dr. Sayers will identify areas where Professor Hausman's assumptions are at odds with the real world facts present in this action, identify critical assumptions Professor Hausman made in order to perform his "Combined Price and Quantity Approach" and identify where Professor Hausman has used market data with unknown reliability and failed to provide a degree of error for his empirical estimates.

The Court is not persuaded by Minebea's objections to Dr. Sayers' qualifications and methodology.  Dr. Sayers is a highly qualified economist, and her opinions are based on reliable methodology.  Her testimony would be of assistance to the jury in evaluating Professor Hausman's testimony regarding damages.  Since, as discussed, the Court may exclude portions of Professor Hausman's testimony, however, the Court will exclude the corresponding portions of Dr. Sayers' rebuttal testimony.

*D.  Patent Law and Licensing Experts*

Minebea  offers two experts on the issue of patent law and licensing: Martin Adelman and Melvin Jager.  Papst offers one expert on these issues, George Gerstman.

1.  Martin Adelman

Martin Adelman is a professor of intellectual property law at the George Washington University School of Law.  Prior to joining the faculty at George Washington University, Professor Adelman taught patent law for 24 years at Wayne State University.  He is

12

the author of the patent law treatise series entitled, "Patent Law Perspectives."  The Court acknowledges that Professor Adelman is a patent law expert.

Minebea offers Professor Adelman to provide testimony regarding: (1) the practices and procedures of the United States Patent and Trademark Office ("USPTO") during patent prosecution; (2) Papst's prosecution of certain patent applications and patents; and (3) the relationship between the German patents enumerated on Exhibit C to the 1990 Intangible Assets Agreement and the United States patents listed on Appendix III in the 1995 agreement and to opine that all of the United States patents listed on Appendix III are corresponding international patents to the German patents on Exhibit C.

First, Professor Adelman is offered to testify about the practices and procedures of the USPTO to examine patents prior to their grant.  It has been agreed, however, that the jury will be shown a videotape prepared by the Federal Judicial Center on the practices and procedures of the USPTO immediately after the Court's preliminary instructions.  The proffered testimony of Professor Adelman therefore is irrelevant or cumulative on this issue and will not be permitted.

Second, Professor Adelman is proffered to testify about Papst's prosecution of certain patent applications and patents.  More specifically, Professor Adelman concludes that (1) Papst converted motor claims to claims directed to a motor in combination with HDD components, and (2) Papst inserted claims directed to a motor in combination with HDD components into motor patents and patent applications.  The Court does not consider this type of testimony relevant to any issues in the case.   Specific amendments made to Papst's patent claims during prosecution before the USPTO would only be relevant to claim construction or validity issues, neither of which is being considered in this case.  To the extent that Professor

Adelman's testimony is limited to generally characterizing or discussing various claimed elements in the Papst Motor Patents or Papst Drive Patents, such testimony may aid the jury in assimilating the patent terminology and schema and will be permitted if so limited. The Court has determined that this type of testimony does not implicate a claim construction; rather, it is simply expert testimony on assimilating or reading claim elements, which is permissible.

Third, Professor Adelman is offered as an expert to provide testimony about the relationship between the German patents enumerated on Exhibit C to the 1990 Intangible Assets Agreement and the United States patents listed on Appendix III to the 1995 Agreement. Professor Adelman's opinion is that all of the United States patents listed on Appendix III are corresponding international patents to the German patents on Exhibit C. If they truly are identical ("1 to 1") corresponding patents, that fact normally would be indicated on the face of the patent, which is why, the Court assumes, Papst is willing to stipulate to the "true facts" on this matter. A review of some of Papst's U.S. patents makes it apparent, however, that the situation is more complicated. One U.S. patent, for example, claims foreign priority to one German patent but also to two Swiss patents. If Papst will stipulate and/or the documents speak for themselves, or the U.S. patent applications speak for themselves, the Court invites the parties to enter into a stipulation which would make Professor Adelman's testimony unnecessary.

Minebea has repeatedly assured the Court that no claim construction is necessary in connection with this case. Although the Court will provisionally permit Professor Adelman to testify with respect to the relationship between the German patents on Exhibit C and the U.S. patents on Appendix III, should his testimony seek to construe the claims of any of the patents in question – or should such claim construction be necessary to his methodology and conclusions – his testimony shall be stricken from the record. The Court notes that Minebea has filed a motion

14

in limine suggesting that the Court should decide whether the Appendix III patents are

"corresponding international patents" as a matter of law.[6]  Any final resolution of the question of

Professor Adelman's testimony on the subject of corresponding patents therefore must await

resolution of this motion.

Finally, in connection with Appendix III, Papst Drive Patents, neither Mr.

Gerstman nor Professor Adelman, in rebuttal, will be allowed to testify regarding the meaning of

Jepson type combination claims.  "Jepson" terminology or the meaning thereof is irrelevant to

any issues in this case because validity of the Papst Drive Patents -- that is, prior art -- is not at

issue.


2.  Melvin Jager

Melvin Jager is Managing Director of ICMB Ocean Tomo, an intellectual capital

merchant bank providing expert intellectual property services.  Prior to holding this position, Mr.

Jager was a practicing intellectual property lawyer.  He has also taught patent law courses at

various law schools.  Minebea proffers Mr. Jager to provide testimony regarding: (1) the general

purpose and objectives for licensing patents and related topics such as negotiating, drafting,

reviewing and interpreting technology licenses; (2) interpretation of the key agreements entered

into between Minebea and Papst; and (3) rebuttal to Mr. Gerstman and Mr. Dodd's patent

exhaustion testimony and rebuttal to Mr. Gerstman and Mr. Dodd's conclusions regarding

licensing and patent misuse.

---

[6]      In offering Professor Adelman to testify on this point, Minebea seems to have taken a
position inconsistent with its motion in limine in which it states that the Court should decide as a
matter of law whether the appropriate reference is found on the front of the relevant United
States patent applications.

First, Mr. Jager is a qualified patent law and licensing expert.  The Court therefore will permit his testimony regarding the general purpose and objectives for licensing patents and related topics such as negotiating, drafting, reviewing, and interpreting technology licenses because such testimony is relevant and will aid the jury.  On the other hand, Mr. Jager's proffered testimony as to the interpretation of agreements between the parties in this case will be excluded as going to an ultimate factual issue for the jury.  If there are ambiguities in contract terms, the testimony of lay witnesses regarding relevant facts and circumstances may be considered by the jury, not the opinions of experts.  No expert will be permitted for either side on this issue.  Finally, to the extent that Mr. Jager is proffered as a rebuttal witness with regard to Mr. Gerstman and Mr. Dodd's patent exhaustion testimony or to their conclusions regarding licensing and the patent misuse doctrine, Mr. Jager may rebut any portions of their testimony which the Court admits.

### 3. George Gerstman

George Gerstman is a partner in the law firm of Seyfarth Shaw LLP in Chicago. He holds an undergraduate electrical engineering degree and is admitted to practice before the United States Patent and Trademark Office.  He has over forty years of experience as a patent attorney.  The Court acknowledges that Mr. Gerstman is an experienced patent lawyer.  Papst proffers testimony by Mr. Gerstman on (1) general background concerning patents; (2) division of rights in patent licensing; (3) an analysis of the 1995 Settlement Agreement; (4) the presence of both drive and motor claims in the Appendix III patents; (5) the need to compare the patent coverage of the Papst's Motor Patents to Papst's Drive Patents; (6) statements made in patents owned by Minebea and by third parties indicating that spindle motors can be used for purposes

16

other than hard disk drives; (7) correlation between the U.S. patents that Minebea claims to have

been converted by Papst and their correlative German applications as included in an exhibit to

the 1993 agreement; and (8) errors made in Mr. Jager's analysis of patent exhaustion, Mr.

Jager's assertions regarding patents issued after the 1995 Settlement Agreement, errors in Mr.

Dalziel's analysis of the inventive features in Papst's Drive Patents, and rebuttal testimony on

patent misuse.

       The first area of proffered testimony by Mr. Gerstman, background on patents,

will be excluded as cumulative in light of the videotape prepared by the Federal Judicial Center

on the practices and procedures of the USPTO, which the Court plans to play for the jury

immediately following the Court's preliminary instructions.

       Second, the Court will allow Mr. Gerstman's testimony on the division of rights

in patent licensing because, based on Mr. Gerstman's experience, he will be able to aid the jury

in understanding licenses.  As to Mr. Gerstman's proffered testimony on point (3), however, the

Court excludes his analysis of the 1995 Settlement Agreement (and any earlier agreements)

because such analysis goes to an ultimate issue in this case and is a factual issue for the jury.

       As to testimony on points (4) and (5), the Court will allow Mr. Gerstman's

testimony on the presence of both drive and motor elements in the Appendix III patents and a

comparison between the patent coverage of the Papst Motor Patents to the Papst Drive Patents.

Such testimony will be admitted for the same reasons the Court is permitting the corresponding

testimony by Professor Adelman.

       As to testimony on point (6), regarding statements made in patents owned by

Minebea and by third parties indicating that spindle motors can be used for purposes other than

hard disk drives, such testimony is admissible so long as it satisfies Rules 803 and 804 of the Federal Rules of Evidence regarding hearsay.

The Court will permit Mr. Gertsman's testimony on point (7) regarding correlating the U.S. patents (that Minebea claims have been converted by Papst) with their correlative German applications as included in an exhibit to the 1993 agreement. The same analysis as discussed in detail *supra* with regard to Professor Adelman's testimony on this exact issue controls Mr. Gerstman's testimony as well.

Finally, as to the proffered testimony on point (8), Mr. Gerstman may rebut Mr. Jager's patent exhaustion testimony and Mr. Jager's assertions regarding patents issued after the 1995 Settlement Agreement, Mr. Dalziel's analysis of the inventive features in Papst's Drive Patents, and any expert testimony Minebea may proffer on patent misuse.

### E. Technology Experts

Minebea offers the testimony of Warren Dalziel and Edward Fiorito, respectively, regarding technological issues in this case.

### 1. Warren Dalziel

Minebea offers the testimony of Warren Dalziel on the HDD industry, the technology at issue in this case. Mr. Dalziel is a registered Professional Engineer. He holds a Masters degree in mechanical engineering and has extensive experience as an electro-mechanical design engineer and as a consultant. Mr. Dalziel is offered to testify regarding: (1) whether any of the Papst Drive Patents concern alleged improvements in a component of the HDD outside of the product delivered by the motor manufacturer; (2) whether the Minebea-supplied HDD motors have any commercially viable use other than in a HDD; (3) whether any of the Papst

Drive Patents provide benefits to the functioning of a HDD that are not attributable to alleged improvements in the motor; and (4) whether the Papst patents may be designed around such that any HDD motor or HDD could be manufactured not to infringe at least one of the Papst patents.

Papst submitted a memorandum regarding alleged claim interpretation implicated by Mr. Dalziel's testimony.  Minebea submitted a memorandum in support of a motion to strike Papst's memorandum regarding claim construction and Papst submitted an opposition thereto. Initially, Papst argues that Mr. Dalziel should not be able to present testimony that relates to what the Papst patents mean.  For example, Papst argues that Mr. Dalziel should not be allowed to testify that the non-generic features (improvements) in the Papst Drive Patents really relate to motor elements rather than to HDDs themselves.  Papst argues that Mr. Dalziel has to make implicit claim construction determinations in order to opine about whether a HDD could be designed so as to avoid the Papst Drive Patents.

The Court will allow certain portions of Mr. Dalziel's proffered testimony and exclude others.  The Court notes that the proposed testimony on points (1) and (3) is extremely similar.  Mr. Dalziel will be permitted to testify with respect to both.  First, the Court will allow Mr. Dalziel to testify regarding whether any of the Papst Drive Patents concern improvements to the product delivered by the motor manufacturer as opposed to the HDD manufacturer and whether any of the Papst Drive Patents provide benefits to the functioning of the drive that are not attributable to alleged improvements in the motor.  Such analysis by Mr. Dalziel, contrary to Papst's arguments, does not involve claim construction. Mr. Dalziel is offered simply to give his expert opinion as to what he views as the "improvements" and "functional benefits" described in Papst's Drive Patents over Papst's Motor Patents or motors in general.  Mr. Dalziel's opinions as to what is an improvement or benefit do not implicate claim construction but rather simply call

19

on his years of experience in the HDD industry.  His proffer of testimony on this point is analogous to that of Professor Adelman and Mr. Gerstman regarding general characterizations of the patent claims.

Second, the Court will allow Mr. Dalziel to testify about the availability of other commercially viable uses for HDD motors other than in HDDs.  Mr. Dalziel's expertise in the HDD industry qualifies him to testify on alternative uses.  While commercial viability may not necessarily be the proper standard for non-infringing uses with regard to patent exhaustion, the availability of alternative commercially viable uses, other than in HDDs, is nonetheless relevant to whether Minebea's motors can reasonably be used other than in HDDs.

Finally, the Court will exclude Mr. Dalziel's testimony as to patent design arounds.  Specifically, Mr. Dalziel may not testify regarding whether it is possible to design around the Papst Motor Patents or the Papst Drive Patents because such analysis implicitly does entail a claim construction and no proper claim construction concerning the issue of design around has been presented by Mr. Dalziel.  Testimony as to whether it is possible to design around the Papst Patents, while it may be relevant to the issue of non-infringing alternatives, patent exhaustion, is inappropriate coming from Mr. Dalziel, a Minebea expert, because Minebea has repeatedly told the Court that claim construction is not necessary and has never requested a Markman ruling.[7]  While Papst argues that certain clearly non-infringing uses are available for Minebea's motors, Minebea argues that its motors can only be used in HDDs (covered by Papst's Drive Patents).  Minebea cannot have it both ways.  Minebea cannot present expert testimony supporting its patent exhaustion theory by calling expert witnesses to opine that it is impossible to design around Papst's Drive Patents, but then fail to present a proper claim

---

[7]    Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).

construction or request one from the Court.  Mr. Dalziel may testify, however, based on his

knowledge in the HDD industry, as to his knowledge of reasonable uses for Minebea's motors.[8]

### 2.  Edward Fiorito

Minebea has offered the testimony of Mr. Fiorito, discussed *supra,* about whether

Mr. Dalziel has interpreted the claims of patents in a manner fully consistent with the legal

principles of claim interpretation.  Such rebuttal testimony is not necessary, however, because

Mr. Dalziel is not permitted to testify as to claim construction.  As discussed in connection with

Mr. Dalziel's testimony above, the Court has determined that claim construction testimony is not

appropriate in this case.

An Order consistent with this Opinion will be issued this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
DATE: June 21, 2005                    United States District Judge

---

[8]      While the Court's rulings with respect to Mr. Dalziel's proffered testimony rejects most,
but accepts some, of the arguments in Papst's Statement Regarding What Claim Interpretation
the Court Is Required To Perform With Respect to Mr. Dalziel's Testimony, the Court clearly
has considered the statement.  Minebea's motion to strike it [Docket No. 1020] therefore is
denied.