UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
MINEBEA CO., LTD., et al.,             )
                                       )
       Plaintiffs,                     )
                                       )
       v.                              )   Civil Action No. 97-0590 (PLF)
                                       )
GEORG PAPST, et al.,                   )
                                       )
       Defendants.                     )
_____)

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on (1) Minebea's motion in limine to preclude Jerold B. Schnayer from participating in any aspect of Papst's legal representation and to preclude Tobias Kessler from sitting at counsel table and discussing testimony with Papst's attorneys and witnesses; and (2) Papst's motion in limine to preclude Minebea from calling Tobias Kessler as a witness at trial and to allow him to be present at counsel table. Papst has filed an opposition to Minebea's motion in limine to sequester Papst's counsel, and Minebea has filed an opposition to Papst's motion. While these motions deal specifically with Mr. Schnayer and Mr. Kessler, they raise questions involving sequestration more broadly under Rule 615 of the Federal Rules of Evidence as well as the responsibility of the Court to control the mode and order of presentation of evidence under Rule 611.

       Rule 615 of the Federal Rules of Evidence provides that, at the request of a party, the Court shall order witnesses excluded so they cannot hear the testimony of other witnesses. While the Rule by its terms provides only for the exclusion of witnesses from the courtroom, the

Court has broad authority to fashion a more far-reaching sequestration order governing the access of witnesses to information about the trial through means other than their presence in the courtroom.  See United States v. Sepulveda, 15 F.3d 1161, 1175-77 (1st Cir. 1993).  The sequestration rule serves two primary purposes: to prevent a witness from tailoring his testimony in light of the testimony of other witnesses, and to permit the discovery of false testimony and other problems relating to credibility.  See 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6242 (1997).  And as Judge Selya noted in Sepulveda:

> [T]he sequestration process involves three parts:  preventing prospective witnesses from consulting each other; preventing witnesses from hearing other witnesses testify; and preventing prospective witnesses from consulting witnesses who have already testified.

United States v. Sepulveda, 15 F.3d at 1176.  Courts have broad discretion to achieve these goals and "may make whatever provisions [they] deem necessary to manage trials in the interests of justice, including the sequestration before, during, and after their testimony."  Id.; see United States v. Arias-Santana, 964 F.2d 1262, 1266 (1st Cir. 1992) (trial court may enter non-discussion orders at its discretion).[1]

---

[1] As Judge King recently wrote for the Fourth Circuit:

> We have properly recognized the purpose and spirit underlying witness sequestration:  it is "designed to discourage and expose fabrication, inaccuracy, and collusion." *Opus 3 Ltd. V. Heritage Park, Inc.*, 91 F.3d 625, 628 (4th Cir. 1996).  Put differently, sequestration helps to smoke out lying witnesses: "It is now well recognized that sequestering witnesses 'is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice.'" *Id*. (citing 6 *Wigmore on*

Rule 615 does not authorize the exclusion of a party who is a natural person or a designated representative of a party that is not a natural person. See FED. R. EVID. 615(1). Thus, in this case, Georg Papst (a named defendant) may be present in the courtroom throughout the proceedings, and a single designated representative of Minebea and a single designated representative of Papst may also be present because Minebea and Papst are not natural persons. In this case, Minebea has designated Ryusuke Mizukami as its designated representative and Papst has designated Tobias Kessler. In addition, Rule 615 provides that the Court is not authorized to exclude a person whose presence is shown by a party to be "essential" to the presentation of the party's case. FED. R. EVID. 615(2). In this case, that includes not only counsel of record but also their legal assistants, interpreters, and technical personnel necessary to assist in the electronic presentation of evidence. In addition, the Court has already indicated that Papst may have simultaneous translators in the courtroom throughout the trial, sitting in an unobtrusive location, to assist Mr. Papst to understand the proceedings, and that both sides may have jury consultants with them in court during voir dire. Papst now argues that Mr. Schnayer is also a person whose presence is "essential" to the presentation of Papst's case and urges that Mr. Schnayer be permitted to sit in the last row of the gallery throughout the trial.

The Court has previously ruled -- in open court on April 28, 2005, in an order dated April 19, 2005, and in a memorandum opinion dated May 18, 2005 -- that Mr. Schnayer could not be present in the courtroom and participate in the trial of this matter in the presence of the jury:

---

*Evidence* § 1838, at 463).

United States v. Rhynes, 218 F.3d 310, 317-18 (4th Cir. 2000).

> I think that if this is a jury trial, I'm not going to permit the jury to be confused by people who are both lawyers and witnesses. I think Mr. Schnayer is such an integral part of the facts and circumstances of this case that if there's a jury trial he will be in the witness room. He will not be in the courtroom; he won't be at counsel's table; he will not be in the audience; he will not be in the gallery. He will be in the witness room. And the only time he will be permitted in this courtroom is when he testifies. Period. So he will spend six weeks, with the exception of when he's on the witness stand, in the witness room with the other witnesses.

April 28, 2005 Transcript at 53. In this motion, Minebea argues that the Court should impose further restrictions and preclude Mr. Schnayer from interacting with Papst's other attorneys and witnesses before, during, and after his testimony pursuant to Rule 615.

Papst responds that Mr. Schnayer is essential to the presentation of Papst's case because of his unique knowledge of the underlying facts and the technology involved. Indeed, Papst says there is "nobody with comparable knowledge or overwhelming number of relevant details" about the patents involved in this case who could replace Mr. Schnayer if he were not permitted to be present in court. Papst's Opposition to Minebea's Motion In Limine to Sequester Papst's Counsel at 4. While it does not appear that Papst is asking the Court to reconsider its earlier rulings to exclude Mr. Schnayer from participation as trial counsel sitting at counsel table in the courtroom, Papst is asking the Court to permit Mr. Schnayer to keep apprised of the trial either outside the view of the jury through a live feed to the witness room or (if no live feed is permitted) by sitting in the back row of the gallery in the courtroom. It also requests that he be permitted to participate in the preparation of witnesses and to consult outside the courtroom with Mr. McLaren and other members of the trial team as well as with Mr. Papst.[2]

---

[2] The Court recently has ruled that no live feed will be permitted and has explained its reasoning in open court.

The Court's decision, encapsulated in the above quotation from the transcript of the April 28, 2005 hearing and discussed further in the Court's April 19, 2005 order, does not carry the day for Minebea. A careful reading of that order makes clear that the Court's primary concern in precluding Mr. Schnayer from participating as trial counsel in the courtroom was based on a concern that a lay jury would be confused by having him appear both as lead trial counsel (or even as second or third tier trial counsel) and as witness because he has worn two hats for so many years, and continuing to this day, as business and technical advisor and as lawyer. While the Court also was concerned about Mr. Schnayer's obstructionist tactics at depositions -- particularly the overassertion of privilege and the improper instructions to witness not to answer relevant and appropriate questions -- and in discovery generally,[3] the Court clearly suggested that its decision would have been different if there were no jury involved because the Court as fact-finder would not be susceptible to the same confusion as would a jury, and it would be better able to control Mr. Schnayer's excesses in the courtroom than opposing counsel was at depositions. That fact is underscored by the Court's decision on Report and Recommendation No. 27 that Mr. Lutzker would not be disqualified as trial counsel for Minebea even though he, too, is a potential witness. See Memorandum Opinion and Order of May 18, 2005 at 5-7.

It follows that Mr. Schnayer may act as a lawyer for his client during the course of this trial by participating in the preparation of witnesses and consulting with Mr. McLaren and other lawyers for Papst and with Mr. Papst, but only outside the courtroom. Like other Papst lawyers (including Mr. Kessler), he will have access to the "daily copy" of the transcript that will

---

[3] Counsel on both sides have been criticized by both the Special Master and the Court for their conduct during discovery.

be prepared by the two court reporters and be available each evening to the trial team. Because of the Court's concern about the tailoring of testimony or coaching of witnesses -- based on the conduct of counsel for both sides during discovery and the history of this case -- the Court will not permit a live feed of testimony to lawyers' offices or to their witness/litigation support rooms in the courthouse. It will also exercise its discretion to direct that fact witnesses may not talk to each other before, during or after their testimony and may not read (or have read to them) the daily copy of their own or any other witness' testimony before, during or after their testimony. See June 24, 2005 Order Regarding Trial Procedures at ¶ 16. See also United States v. Rugiero, 20 F.3d 1387, 1392 (6th Cir. 1994) (purpose of broad sequestration rule is "to preclude coaching or the influencing of a witness' testimony by another witness"); see also United States v. Rhynes, 218 F.3d at 317-18; United States v. Sepulveda, 15 F.3d at 1176-77; United States v. Arias-Santana, 964 F.2d at 1266. As the court said in Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1373 (5th Cir. 1981):

> The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion. *Taylor v. United States*, 388 F.2d 786 (9th Cir. 1967); *United States v. Leggett,* 326 F.2d 613 (4th Cir.), *cert. denied*, 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964). The opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court. The harm may be even more pronounced with a witness who reads trial transcript than with one who hears the testimony in open court, because the former need not rely on his memory of the testimony but can thoroughly review and study the transcript in formulating his own testimony. The court properly held that providing a witness daily copy constitutes a violation of Rule 615.

While Mr. Schnayer, wearing his witness hat, normally also would be precluded from talking to other witnesses "before, during and after their testimony," and from reading daily copy of the transcripts, and be excluded from the courtroom, the Court will permit him in his capacity as a lawyer to talk to witnesses both before and after their testimony and to read transcripts of their testimony because he is one of the lawyers advising Papst.[4]  Whether he should also be permitted to be in the courtroom as a back bench observer because he is "essential" to the trial team is a separate question.

The term "essential" in Rule 615 relates to witnesses, not to lawyers.  As Professor Saltzburg has written:  A witness is considered "essential" under Rule 615 when "a party needs a prospective witness in the courtroom in order to properly prepare and present the case." 3 STEPHEN A. SALTZBURG, ET AL. FEDERAL RULES OF EVIDENCE MANUAL 615-4 (8th ed. 2002).  The situation most often arises in the case of expert witnesses, but even then where a witness is both a fact and an expert witness, generally "sequestration should be ordered, or at the very least the witness' access should be limited to that testimony crucial to the witness' own expert opinions." Id. at 615-5.  See Opus 3 Ltd. v. Heritage Park, Inc., 91 F.3d 625, 629 (4th Cir. 1996).  The Court concludes that it is not "essential" for Jerold Schnayer the witness to be in the courtroom, and Papst does not really argue that it is.  Whether it is "essential" for Jerold Schnayer the lawyer to be in the courtroom is for the Court to decide, not under the express terms

---

[4]  It should go without saying that no lawyer in this civil case (including in-house counsel) or a lawyer's agent or employee may talk to any witness during his or her testimony -- including during recesses, lunch breaks and overnight recesses.  See, e.g., United States v. McLaughlin, 955 F. Supp. 132, 133-34 (D.D.C. 1997, (quoting Perry v. Leeke, 488 U.S. 272, 281-82 (1989)).  Furthermore, Mr. Schnayer may not need transcripts of his own testimony until he has concluded his testimony.

of Rule 615 but under the broader discretionary authority the Court retains from the common law even after promulgation of Rule 615.  See United States v. Sepulveda, 15 F.3d at 1175-76.

The primary reason for prohibiting Mr. Schnayer from acting as trial counsel and appearing before the jury as both one of Papst's two primary fact witnesses -- whose name undoubtedly will be invoked by witnesses for both sides throughout the trial -- and as trial counsel was to avoid juror confusion.  The question is whether Mr. Schnayer would, as Minebea argues, cause juror confusion if he sat in the last row of the gallery throughout the trial and never consulted with or even talked to other Papst lawyers or Mr. Papst while in the courtroom or the corridor outside simply because the jury would later see him on the witness stand.  The Court thinks not.  The confusion, if any, would be minimal.  On balance, the Court concludes that the dangers intended to be prevented by both Rule 615 and the common law sequestration rule may be addressed without depriving Papst of arguably its most important lawyer advisor.  Cf. Cannon & Son, Inc. v. Fidelity & Casualty Co., 519 F Supp. 668, 679 (D. Del. 1981) (attorney who handled transaction being litigated considered essential).

As for Mr. Kessler, he was proffered as Papst's corporate representative by Mr. McLaren at a recent status conference.  He is Mr. Papst's personal lawyer, but is not an attorney of record or a person authorized to appear pro hac vice in this Court.  LCvR 83.2(d).  He is, however, also in-house counsel to Papst, and has been since 1998.  The Court concludes that he therefore may be designated as Papst's corporate representative.  See FED. R. EVID. 615(2). Thus, Mr. Kessler will be permitted to sit at counsel table and consult with Mr. Papst and the trial team throughout the trial.  As a lawyer, he may also participate in witness preparation outside the courtroom.  As to whether Mr. Kessler has anything relevant to say as a fact witness and whether

Minebea may call him as an adverse witness in its case, the Court will – as it has with respect to Papst's desire to call Mr. Lutzker – require a proffer from Minebea outside the presence of the jury as to the nature of the testimony sought before permitting Mr. Kessler to be called to the witness stand.

Finally, the Court reminds counsel that if any lawyer in this case inappropriately "coaches" a witness or helps a witness "tailor" his testimony or fabricate or dissemble, there will be consequences. Cross-examination itself is a powerful weapon that can both undermine the witness' credibility and cast the lawyer in an unfavorable light in the eyes of the jury. See United States v. Rhynes, 218 F.3d at 320 (quoting Geders v. United States, 425 U.S. 80, 89-90 (1976)). Evidence can be excluded or stricken; lawyers can be excluded from the courtroom; adverse inferences can be drawn; juries can be instructed that the sequestration order has been violated; a party or witness can be held in contempt; monetary sanctions can be imposed on parties or lawyers; disciplinary proceedings can be instituted. In the absence of evidence to the contrary, however, courts "must trust and rely on lawyers' abilities to discharge their ethical obligations, including their duty of candor to the court"; otherwise, the adversary process, the judicial system and the legal profession itself are in grave jeopardy. United States v. Rhynes, 218 F.3d at 320; see also id. at 324-25 (Wilkins, J., concurring).

For these reasons, and with the limitations discussed above, it is hereby

ORDERED that Minebea's motion in limine [Docket No. 882] to preclude Jerold B. Schnayer from participating in any aspect of Papst's legal representation and to preclude Tobias Kessler from sitting at counsel table and discussing testimony with Papst's attorneys and witnesses is DENIED; and it is

FURTHER ORDERED that Papst's motion in limine [Docket No. 912] to preclude Minebea from calling Tobias Kessler as a witness at trial and to allow him to be present at counsel table is GRANTED in part and DENIED in part.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: June 28, 2005                United States District Judge