UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MINEBEA CO., LTD., et al.,                )
                                          )
       Plaintiffs,                        )
                                          )
       v.                                 )   Civil Action No. 97-0590 (PLF)
                                          )
GEORG PAPST, et al.,                      )
                                          )
       Defendants.                        )
_____)


OPINION AND ORDER

       This matter is before the Court on the parties' objections to the Special Master's Report and Recommendation No. 31, recommending that German law govern Counts IV (breach of fiduciary duty) and V (conversion), and that New York Law govern any punitive damages for Counts II (fraudulent concealment) and III (negligent misrepresentation).[1] Upon consideration of the Special Master's Report and Recommendation, the parties' objections, and the responses thereto, the Court concludes that (1) the Special Master correctly concluded that German law should govern Counts IV and V, including with respect to punitive damages on Count IV; and (2) the Special Master's recommendation that New York law govern punitive damages associated with Counts II and III should be rejected and German law applied to the issue of punitive damages on these counts.

---

    [1]    On June 27, 2005, plaintiffs voluntarily withdrew Counts II, III, IV and VI in view of the Court's interpretation of the 1995 Settlement Agreement in its June 24, 2005 Opinion denying summary judgment on the Patent Exhaustion Claim (Count I). This Opinion nevertheless treats all the issues raised in the parties' objections and oppositions as if all counts were still at issue.

In Report and Recommendation No. 31, the Special Master, stating that Judge Harris and the undersigned "have either accepted or expressly ruled" that New York law applies to Minebea's fraud claim (Count II), concluded that New York law also applies to the "closely related" claims of negligent misrepresentation (Count III) and contract reformation (Count VI). See Special Master's Report and Recommendation No. 31 (June 12, 2005) ("R&R 31") at 7. The Special Master recommended, however, that Minebea's claims for breach of fiduciary duty (Count IV) and conversion (Count V), and any related claims for punitive damages, should be governed by German law. See R&R 31 at 19-21. The Special Master so decided with respect to Count IV because "the fiduciary duties allegedly breached in Count IV appear to be grounded in German contracts, Georg Papst's relationship to PMDM and German legal authority[,]" defendants Georg Papst and Papst Licensing are located in Germany, PMDM (the entity of whom defendants allegedly were fiduciaries) is a German entity, and the underlying conduct and alleged injury occurred in Germany. Id. at 19. Similarly, because the contractual relationships giving rise to Count V (conversion) "were centered in Germany" and "involve German entities and citizens," the relevant contracts "appear to be subject to German law," the relevant inventions were invented in Germany, and the "allegedly offending assignments undoubtedly were executed in Germany," the Special Master concluded that German law should apply to this count as well. Id. at 19-20.

The Special Master separately recommended that New York law govern Minebea's prayers for punitive damages for Counts II and III, stating that "New York has a substantial interest in deterring fraud and misrepresentations during negotiations of contracts governed by New York law." R&R 31 at 7. With respect to Count IV (breach of fiduciary duty),

however, the Special Master found that German law should govern the punitive damages issue.
See id. at 20.[2]

> A.  *Minebea's Objections*

Minebea objects to the recommendation that German law apply to Counts IV and V, arguing instead that New York law should apply to the fiduciary duty claim and that District of Columbia law should apply to the conversion claim.

Minebea advances three arguments in favor of the proposition that New York law governs Count IV. First, it argues that this is "the law of the case." The Special Master has recommended that because Count III (negligent misrepresentation) and Count VI (contract reformation) are "closely related" to Count II (fraudulent concealment), which has been held by the undersigned to be governed by New York law, see Minebea Co. v. Papst, 355 F. Supp.2d 518, 521-22 (D.D.C. 2005), Counts III and VI also should be governed by New York law. See R&R 31 at 6-7. Minebea argues that because Count IV also is "closely related" to the fraud claim, it too should be governed by New York law.

The Court has never expressly held that New York law governs any claim other than the fraud claim in Count II. The Special Master nevertheless was not unreasonable in concluding that Counts III and VI – negligent misrepresentation and contract reformation – but not Count IV (breach of fiduciary duty), are so "closely related" to plaintiffs' fraud claim as to warrant application of the same law, despite the fact that some of the underlying conduct relating

---

[2]   Neither party at this stage seeks to relitigate this Court's earlier decision that New York law applies to the substantive Count II claim or objects to the Special Master's recommendation with respect to Count VI.

to Counts III, IV and VI may be the same. The gravamen of Minebea's fraud, negligent misrepresentation, and contract reformation claims is Papst's alleged misrepresentations and Minebea's and PMDM's reliance thereon in entering into the 1995 Settlement Agreement. The central fact of the fiduciary duty claim, by contrast, is the duty owed by Georg Papst to the Papst/Minebea joint venture, which arose from the asserted "special relationship" between Papst Licensing and Minebea, which arose from these entities' pre-1995 contracts and course of dealing. Indeed, even Minebea acknowledges that the fiduciary obligation owed by Papst to Minebea or PMDM is governed by German law. See Minebea's Objections to Report and Recommendation No. 31 Relating to the Governing Law for Counts IV and V ("Minebea Obj.") at 8; R&R 31 at 9.

Furthermore, Judge Harris noted in his June 22, 1998 opinion (upon which the undersigned partially relied in ruling that New York law applied to Minebea's fraud claim) that "[t]he parties agree that New York law applies to the allegations of fraud *and negligent misrepresentation and the request for contract reformation*." Minebea Co. v. Papst, 13 F. Supp.2d at 43 & n.10 (emphasis added). He did not speak to Minebea's breach of fiduciary duty claims. Thus, the facts and reasoning underlying this Court's determination that New York law applies to Count II do not dictate the conclusion that New York law applies to Count IV as well.

Second, Minebea argues that the Special Master incorrectly applied District of Columbia law in concluding that German law should govern the conversion claim. This argument also fails.

In determining which jurisdiction's law controls on a particular issue, the courts of the District of Columbia employ a modified "governmental interest analysis," under which the

court must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case.  See Bledsoe v. Crowley, 849 F.2d 639, 641 (D.C. Cir. 1988); Long v. Sears Roebuck & Co., 877 F.Supp. 8, 10 (D.D.C. 1995); see also Jacobsen v. Oliver, 201 F. Supp.2d 93, 99 (D.D.C. 1999) (in determining choice of law, court "balances the competing interests of the jurisdictions" whose law might apply).  In applying this analysis, the Court looks to the Restatement (Second) of Conflict of Laws to identify the jurisdiction with the "most significant relationship" to each issue in dispute.  Hercules & Co., Ltd. v. Shama Restaurant Corp., 566 A.2d 31, 40 (D.C. 1989).  To determine which jurisdiction has the most significant relationship to an issue in dispute, the Court examines a list of contacts that various states might have with the litigation.  When the issue is liability for a tort claim, the Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship, if any, is centered.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971); Long v. Sears Roebuck & Co., 877 F. Supp. at 11.

      Minebea acknowledges that "the fiduciary duties that arose in connection with the pre-1995 agreements are governed by German law and . . . the corporate relationships are also under German law, and . . . certain of the relevant parties are located in Germany."  Minebea Obj. at 6.  Nonetheless, it argues that New York has a greater interest in the application of its laws to this dispute than does Germany, by virtue of the parties' inclusion in the 1995 Settlement Agreement of a choice-of-law provision selecting the law of New York law to govern the contract.  But plaintiffs' fiduciary duty claim arises out of a fiduciary relationship formed in

Germany, by (among others) German citizens or entities, by virtue of agreements governed by German law, and well before the 1995 Settlement Agreement was signed.[3]  A significant portion of the conduct alleged to constitute the breach of duty occurred in Germany.  None of the relevant events occurred in New York, nor are any of the parties involved New York entities.  Germany's interest, therefore, far outweighs any interest New York might have in the application of its laws to this claim.  Thus, the traditional District of Columbia choice of law analysis dictates that German law, not New York law, should apply to Count IV, the breach of fiduciary duty claim.[4]

       Minebea makes a final, related argument that the Special Master erred in failing to give effect to the 1995 Settlement Agreement's choice-of-law clause.  The Court also rejects this argument, which relies on Minebea's inaccurate claim that such a choice of law provision "necessarily encompasses any tortious conduct committed in negotiation of the agreement."  Minebea Obj. at 5.  The authorities cited by Minebea stand not for the proposition that claims

---

[3]     As the Special Master noted:

> Papst argues, and Minebea appears to agree, that German law governs (1) Minebea's August 1993 discharge of Georg Papst, (2) the April 1993 Alteration Agreement, (3) the 1993 Contract of Sale, and (4) two 1990 agreements and another 1993 agreement. (Agreements (2) and (3) expressly refer to German law as the relevant law.)

R&R 31 at 15.

[4]     Minebea also asserts that some of the conduct underlying the claim occurred in Japan, and some of the injury was felt "in the various states within the United States where Nippon Miniature Bearing Corp. has its sales offices."  Minebea Obj. at 6.  These facts are irrelevant, because there is no argument that the law of Japan or any other unspecified United States jurisdiction applies to this claim.

sounding in tort are within the scope of such a clause; rather, they indicate only that contractual defenses based on improper behavior in connection with contract negotiations – such as duress, undue influence, fraud in the inducement, or misrepresentation – are governed by the parties' choice of law with regard to the contract.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 201 ("The effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by [the parties]."); Asia North America Eastbound Rate Agreement v. Pac. Champion Serv. Corp., 864 F. Supp. 195, 201 (D.D.C. 1994) (considering enforceability of contract procured by fraud).

      A choice-of-law provision governing contract claims simply does not cover tort claims arising from the same underlying events unless the parties so intend.  See Godbey v. Frank E. Basil, Inc., 603 F. Supp. 775, 777 (D.D.C. 1985) ("Although these claims are based in part on the events underlying the contract claim, they obviously could not have been contemplated by the parties when they drafted the choice of law provision, which cannot have been intended to control tort claims such as these."); see also Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) ("Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract.").  The 1995 Settlement Agreement states simply that "*This Agreement* shall be governed by and interpreted in accordance with the Laws of New York."  1995 Settlement Agreement ¶ 7.3 (emphasis added).  The Court cannot infer from such narrow language that the parties intended tort claims arising from conduct relating to the

negotiation of the 1995 Settlement Agreement to be governed by New York law.  Accordingly, the Court holds that German law shall apply to Minebea's breach of fiduciary duty claim.[5]

Minebea also objects to the Special Master's recommendation that German law apply to its conversion claim (Count V).  Because "the acts that are the basis of Count V were accomplished and perfected in the United States before the United States Patent Office through the filing of applications and assignments in the name of Papst Licensing," and because the "ownership of United States patents is controlled by American law," Minebea argues that United States law should apply.  Minebea Obj. at 9-10.  In the absence of any other state having an interest in the U.S. patents, and because the District of Columbia traditionally has been recognized as having a "special interest" in patent matters involving a patentee not residing in the United States, Minebea argues that District of Columbia law should apply to Count V.

The question before the Court is which jurisdiction – New York, the District of Columbia, or Germany – has the most significant policy interest in "having its law applied to the facts of the case."  See Bledsoe v. Crowley, 849 F.2d at 641.  New York clearly has no significant interest.  No party argues that New York law should govern the issue of liability on Minebea's conversion claim.  New York has no direct connection to the conduct, entities, or injury involved in that count, and there is no argument that the choice-of-law provision in the 1995 Settlement Agreement applies.

The District of Columbia's interest in applying its law to Minebea's conversion claim also is not significant.  Minebea, citing the federal patent long-arm statute, 35 U.S.C.

---

[5]     The Court also adopts the Special Master's recommendation that German law applies to the issue of punitive damages related to Count IV.  See infra at 10-13.

§ 293, argues that "the District of Columbia in particular is recognized . . . as having a special interest in patent matters involving 'a patentee not residing in the United States.'"  Minebea Obj. at 9.  It is not at all clear, however, that Minebea's conversion claim falls within the scope of that section.  See Purdue Research Found. v. Sanofi-Synthelabo, S.A., 332 F. Supp. 2d 63, 66-70 (D.D.C. 2004) (35 U.S.C. § 293 did not apply to contract action where validity of exclusive license granted by patentee and extent of rights conferred were not in question).  Even if it does, the purpose of the statute – "to assure a forum for suit in the United States in [patent] cases that otherwise might not be accommodated by either state or federal courts," National Patent Dev. Corp. v. T.J. Smith & Nephew, Ltd., 877 F.2d 1003, 1006-07 (D.C. Cir. 1989) – is satisfied fully by this Court's exercise of personal jurisdiction over defendants in this litigation, and is unaffected by which jurisdiction's law is applied to plaintiffs' conversion claim.  The federal patent long-arm statute thus provides no support for the application of District of Columbia law.

    The consideration of the other factors considered by District of Columbia courts in determining which jurisdiction's law should apply also makes clear that the District of Columbia does not have a significant interest in the application of its law to Count V.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971); Long v. Sears Roebuck & Co., 877 F. Supp. at 11.  As the Special Master noted, the "core" of the conversion count concerns German individuals and entities, devices invented in Germany, contracts subject to German law, and assignments executed in Germany.  See R&R 31 at 19-20.  The District of Columbia's only involvement is that Papst filed its applications for U.S. patents in this jurisdiction.  In light of these facts, the Court finds that Germany has a far more significant interest in "having its law

9

applied to the facts in the case." See Long v. Sears Roebuck & Co., 877 F. Supp. at 10. German law therefore should apply to Minebea's conversion claim.

For the foregoing reasons, the Court rejects Minebea's contentions that New York law should apply to Count IV and that District of Columbia law should apply to Count V.

### B.  *Papst's Objections*

Papst objects to the Special Master's recommendation that New York law govern the issue of punitive damages on Counts II and III. Notwithstanding the undisputed application of New York law to the underlying claims, Papst argues that German law should control punitive damages on these Counts. The Court agrees.[6]

The District of Columbia's standards for deciding choice of law questions already have been discussed with regard to plaintiffs' breach of fiduciary duty claim. The issue of punitive damages is distinct from that of liability for the underlying claims, however, and choice of law for that issue must be analyzed separately. See Long v. Sears Roebuck & Co., 877 F. Supp. at 11-13 ("Under proper conflict of laws principles, the Court is to conduct the choice of law analysis for each distinct issue being adjudicated."); Keene Corp. v. Ins. Co. of North America, 597 F. Supp. 934 (D.D.C. 1984) (addressing choice of law for punitive damages separately from law controlling claim misrepresentation); In re Air Crash Disaster at Washington, D.C. on January 13, 1983, 559 F. Supp. 333, 336 (D.D.C. 1983) (analyzing choice of law for punitive damages separately from choice of law for tort liability).

---

[6]   Again, while plaintiffs have withdrawn these claims, for purposes of completeness the Court is addressing herein all of the parties' contentions with respect to Report and Recommendation No. 31.

The government interests implicated by punitive damages differ from those implicated by claims for compensatory damages.  See BMW of North America v. Gore, 517 U.S. 559, 568 (1996) ("Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition."); Keene Corp. v. Ins. Co. of North America, 597 F. Supp. at 938 ("States' interests in compensatory damages differ from those involved in punitive damages.").  When the primary purpose of a rule of law is to deter or punish conduct, the jurisdictions with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of the defendant are located.  See id. at 938 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. c-e).  The places where the injury occurred (if it is different than the place where the tortious conduct occurred) and where the parties' relationship is centered do not claim as great an interest in the punitive damages issue as in other tort-related issues.  See Keene Corp. v. Ins. Co. of North America, 597 F. Supp. at 939.

        Papst argues that because all of the defendants in this action are German entities or individuals located in Germany, and most of the alleged conduct underlying the claims for punitive damages occurred in Germany, "Germany is the only jurisdiction whose policies would be advanced by application of its law with respect to punitive damages," and the Court should apply German law to that issue.  Papst's Objection to Special Master's Recommendation No. 31 that New York Law Governs Any Punitive Damages for Counts II and III ("Papst Obj.") at 2.  Accordingly, Papst claims, the Special Master erred in recommending that New York law govern punitive damages.

Minebea counters that German law should not apply because "Germany has no particular contacts" with the conduct on which its claims for punitive damages are based. See Minebea's Statement of Points and Authorities in Opposition to Papst Obj. ("Minebea Opp.") at 1. Minebea does not dispute that the defendants are located in Germany, or that most of the underlying conduct occurred in Germany. Rather, it claims that "much of the conduct occurred in negotiation meetings in Japan, in letters from Papst's counsel in the United States and focused on United States patents." Id. The fact that *some* of the conduct in question might have occurred in Japan (a jurisdiction whose law neither party seeks to invoke here) or even in the United States (Minebea does not specify whether it occurred in New York or elsewhere), however, does not obviate Germany's interest in deterring tortious conduct. So long as no other jurisdiction's interest in the issues of punishment and deterrence outweighs that of Germany, German law should apply.[7]

Minebea also argues that the parties' consent to have the 1995 Settlement Agreement governed by New York law affords New York a strong interest in the application of its laws to this case. As discussed above, however, the 1995 Settlement Agreement's choice-of-law provision does not apply to claims for torts committed in negotiation of the agreement. The state of New York has no interest in applying its law to claims not within the scope of such a

---

[7] Minebea's related argument that because German law does not allow for punitive damages, Germany has no policy interest in deterring improper behavior, see Minebea Opp. at 2, is simply wrong. A jurisdiction's decision *not* to allow punitive damages itself constitutes a policy judgment on the issue. See, e.g., In Re Air Crash Disaster at Washington, D.C. on January 13, 1983, 559 F. Supp. at 338 ("While Washington State has made a considered choice not to allow the assessment of punitive damages, that choice necessarily includes a balancing of the interests of resident tortfeasors against the interests of that state in preventing harm caused by tortious conduct.").

choice-of-law provision.  See Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) ("Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract.").  If the underlying claims are outside the scope of the provision, the assessment of punitive damages certainly is.

Finally, Minebea argues that Papst should be estopped to argue that German law applies to the claim for punitive damages on Counts II and III because Papst "has constantly applied New York law, and argues that New York law should be applied by the Court, to these Counts."  Minebea Opp. at 3.  As Papst points out, however, the parties' prior assertions of the applicability of New York law have pertained to the issue of *liability* for fraud and negligent misrepresentation, not to any punitive damages that might be assessed.[8]  To reiterate, for choice of law purposes, liability is an issue distinct from that of punitive damages.  See Long v. Sears Roebuck & Co., 877 F.Supp. at 11-13.

Because Germany's interest in deterring conduct constituting fraud or negligent misrepresentation within its borders outweighs the interest of New York in the application of its law to plaintiffs' claims for punitive damages on Counts II and III, the Court holds that German law should apply.  For the same reasons, the Court holds that German law also applies to the assessment of punitive damages with regard to Count IV (breach of fiduciary duty).

---

[8]   Judge Harris' 1998 statement that "[t]he parties agree that New York law applies to the allegations of fraud and negligent misrepresentation" was made in his ruling on Papst's motion to dismiss, see Minebea, Ltd. v. Papst, 13 F. Supp.2d 35, 43 & n.10 (D.D.C. 1998) and the undersigned's February 4, 2005 ruling applied New York law to the elements of fraud.  See Minebea Co. v. Papst, 355 F. Supp.2d 518, 521-22 (D.D.C. 2005).  In both situations, it was the question of liability, not punitive damages, that was implicated.

For the foregoing reasons, it is hereby

ORDERED that Special Master's Report and Recommendation No. 31 is ACCEPTED in part and REJECTED in part; it is

FURTHER ORDERED that the Special Master's recommendation that Counts III and VI are governed by New York law is ACCEPTED; it is

FURTHER ORDERED that the Special Master's recommendation that Counts IV and V are governed by the law of Germany is ACCEPTED; it is

FURTHER ORDERED that the Special Master's recommendation that the claim for punitive damages with respect to Count IV is governed by the law of Germany is ACCEPTED; and it is

FURTHER ORDERED that the Special Master's recommendation that the claim for punitive damages with respect to Counts II and III is governed by New York law is REJECTED.  The law of Germany shall govern those issues.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 29, 2005