UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MINEBEA CO., LTD., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 97-0590 (PLF) |
| GEORG PAPST, et al., | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the Court on Minebea's Motion for Leave to Supplement the Expert Report of Mr. Thomas Gardner. The Court has examined Minebea's motion, Papst's opposition, and Minebea's reply, as well as the Supplemental Report itself. For the reasons that follow, Minebea's motion is granted in part and denied in part. This matter is also before the Court on Papst's strike through of the testimony of Mr. Gardner and Papst's objections to the trial exhibits Minebea proposes to introduce through Mr. Gardner. The Court's conclusions regarding admissibility are contained herein.

*A. Supplemental Report*

Mr. Gardner's original report, dated April 4, 2005, provides an analysis of the hard disk drive ("HDD") marketplace in general, as well as conclusions as to what Minebea's market share and production of HDD motors would have been in a "but-for" scenario, if Minebea's rights under the Papst patents had been affirmed in 1993 or 1995. See April 4,

2005 Report of Thomas Gardner ("First Expert Report"). One week into trial, Minebea now seeks to admit in evidence a so-called "supplemental report," which would provide additional information in four specific sections: (1) a "refined focus" on the metrics of the U.S. HDD marketplace; (2) a "compendium" of reasonable royalty rates along with a reasonable royalty rate figure per drive; (3) a rebuttal of Mr. Dubinsky's alleged "mischaracterizations" of Mr. Gardner's "but-for scenario"; and, (4) a revised forecast of Minebea's production capacities based on Mr. Malackowski's supplemental report. Minebea's Motion for Leave to Supplement the Expert Report of Thomas Gardner ("Supp. Mot.") at 1-6. As discussed below, only two limited portions of Mr. Gardner's supplemental report fall within the scope of a permitted supplementation of disclosures as contemplated by the Federal Rules of Civil Procedure.

Rule 26(a)(2)(B) of the Federal Rule of Civil Procedure states that expert witnesses must provide the Court with a written report containing, among other things, "a complete statement of all opinions to be expressed and the bases and reasons therefore; [and] the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(a)(2)(C) requires that such reports be disclosed at least 90 days before the trial date or as directed by the Court. The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial. See Coles v. Perry, 217 F.R.D. 1, 4 (D.D.C. 2003) (noting that "the very purpose of the rule is nullified" when an expert "supplements" his report by addressing a new matter after discovery has ended). The Rule also

prevents experts from "lying in wait" to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony. See Keener v. United States, 181 F.R.D. 639, 641 (D. Mont. 1998).

In light of the purposes of Rule 26(a), Rule 37(c)(1) provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is harmless, or if there was substantial justification for such failure. Fed. R. Civ. P. 37(c)(1).[1] Neither of the exceptions in Rule 37(c)(1) are present in this case. As explained below, the information contained in Mr. Gardner's supplemental report could have been compiled and filed with this Court well before the start of trial. Minebea has articulated no substantial justification for waiting until one week after the start of trial to provide this report. Discovery in this action began years ago, and the time for disclosure of additional evidence has long since passed. Furthermore, the failure to disclose is not harmless, as Minebea alleges. Mr. Gardner's supplemental report is, in several respects, a substantial "refinement" of the original report, containing new or different material and providing additional information to support specific elements of Minebea's case. Papst has not had the opportunity to depose Mr. Gardner regarding his new report, to have its own witness prepare rebuttal reports, or adequately to prepare for cross-examination with respect to the new report. Rule 26(a)(2) specifically contemplates the exclusion of reports, such as this one, that are filed too late to provide the opposing party with an adequate opportunity to respond or prepare a response for trial.

---

[1] Rule 37(c)(1) highlights exclusion as the primary remedy for violations of Rule 26(a). Rule 37(c)(1) also enables the trial judge to impose additional or alternative sanctions as appropriate.

Rule 26(e)(1) provides a limited exception to the deadlines provided in Rule 26(a)(2)(C), requiring that an expert witness supplement his report if he "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Contrary to the suggestion of Minebea in its Motion for Leave to Supplement, Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be "desirable" or "necessary" to their case. Rather, the Rule permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report. Keener v. United States, 181 F.R.D. at 640; Coles v. Perry, 217 F.R.D. at 3 ("Fed. R. Civ. P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect."). Specifically, supplemental reports are permitted under Rule 26(e)(1) only in the following situations: (1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete. Keener v. United States, 181 F.R.D. at 640. Minebea's liberal interpretation of Rule 26(e) would contradict the purpose of Rule 26(a)(2) and Rule 37(c)(1), which specifically prevent further disclosures of expert testimony as trial approaches.

Minebea first argues that the section of Mr. Gardner's supplemental report regarding the U.S. HDD marketplace should be admissible at trial because Mr. Gardner did "not anticipate the desirability" of such a specific analysis until after the Court's June 24,

2005 Opinion denying the parties' cross-motions for summary judgment on the issue of patent exhaustion. Minebea's Motion at 1-3. Specifically, Minebea claims that a more "refined" analysis by Mr. Gardner was "desireable if not necessary," given this Court's interpretation of the elements of patent exhaustion, adding that Mr. Gardner could not have thought to include such an analysis in his report before the Court issued its opinion. See id. at 2-3. The Court disagrees with Minebea's implied assertion that Minebea could not have anticipated the Court's interpretation of the elements of patent exhaustion and requested their expert witnesses to prepare accordingly. A thorough reading of the case law should have been adequate to inform Minebea of the possibility that the Court would require Minebea to establish that motor sales occurred within the United States. At the very least, Minebea should have been aware that such an interpretation of the case law existed when the parties filed their cross-motions for summary judgment, well before June 24, 2005. Given the fact that Minebea could reasonably have anticipated the need for the type of analysis Mr. Gardner now presents in his supplemental report several weeks or months earlier, the Court is unwilling to permit a significant change in an expert's report during trial.

Second, Minebea asks the Court to permit a "compendium" of reasonable royalty rates along with a reasonable royalty rate figure per drive. See Minebea's Motion at 4-6. Minebea claims that it realized that this analysis would be "helpful" only following the Court's June 21, 2005 Daubert Opinion excluding the testimony of Minebea's damages expert, Mr. Fiorito, who had estimated a royalty rate of $1 per drive. Id. at 4. The Court first expressed its doubts about the proffered testimony of Mr. Fiorito, however, on the day Mr. Fiorito testified at the Daubert hearing on June 2, 2005. Had Minebea then planned for Mr.

Fiorito's possible exclusion, then it could easily have requested Mr. Gardner to compile a compendium of reasonable royalty rates well in advance of trial. The section of Mr. Gardner's supplemental report discussing Papst royalty rates will therefore also be excluded, subject to one exception discussed below.

Minebea claims that Mr. Gardner's supplemental report corrects an error in his initial report with respect to Papst's "average lower royalty concept." Minebea's Motion at 5-6. This inaccuracy is of the type contemplated by Rule 26(e), which permits experts to submit supplemental reports to correct an earlier figure which the expert has deemed to be inaccurate or incorrect. Although the correction in this case happens to work in Minebea's favor, Rule 26(e) does not distinguish between supplemental disclosures to correct inaccuracies in favor of the party proffering the expert's supplemental report as compared with the party opposing the expert's report. Such a correction in this case will not prejudice Papst by impairing Papst's ability to prepare for cross-examination of Mr. Gardner. Therefore, paragraph 12 of Mr. Gardner's supplemental report and revised Exhibits XI and XII are the proper subject of a supplemental report to the extent that they are necessary to correct Mr. Gardner's pervious error regarding his projection of Papst's "average lower royalty concept." The Court notes, however, that because trial has already begun, it would have been more appropriate to simply highlight any errors and corrections – with proper explanations – in the written direct testimony of the expert rather than submit an entirely new supplemental report.

Third, Minebea urges that portions of Mr. Gardner's supplemental report containing a defense of his "but-for scenario" be admitted to rebut Mr. Dubinsky's "mischaracterizations" of Mr. Gardner's original expert report. Minebea's Motion at 6. Rule

26(a)(2)(C) states that expert disclosures intended to contradict or rebut evidence on the same subject matter identified by another party's expert witness must be made within 30 days of the disclosure by the other party. Fed. R. Civ. P. 26(a)(2)(C). By Minebea's own admissions, such "mischaracterizations" must have happened on or before May 25, 2005, over thirty days before Mr. Gardner's supplemental report was submitted. Therefore, a supplemental report on this issue is untimely submitted. Despite Minebea's tardiness, however, in the interest of efficiency, the Court will permit Minebea to include any rebuttals to Mr. Dubinsky's reports in its written direct testimony rather than forcing Minebea to wait until its rebuttal case to present such testimony. Papst will not be surprised or prejudiced by permitting Mr. Gardner to so testify.

Fourth, Minebea argues that Mr. Gardner's revised production forecast should be admitted through the supplemental report, in order to comport with Mr. Malackowski's third supplemental report. Mr. Gardner's original forecast was based on data provided in Mr. Malackowski's original report, which was subsequently revised. Rule 26(e) permits such a revision in order to correct data that is based on information that is inaccurate or out-of-date. Therefore, paragraph 15 and Exhibit XIV of Mr. Gardner's supplemental report may be relied upon to the extent that they are necessary to accurately reflect the revised forecasts of Minebea's production provided in Mr. Malackowski's third supplemental report.

Although the majority of Mr. Gardner's supplemental report will be stricken, it is important to draw a distinction between information contained in the supplemental report, and information, issues, or opinions raised during Mr. Gardner's deposition, which may or may not have been covered in Mr. Gardner's original report. Nothing in this Opinion

prevents Minebea from raising in its direct examination of Mr. Gardner any evidence, issues or opinions raised by counsel during Mr. Gardner's deposition, or raised in reaction to issues presented by Mr. Dubinsky or Mr. Malackowski regardless of whether such evidence, issues or opinions were presented in Mr. Gardner's original report.

### B. Objections to Testimony

The Court will now address Papst's specific objections to Mr. Gardner's direct testimony in light of the foregoing discussion. The Court does not appreciate Minebea's attempt to introduce new testimony, outside of the scope of either the original expert report or the deposition testimony of Mr. Gardner, into the proffered written direct testimony of Mr. Gardner. Minebea has wasted opposing counsels' time – in forcing them to attempt to determine which portions of the direct testimony were and were not contained in or directly related to subjects covered by Mr. Gardner in his First Expert Report – and the Court's time in resolving these objections. Minebea would have saved its own, opposing counsels' and the Court's time had it simply filed the strike-through of Mr. Gardner's First Expert Report and then supplemented it with brief written or oral direct testimony only to the extent necessary to correct errors in the First Expert Report, to rebut Mr. Dubinsky's conclusions, or to take account of Mr. Malackowski's observations. While the Court did find Minebea's comments to Papst's strike throughs very helpful in resolving these objections, the sheer volume of objections would have been significantly less had Minebea submitted its testimony as described above.

Nevertheless, the Court notes that a number of Papst's objections take a far too narrow view of what is acceptable direct expert testimony. Were Minebea simply to have put Mr. Gardner on the stand for direct testimony, there would have been no line-by-line comparison of the expert report to his direct testimony. He would have been permitted a certain degree of latitude with respect to the areas in which he has been accepted as an expert as permitted to expand upon and explain the opinions and conclusions in his expert report and at deposition. The Court therefore will permit Minebea to include reasonable explanations – such as would have been elicited during live direct testimony – of which Papst had fair notice beyond the actual language of the First Expert Report.

The following is a paragraph by paragraph resolution of Papst's objections. Minebea shall submit revised written direct testimony which comports with this Opinion.

- ¶¶ 4-5. The references to the July 5, 2005 supplemental report will be stricken.

- ¶ 6.4. The conclusions stated in ¶ 6.4 are new conclusions rather than a "restatement and further explanation" of ¶¶ 23, 27 and 31 of the First Expert Report. This paragraph shall be stricken. Minebea may substitute the actual conclusions from the First Expert Report.

- ¶ 6.8. The first sentence was contained in the First Expert Report and the objection is overruled. The second sentence states that Papst demanded royalty rates of 1% to 6%. Minebea does not cite to the exact paragraph in the First Expert Report in which these numbers are contained, but merely says "royalty rates are discussed extensively" and "the documents supporting this opinion are all listed in Exhibit II." This is insufficient. If the royalty demand range of 1% to 6% is actually in the First Expert Report, then it may be included in the direct testimony. Entirely new opinions are not permissible even if the documents underlying them were previously identified. The third sentence is not a "summary" of paragraph 41 at page 22 of the First Expert Report and will be stricken. Minebea will not be permitted to introduce royalty-related testimony which was not the subject of either the First Expert Report or deposition testimony. The fourth sentence is contained in paragraph 40 of the First Expert Report and the objection is overruled.

- ¶ 7.  The additional conclusion that there are no substantive uses for HDD spindle motors other than building HDDs is not reflected in the deposition testimony of Mr. Gardner, as claimed by Minebea.  Rather, the excerpt shows only that Mr. Gardner agreed that the sale of a spindle motor represents the sale of an HDD unit.  This paragraph shall be stricken.

- ¶ 9.  The concept that the hard disk drive market follows the personal computer market was contained in paragraph 11 of the Gardner Report.  This objection is overruled.  The statement that there were 13 significant participants in the hard disk drive industry in 1995 was not contained in the original report.  Minebea's argument that the 1995 number could be found in the 1996 Disk/Trend report whereas the 1989 number actually used in the First Expert Report was from the 1990 Disk/Trend report is persuasive.  There is no prejudice to adding this additional fact to the testimony.  This objection is overruled.

- ¶ 17.  This list of U.S. headquartered companies was discussed during Mr. Gardner's deposition.  The objection is overruled.  The remainder of paragraph 17, however, contains additional detail concerning the location of various facilities not contained in paragraph 23 of the Gardner Report – the paragraph referenced by Minebea.  Because, however, Mr. Gardner is just clarifying the location of the development facilities of these companies, the objection is overruled.  With respect to the final sentence to which Papst objects, although this is a slight expansion of the facts contained in the First Expert Report at paragraph 23, it is not beyond the scope of Papst's notice.  The objection is overruled.

- ¶ 18.  The locations objected to by Papst were contained in footnotes in the First Expert Report.  This objection is overruled.

- ¶ 19.  The additional information contained in this paragraph was described by Mr. Gardner in his deposition.  This objection is overruled.

- ¶ 20.  Minebea states that the wording in the first paragraph was contained in the April 2005 declaration of Mr. Gardner submitted in connection with Minebea's motion for summary judgment on patent exhaustion.  It therefore appears that Papst had the declaration prior to the deposition of Mr. Gardner.  This objection is overruled.  Minebea admits that the exhibit associated with this paragraph was only "derived from" the exhibit attached to the April declaration, but maintains that it is not materially different from the opinions in the expert report.  Minebea does not appear to have included a copy of the exhibits on which this exhibit is based and the Court notes that the left two columns of the new exhibit are not "a pictorial of paragraph 60 of Mr. Gardner's First Expert Report" as Minebea contends.  Minebea is free to include new demonstrative exhibits, but only to the extent that they <u>accurately</u> reflect previously presented information.  Papst is free to cross-examine Mr. Gardner with respect to any

demonstrative exhibits.  With respect to the second paragraph, the majority of the information contained within was included in either the First Expert Report or the deposition transcript and will be permitted.  Minebea has not, however, pointed to anything in either the Report or the deposition transcript which discusses the negotiation of pricing and the sentence "This interaction in the United States includes the negotiation of pricing" will be stricken.

- ¶ 21.  Minebea states that the wording in the first paragraph was contained in the April 2005 declaration of Mr. Gardner.  For the reasons stated in connection with paragraph 20, this objection is overruled.

- ¶ 22.  Most of the details in this paragraph were not included in the cited paragraphs of the First Expert Report or the April 2005 declaration.  This paragraph will be stricken.  Minebea may substitute the actual facts from the First Expert Report.

- ¶ 26.  These charts and the associated language purports to derive from Exhibit IX of Mr. Gardner's First Expert Report.  The Court does not believe that it is in possession of this exhibit.  Assuming that the data underlying these charts was included in the First Expert Report, the objections will be overruled.

- ¶ 27.  It appears to the Court that all of the referenced sources are cited in the various parts of paragraph 25 in the First Expert Report.  Mr. Gardner is merely explaining the source for the various lines in Exhibit IX of his First Expert Report.  This objection is overruled.

- ¶ 28.  The objected to language was included in the First Expert Report at paragraph 25.5.  This objection is overruled.

- ¶ 30.  Minebea argues that because Mr. Gardner acknowledged in his deposition that identifying U.S. sales based on the headquarters location of the hard disk drive manufacturer was "one that could be used," it is proper to include new conclusions regarding U.S. Sales based on this definition.  Mr. Gardner, however, did not actually do the required analysis and it was not included in the First Expert Report.  It therefore was not proper to include it in the direct testimony.  This paragraph will be stricken.

- ¶ 31.  This is a summary of ¶ 30 and will likewise be stricken.

- ¶ 32.  It is unclear why these percentages changed from 76% to 75% for 1999 and 70% to 71% for 2003.  Minebea offers no explanation for the change and the percentages from the First Expert Report should be used unless they were in error.  Any errors should be adequately explained in the written direct testimony.

- ¶ 38.  Minebea has replaced the term "salability" of spindle motors and hard disk

11

drives with "ability to sell" spindle motors and hard disk drives. This is a distinction without a difference. The objection is overruled.

- ¶ 39. Minebea has replaced the term "salable" with "capable of being sold." This is a distinction without a difference. The objection is overruled.

- ¶ 42 (pg. 20). It is unclear why the Hutchinson percentage is 1% different from the First Expert Report, but these general values were contained in the First Expert Report. The objection is overruled. The percentage will be corrected (unless it was an error).

- ¶ 41. Minebea suggests replacement testimony based on the First Expert Report if the Supplemental Expert Report is excluded. Minebea may use the replacement testimony.

- ¶ 42 (pg. 22). The "eight rates" referred to were contained in paragraph 39 of the First Expert Report. The objection is overruled.

- ¶ 43 (pg. 23). The royalty rates for 1990, 1993 and 1995 were included in the First Expert Report. Although Minebea indicates that they were calculated the same way, the royalty rates for 1985 and 1987 were not included in the First Expert Report and will be stricken. Minebea indicates that they are used in the "correction" of Exhibit XII. To the extent that this is truly a correction of an error contained within the First Expert Report, the correction will be allowed so long as the error and the basis for the correction are contained within the direct testimony. To the extent that it is a new conclusion, it will be stricken.

- ¶ 44. Minebea has changed "1995" to "1996." Although the first sentence is still accurate, the Court sees no reason to change the dates in the direct testimony unless there was an error originally. This shall be made consistent with the First Expert Report. The "circa 2008" comes from Mr. Gardner's deposition testimony. The objection is overruled.

- ¶ 46. Minebea explains that the $71 million dollar figure is more accurately stated as $67. If this is the actual correction of an error, then the error should be explained and corrected in the direct testimony.

- ¶ 47. Minebea maintains that the demand is more accurately stated as in this paragraph. If this is the actual correction of an error, then the error should be explained and corrected in the direct testimony. If not, the Court is not persuaded that the deposition testimony provided notice of this expansion of the time scale of the demand. The objection is sustained.

- ¶ 48. Minebea contends that the First Expert Report identified demands up to 5%, not

12

      6%.  The testimony should be consistent with the First Expert Report.  The Court notes, however, that paragraph 46 of the First Expert Report, to which Minebea points for the "demands up to 5%," does not, in fact, contain any such information.  If this information is contained in the First Expert Report, then it may be included in the direct testimony.  If not, it will be stricken.

- ¶ 51.1.  The addition of explicit references to Georg Papst's deposition testimony and correspondence from NEC, while not strictly necessary, is not prejudicial.  The objection is overruled.

- ¶ 51.2.  Again, reference to Professor Hausman is unnecessary here, but it is also not prejudicial.  The objection is overruled.

- ¶ 51.3.  The Court sees no harm in having Mr. Gardner say "This is a claim of Minebea in this matter that I do not address."  The objection is overruled.

- ¶ 52.4.  Mr. Gardner explained why he believed that Nidec would not buy a license from Papst during his deposition.  It therefore is permissible for Mr. Gardner to opine that other HDD spindle motor manufacturers would not reach a license agreement with Papst.  The rest of the conclusions in this paragraph were not evidenced in the deposition testimony.  The remainder of this paragraph will be stricken.

- ¶ 53.  This paragraph contains details not found in the First Expert Report; it is not merely a restatement.  The objected-to language will be stricken.  Minebea may substitute the actual conclusions from the First Expert Report.

- ¶ 54.  The language at the end of the first sentence is a reasonable expansion of the First Expert Report and will be permitted.  The illustrative third sentence is a reasonable expansion of the already existing testimony and will be permitted.  Although the portion of the final sentence which refers to the length of time required to more than double existing production is a "new" conclusion, it is a logical expansion of the First Expert Report.  The objections are overruled.

- ¶ 55.  The added language is not found in the First Expert Report and is not implied by the cited deposition testimony.  The objected-to language will be stricken.

- ¶ 57.  Mr. Gardner has added a further explanation of the conclusion already contained in the First Expert Report.  The objection is overruled.

- ¶ 59.3.  Minebea indicates that the underlying data of PTX2598 is the same as that provided in Exhibit XIV of the First Expert Report.  The objection is overruled.

- ¶ 64.  The first sentence is essentially what was said in paragraph 57 of Mr. Gardner's

       First Expert Report. The objection is overruled. The second sentence is a new conclusion and will be stricken.

- ¶ 66. The "further explanation" in the third sentence is a new fact that was not contained in the First Expert Report. The third sentence will be stricken.

- ¶ 76. The conclusion that "Minebea had the technical capability to grow in accordance with these scenarios" is new and will be stricken.

- ¶ 77. Minebea has changed 83% to 85%. The Court assumes that this error will be corrected. And again, the underlying data is from the First Expert Report. Except for the correction of the percentage, the objections to this paragraph are overruled.

- ¶ 83. This paragraph is responding to the Dubinsky rebuttal and the objection is overruled.

- ¶ 84. This paragraph is responding to the Dubinsky rebuttal and the objection is overruled.

### C. Objections to Exhibits

       Papst objects to the exhibits proposed to be admitted with Mr. Gardner's expert testimony on three bases: (1) admitting the demonstrative evidence in evidence would be unfairly prejudicial to Papst because the exhibits were only to be used as demonstrative aids during a jury trial; (2) Minebea failed to disclose the summaries of Mr. Gardner's opinions as is required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure; and (3) any new exhibits proposed to be introduced because of the Supplemental Report are tainted and should be excluded.

       To the extent that Papst objects to the admission of what are strictly speaking demonstrative exhibits under Rule 611 because they would be unfairly prejudicial if considered admitted in evidence and as substantive evidence in a jury trial, both parties are reminded that

this is no longer a jury trial but a bench trial. Many of the proffered exhibits provide a road map or highlight points in Mr. Gardner's First Expert Report that will in fact aid the Court to evaluate Mr. Gardner's direct testimony and report. If expert reports are admitted in evidence -- as they will be in this bench trial -- how is the Court to treat exhibits appended to an expert's report: as demonstrative aids, as illustrations and guidance, or as substantive admissible evidence? In a bench trial, does it really matter? To the extent that the summary exhibits are accurate representations of the data contained within the First Expert Report and/or Mr. Gardner's direct testimony, the Court will consider them under Rule 611 of the Federal Rules of Evidence regardless of whether they ultimately are formally admitted in evidence. Compare United States v. Janati, 374 F.3d 263, 273 (4th Cir. 2004) (opinions of experts can be summarized on pedagogical charts but generally are not admitted in evidence) with United States v. Bray, 139 F.3d 1104, 1111-1112 (6th Cir. 1998) (summaries or charts used as pedagogical devices or illustrative aids which organize or aid jury's examination of testimony or documents in evidence may "in appropriate cases" also be admitted in evidence although not within specific scope of Rule 1006). See also United States v. Martin, 54 F.3d 1150, 1159-61 (4th Cir. 1995).[2]

        The Court does agree with Papst, however, that Minebea was under an obligation under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure to provide any exhibits used as summaries or illustrative aids in support of the opinions and conclusions contained in Mr. Gardner's First Expert Report at the time it submitted the report itself. See Fed. R. Civ. P. 26(a)(2)(B). Any new exhibits in support of the report therefore have not been timely provided and will not be considered. Any summary exhibits that support the written direct testimony and

---

[2] All three of these cases involved jury trials.

do not relate to portions of the written direct testimony that have been stricken will be considered either as demonstrative aids or as substantive evidence under Rule 611 or the Federal Rules of Evidence.

The Court notes that the majority of the Supplemental Expert Report has been stricken and any exhibits which accompany the stricken conclusions should also be considered stricken. The Court will not, however, exclude "new" demonstrative exhibits merely because they were not previously presented to the Court. For example, if a "new" exhibit is a graph of tabular data that was included in the First Expert Report, this would be permissible. Because the Court does not appear to have the exhibits from the First Expert Report, the Court cannot conclusively rule on these "new" exhibits, but the Court will provide the following guidance:

- PTX2589. As the Court stated above, Minebea admits that the exhibit associated with this paragraph was only "derived from" the exhibit attached to the April declaration, but maintains that it is not materially different from the opinions in the expert report. Minebea does not appear to have included a copy of the exhibits on which this exhibit is based and the Court notes that the left two columns of the new exhibit are not "a pictorial of paragraph 60 of Mr. Gardner's First Expert Report" as Minebea contends. Minebea is free to include new demonstrative exhibits, but only to the extent that they <u>accurately</u> reflect previously presented information.

- PTX2590 (1). This does appear to be a pictorial representation of data included in the cited paragraph of the First Expert Report and will be permitted.

- PTX2590 (2) and (3). Minebea indicates that this is simply a graph of tabular data from Exhibit IX of the First Expert Report. The Court does not have the benefit of Exhibit IX, but if this representation is accurate, the exhibits will be permitted.

- PTX2590 (4). Minebea indicates that this is simply a graph of tabular data from Exhibit X of the First Expert Report. The Court does not have the benefit of Exhibit IX, but if this representation is accurate, the exhibits will be permitted.

- PTX2598 (1), (2), (3). Minebea indicates that this is simply a graph of tabular data

from Exhibits IX and XIV of the First Expert Report. The Court does not have the benefit of these exhibits, but if this representation is accurate, the exhibits will be permitted.

To the extent that any of these exhibits do not accurately reflect the data presented in the First Expert Report, Papst may discuss the inaccuracies during cross-examination and if appropriate, the Court will, at that time, exclude the exhibit.

Accordingly, it is hereby

ORDERED, that plaintiff's motion for leave to supplement the expert report of Thomas Gardner [1279] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED, that plaintiff's motion for leave to supplement the expert report of Thomas Gardner is DENIED with respect to the entire report, except for paragraphs 12 and 15, and Exhibits XI, XII, and XIV; it is

FURTHER ORDERED that plaintiff may supplement Mr. Gardner's Report with paragraphs 12 and 15 and Exhibits XI, XII, and XIV only to the extent that they are necessary to correct Mr. Gardner's pervious errors regarding his projection of Papst's "average lower royalty concept," or to accurately reflect the revised forecasts of Minebea's production provided in Mr. Malackowski's third supplemental report; and it is

FURTHER ORDERED that plaintiff shall submit a revised version of Mr. Gardner's direct testimony no later than 9:00 a.m. on July 16, 2005.

SO ORDERED.

_____/s/_____

PAUL L. FRIEDMAN
United States District Judge

DATE: July 14, 2005